Thomas M. McInerney CA Bar No. 162055
thomas.mcinerney@ogletree.com
Joel H. Kosh CA Bar No. 326595
joel.kosh@ogletree.com
Khadijah Kenyatté CA Bar No. 337236
khadijah.kenyatte@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

Attorneys for Defendant
ASTELLAS GENE THERAPIES, INC.
(erroneously sued herein as ASTELLAS, INC.)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YE SHEN,<br><br>Plaintiff,<br><br>v.<br><br>ASTELLAS, INC.<br><br>Defendant. | Case No. 3:26-cv-04144<br><br>**DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1331, 1441 (FEDERAL QUESTION)** |

TO THE CLERK OF THE UNITED STATE DISTRICT COURT, NORTHERN DISTRICT COURT OF CALIFORNIA AND PLAINTIFF YE SHEN:

PLEASE TAKE NOTICE THAT Defendant ASTELLAS GENE THERAPIES, INC. ("AGT"), erroneously sued herein as ASTELLAS, INC. (a non-existent legal entity), removes this action from the Superior Court of California, County of San Mateo, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§1331, 1332, 1367, 1441, and 1446. In support of this removal, Defendant states as follows:

THE STATE COURT ACTION

1. On April 29, 2026, Plaintiff Ye Shen commenced this action against an entity she identified as "Astellas, Inc." by filing a Complaint in the Superior Court of California, County of San Mateo, entitled *Ye Shen v. Astellas, Inc., & DOES 1 through 20, inclusive*, Case No. 25 CIV02939 (the "Complaint"). A true and correct copy of the Complaint and other documents filed with the Superior Court are attached at Exhibit A.

2. Plaintiff had been employed in South San Francisco, California with AGT. She was never employed by an entity known as Astellas, Inc. In fact, no such entity Astellas, Inc. exists. For reasons that are known only to her, Plaintiff never sued AGT. Counsel for AGT was apprised in June 2025 that Plaintiff had filed her action in the Superior Court naming only "Astellas, Inc." as a defendant, although in the first paragraph of her civil complaint she alleged, "Plaintiff Ye Shen at all relevant times was an employee of Defendant Astellas Gene Therapeutics" [sic]. Upon learning of the filing of this civil complaint, counsel for AGT contacted Plaintiff and informed her that if she sued her employer, AGT, and provided a summons, he was authorized to accept service on behalf of that entity. Plaintiff responded by refusing this offer, stating that she desired to sue Astellas, Inc., even though she was informed that no such company existed.

3. Over the subsequent several months, counsel for AGT repeated his offer to accept service of her summons and complaint if she properly named AGT as a defendant. AGT's counsel even indicated that Plaintiff was welcome, if she so chose, to keep "Astellas, Inc." as a defendant in the action even though it did not exist, but that AGT's counsel did not represent such an entity. In addition, counsel repeated his prior offer to accept service of a summons and complaint naming

AGT, her actual employer, as a defendant in this action. Counsel also reminded Plaintiff that the wage statements she received while working for AGT properly identified AGT as her employer, and AGT's counsel also reminded Plaintiff that she had identified AGT as her employer when she filed an administrative complaint with the California Department of Industrial Relations. Despite all this, Plaintiff continued to insist that she did not wish to name AGT as a defendant in this action but intended to pursue her action against "Astellas, Inc.", despite it not being an actual existing legal entity.

4. On or about March 25, 2026, Plaintiff sent counsel for AGT written correspondence in which she stated that she wished to "meet and confer" with him regarding an upcoming Case Management Conference in the San Mateo Superior Court scheduled for May 8, 2026. Counsel for AGT responded in writing to her request by inviting her to call him at her office, and reminding her that "Astellas, Inc." was not a legal entity but that he would facilitate the filing and processing of her case if she sent him a summons and complaint identifying AGT as a party. Plaintiff never responded to this written communication.

5. Instead, on May 4, 2026, counsel for AGT was copied on emails that Plaintiff sent to a court clerk with the San Mateo Superior Court indicating that she was in the process of filing a request for default due to the failure of Astellas, Inc. to respond to her 2025 civil action. Rather than be required to include the risks and costs related to addressing an improper attempt by Plaintiff to enter a default against AGT or possibly another existing Astellas-affiliated entity, AGT chose on May 4 to voluntarily accept service on behalf of AGT that day and to file an answer with the San Mateo Superior Court that day a well, identifying the defendant as AGT "erroneously sued herein as Astellas, Inc." Attached at Exhibit B is a copy of this filed answer.

6. At no time prior to May 4, 2026, has Defendant AGT made a general appearance in her state court action, nor has it been properly served with any summons or complaint identifying AGT as a party. However, it is apparent that Plaintiff, unrepresented by counsel, lacks an understanding of the legal requirements for suing corporate defendants, despite AGT counsel's many attempts over the past 10 months to encourage her to obtain the assistance of legal counsel and AGT counsel's efforts to explain the process to her.

7. In accordance with 28 U.S.C. §1446(b), this Notice of Removal is timely filed within 30 days of AGT accepting service on May 4, 2026 of the Summons and Complaint.

8. The Superior Court of California, County of San Mateo is located within the Northern District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Likewise, pursuant to Local Rule 3-2(d), removal and Intradistrict Assignment to the San Francisco or Oakland divisions of this Court is proper because the alleged acts and occurrences arose in the County of San Mateo.

9. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and order served upon Defendant are attached as Exhibits to this Notice.

10. In accordance with 28 US.C. § 1446(d), a copy of the original Notice of Removal, save and except the exhibits, will be filed with the Superior Court for the County of San Mateo.

11. Exhibits A-B include all documents known to Defendant AGT to be on file with the San Mateo Superior Court in this action.

**BASIS FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

12. This action is properly removable under 28 U.S.C. §1441(a) because the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

13. Plaintiff's complaint alleges that Defendant violated: (a) 18 U.S. Code § 1030—Fraud and related activity in connection with computers (¶ 31); (b) 29 U.S.C. §2601, *et seq*.—the Family and Medical Leave Act (¶¶ 52-82), and (c) regulations implemented by the U.S. Department of Labor pursuant to authority under the Occupational Safety and Health Act (OSH) codified at 29 U.S.C. §§ 651–678 (¶¶ 783-88).

14. By asserting claims under these various federal statutes, Plaintiff's complaint asserts federal questions under 28 U.S.C. § 1331. Accordingly, this case is properly removable under 28 U.S.C. §1441(a).

## SUPPLEMENTAL JURISICTION

15. This Court has supplemental jurisdiction over Plaintiff's state law claim(s). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims that are so related to Plaintiff's federal cause(s) of action "that they form part of the same case or controversy under Article III of the United States Constitution." State law claims fall within this Court's supplemental jurisdiction when they share with the federal claims "a common nucleus of operative fact … such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

16. Here, Plaintiff's state law claim(s) for defamation, retaliation under section 1102.5 of the California Labor Code, failure to accommodate under the California Family Rights Act, and for conspiracy and other alleged wrongful acts closely to her for federal claims. The claims all arise out of a common nucleus of operative facts: Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Moreover, there is no reason why this Court should not exercise supplemental jurisdiction over Plaintiff's state law claim(s). Plaintiff's state law claims neither raise novel or complex issues of State law nor predominate over the claim(s) over which this Court has original jurisdiction, and there are no exceptional circumstances or other compelling reasons for this Court to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). Thus, removal is proper under 28 U.S.C. § 1441(c).

17. As required by 28 U.S.C. § 1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California for the County of San Mateo.

18. Accordingly, Defendant respectfully request that the action now pending against Defendant in the Superior Court of California, County of San Mateo, be removed to this Court. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant respectfully requests that it issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the Court of the basis for this removal.

DATED: May 5, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Thomas M. McInerney
Thomas M. McInerney
Joel H. Kosh
Khadijah Kenyatté
Attorneys for Defendant
ASTELLAS GENE THERAPIES, INC.
(erroneously sued herein as ASTELLAS, INC.)

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SAN MATEO COUNTY

APR 2 9 2025

Clerk of the Superior Court
By [signature]
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
Astellas, INC;
DOES 1 THROUGH 20, INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Ye Shen, Inc.;
& DOES 1 THROUGH 20, INCLUSIVE,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California:
County of San Mateo: 400 County Center, Redwood City, CA 94063

CASE NUMBER:
*(Número del Caso):*
25CIV02939

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ye Shen, 112 Cityview Drive, Daly City, CA 94014; 415-867-1126

DATE: *(Fecha)* APR 2 9 2025 CHAD L. PEACE Clerk, by *(Secretario)* [signature: Kimberly L. Claussen], Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☑ as the person sued under the fictitious name of *(specify)*:
   Astellas, Astellas Gene Therapeutics, Audentes Therpeutics, AGT, etc
3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:





privacy, please press the Clear This Form button after you | Print this form | Save this form | Clear this form

Ye Shen
112 cityview drive
Daly City, CA 94014
415-867-1126
Fax Number:
Email: yeshen2000@yahoo.com

Ye Shen

FILED
SAN MATEO COUNTY

APR 29 2025

Clerk of the Superior Court
By [signature]
DEPUTY CLERK

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN MATEO**

| | |
|---|---|
| Ye Shen<br><br>Plaintiff,<br><br>vs.<br><br>Astellas, Inc.; & DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendants. | Case No.: 25CIV02939<br><br>**DATE:**<br>**TIME:**<br>**DEPT:**<br><br>Judge:<br>Dept:<br>Action Filed:<br>Trial Date: |

Comes now plaintiff Ye Shen for causes of action, and alleges as follows:

I. ALLEGATIONS

1. Plaintiff Ye Shen at all relevant times was an employee of Defendant Astellas Gene Therapeutics.

2. The true names and capacities, where individual, corporate or otherwise, of DOES 1 through 20 are at this time unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will ask leave to amend this claim for damages to reflect

their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said defendants is responsible, jointly and severally, for the events and injuries described herein and caused damages thereby as alleged herein.

3. One day in December in year 2021, I got a call from Rachael from Audentes Therapeutics Talent Acquisition. Rachael told me that the hiring manager Sue Duan had a senior research associate (SRA) position for running Analytical Ultracentrifuge (AUC) and capillary electrophoresis (CE). I asked Rachael how did she found me since I never applied for this position and I never heard of Audentes Therapeutics. She said she found me on Linkedin after searching the keyword AUC. On the interview panel, Liub Chii Yang told me that she also had a SRA position running liquid chromatography mass spec (LCMS). Liub Chii asked me which SRA position I was applying. I told her that doesn't matter, up to the senior management. In March 2022, Liub Chii phoned me and told me that I was going to report to her. My start day was 03/28/2022 in Audentes Therapeutics located in 201 gateway blvd in South San Francisco. When I joined the company, the mass spectrometers were still in the boxes without being installed. I wanted to borrow some mass spec books from Liub Chii, Liub Chii refused and told me to google it, she said the internet has everything. I asked Liub Chii to teach me how to run mass spec once the instruments were being installed, Liub Chii didn't say no but advised me to ask engineer to show me how to run mass spec. She re-emphasized that please do not hesitate to ask engineer to show me how to run mass spec. For the first time, I was wondering whether Liub Chii know how to run mass spec. She tricked me to this position. My background includes but not limited to formulation, analytical ultracentrifuge (AUC), liquid chromatography (LC), capillary electrophoresis (CE), imaged capillary isoelectric focusing (icIEF), etc. I did not

have any mass spec experience. I thought she was going to show me how to run mass spec, that's why I accepted this position which is low for me with over 20 years experience in biotech. I realized that she did not know about mass spec. I am not sure how she got her position in the first place that she doesn't qualify. Later on I learned that Liub Chii's previous background was GC-MS for small molecules. She doesn't have any LC-MS experience for large molecules. She does not have any analytical experience for large molecules at all and she pick up very slow and sometimes she cannot pick it up at all. Her analytical skills are very poor, her knowledge regarding proteins are very poor, in addition to her poor mass spec skills.

4. Shortly after I joined the company, Bill Werner, Senior Director of Analytical Development (AD) department, asked Liub Chii and I to characterize the minor bands on SDS-PAGE by HILIC-HPLC assay. The three major bands from SDS-PAGE were identified already as viral proteins 1, 2, and 3 (or VP1, VP2, and VP3). But the identity of several minor bands were not known. Characterizing of the minor bands on SDS-PAGE is required by FDA and other health authorities. Emdadul Haque and his team attempted to identify them without success and they documented in REP-0278: Quantification of capsid protein purity by SDS-PAGE which was signed off by Emdadul and Bill Werner in year 2019. The minor bands were attempted to be identified by western blot but doesn't work. After Emdadul left the company for a director position in another biotech company (considered promotion for Emdadul which he cannot get in Audentes Therapeutics), the SDS-PAGE assay was assigned to Sue Duan's group who had no idea how to tackle this and let the problem sit for many years. In November 2021, Liub Chii Yang was hired as senior scientist (mass spec specialist) to bring the mass spec expertise in house rather than relying on contract research organizations (CRO) to perform mass spec assays for us. Bill asked Liub Chii and I to

identify the minor bands on SDS-PAGE by fraction collection from HILIC and run on SDS-PAGE and identify by mass spec. I don't think the correlation of fraction collection of HILIC (hydrophilic interaction liquid chromatography) with minor bands on SDS-PAGE will work. But under Liub-Chii's high pressure, I did what Bill told me to do which is manually collecting fractions from HILIC assay and run them on SDS-PAGE to determine the correlation, and as I expected, this approach doesn't work. Bill was furious that his deliverable was not being met, he told Liub Chii that both Liub Chii and I can leave the company. Due to my extensive background in formulation and deep understanding of protein degradation pathways, I quickly figured out all on my own that these minor bands on SDS-PAGE are suspected to be DP (aspartic acid-proline) clips. So I designed a series of experiments to prove that this approach is correct by just changing the denaturation temperature from 95C in the SDS-PAGE test procedure to 70C and proved with mechanism of action that these minor bands are just sample preparation artifacts. In addition, I identified the pre-peak in front of the VP3 by CE-SDS. All the design and carry out experiments, my presentation on 09/20/2022, and my report REP1818 are all independently presented and written by myself without any supervision. Both Liub Chii and Bill have nothing to do with any part of this work. But simply due to the reporting structure, Liub Chii gave my credit to Bill by stating on my year 2022 performance review that all of the work was carried out under Bill's guidance. If changing the denaturation temp is Bill's idea, he should already implement this approach in year 2019. This project is two people's work and Liub Chii should take a big part since Liub Chii is a pHD senior scientist while I am an SRA. Since Liub Chii cannot perform, that's why I take the whole project and did two people's work while Liub Chii did not have any other project to work on during the same timeframe. This contribution is significant given that all three senior scientists failed to make it work and this approach apply to all molecules, not just one molecule. Before Bill's

departure on 02/14/2023, he forged Liub Chii's performance review which should be rated "does not meet expectation" by taking my credit from my performance review which should be rated "exceeds expectation" so both Liub Chii and I get "meet expectations". What happened is: I did all the work myself, Liub Chii took my credit and gave it to Bill who can meet this particular deliverable from AD department, and then Bill gave my credit back to Liub Chii since Bill doesn't care who did the work. If I cannot perform, I have to leave the company, if I can perform, all my credit is being taken by people who have nothing to do with the project. The SDS-PAGE project was supposed to be Sue Duan's responsibility yet Sue never had any idea what the minor bands are, yet she was promoted from senior manager to associate director in December 2022. To the best of my knowledge, Sue does not have any contributions on other assays as well. Yet I was passed on the promotion, presumably due to my race, gender, and age. I am an old Asian woman.

5. On 02/14/2023, Bill was asked to leave, to vacate his position to Sue Duan since the presence of Bill is an obstacle for Sue Duan to advance her corporate ladder. After Bill's departure, his position was not replaced by any new hires, but replaced by his past subordinate Sue Duan who has zero mass spec experience, zero chromatography experience, in addition to her zero biophysical characterization experience to lead the mass spec lab ever since 02/14/2023 till now. This position is always for mass spec experts with years experience elsewhere and even experts with years experience may or may not get this position.

6. My nightmare began on the date of my hire starting from 03/28/2022 when I got to know Liub Chii Yang. When I joined the company, the company was still called Audentes Therapeutics located in 201 gateway blvd, SSF, CA. During the same timeframe, Audentes Therapeutics was acquired by Astellas. All employees would be relocated to the brand new building in 480 Forbes blvd, SSF, CA one year later since it took more than one year to

build the brand new building. The current location of 201 gateway blvd in SSF did not have any infrastructure of high purity nitrogen and exhaust which were required for mass spec and it no longer worth anybody's effort to build a new mass spec lab from ground up. But our mass spec work cannot wait for more than one year, so Liub Chii and I went to 270 East Grand Ave, SSF, CA where the mass spec lab already had the existing high purity nitrogen lines and exhaust in place, with the rest of Analytical Development members remained in 201 gateway blvd in SSF. Since Liub Chii and I were the only two residents in the mass spec lab located in 270 East Grand Ave and this lab had no camera, Liub Chii harassed me and sabotaged my instruments many times because Liub Chii hated me for not letting her taking my credit anymore. These were well documented in a 40 page document I submitted to upper management, HR, and Astellas Global Ethics and Compliance. A quick recap of the partial list is below:

7. On 06/29/2023 at around 11:30am, I called Thermo Tech support in front of the analysis computer in the mass spec lab, with the Biopharmer Finder application open. The phone was already connected. When Liub Chii heard the phone all, she quickly dashed right behind the chair I sit, staring at my computer, she did not touch me, but the distance between me and her is only the back of the chair I sat. I was scared by her sudden move right behind me and as a result of that, my heart beated very fast. I told Liub Chii to leave several times not to interfere with my call, Liub Chii did not leave and give me a scary angry hostile took. After several failed attempts to ask her to leave, I told her that I was going to call 911 if she didn't leave. This approach definitely worked, she began to leave but said to me while leaving: You don't share the data, you cannot perform after working on 4 months for mass spec. I talked back to her: you are not my manager, I cannot perform is none of your business. I reported to Sue immediately. I told what happened to me to my mother. My mother was so scared and got sick ever since then.

8. The first time I discovered Liub Chii sabotaged my instruments was when I noticed my mass spec data look weird in April 2023. This was the first time I started to run mass spec myself. The data look good during the mass spec training provided by Rachael and Eric from Thermo Fisher Scientific on 03/07, 03/08, and 03/09, 2023. I cannot figure out for one month and finally called Thermo Fisher Scientific and Waters tech support for help. After many back and forth phone calls and emails, they figured out for me that the tubing that was supposed to connect between Waters HPLC to Thermo mass spectrometer was being taken off and replaced with a tubing that went to HPLC waste instead. So the analyte supposed to go from Waters HPLC was not going to the Thermo mass spec, but instead goes straight to HPLC waste, no wonder I never get any meaningful mass spec signal. The tubing was secretly and intentionally being taken off by somebody who was not supposed to touch these two instruments. I was the only person using this instrument and the sole instrument owner for this Water HPLC and Thermo mass spec. There were only two people in the mass spec room, and other residents in the 270 East Grand did not have any mass spec experience and had no understanding of which tubing connecting to where and what outcome will result, only Liub Chii had the knowledge and the intention to sabotage my instruments secretly. I reported to Sue Duan and Sue said immediately that I had no evidence that Liub Chii did this and instead Sue accused Thermo mass spec trainers did this when they were here to train us.

9. Liub Chii did not follow the safety rules in the labs. Her lab benches were used to be length against the wall which is the original and correct orientation. In order to better look over my shoulder of what I was doing in front of the Thermo mass spec, Liub Chii re-arranged her benches to let the width of her benches against the wall in the mass spec lab in 270 East Grand Ave in July 2023. This results in the aisle was not maintained at least 36" apart mandated by OSHA requirement for the lab. I reported this violation to Sue and Sue did not

care and this configuration remained until December 2023 when we moved to the new building in 480 Forbes blvd in SSF. On 07/25/2023 at 4:07 pm, I walked into the mass spec lab and Liub Chii happened to be in the hallway looking at her phone. She intentionally followed me into the mass spec lab. While I was standing on top of the stool to change solvents on HPLC, she squeezed in and squeezed out around nano HPLC (placed right behind me) for nothing to pretend to walk by with her true intention was to stalk me (not jump right behind me any more after Sue talked to her regarding 06/29/2023 harassment) pretending to take a look at the little green tank behind her Waters QTOF mass spec. The green tank contains high purity nitrogen that will last several months to supply the backend of mass spec. Liub Chii had no need to take a look of the green tank when I stood on top of the stool to run into the risk of knocking me down while I was holding solvents at pH 2 (very acidic) in glass bottles. Although she did not knock me down from the stool to break the glass bottles so the acid can leak onto my skin to cause severe burns, it was a safety concern. The green tank is not like a patient in ICU units that needs to be monitored every second by ER nurse.

10. Encouraged by Sue's blindsided toward Liub Chii's harassment toward me, sabotage my instruments, and violation of OSHA requirements, Liub Chii continued to sabotage my instruments by deliberately loosen the parts including but not limited to the primary from quaternary solvent manager, pre-filter, outlet tubing connected to the flow cell to cause small but detrimental leaks. Of course she did it secretly which I figured out in hard ways after contacting Waters tech support after a long time. I found out through weird HPLC and mass spec profiles and through extensive troubleshoot on my own first followed by technical phone calls to either Waters or Thermo Fisher Scientific or both. This caused significant delay of my method development. These instrument parts were not supposed to leak but began to leak within two to three weeks after the engineers just finished the PM or onsite

support. Everytime when the engineer was here, I asked him to tighten the parts. Then I asked him again "did you tighten it?", and the engineer confirmed that he tightened it. The engineers who are onsite are qualified to do the work and I confirmed with him for tightening. After a short period of time, the parts that were not supposed to leak but strangely leaked anyway, thanks very much to Liub Chii's sabotage of my instruments, I took my troubleshooting skills to the next level yet my routine work got significantly delayed. Liub Chii took turns to intentionally create leaks on different parts of my instruments, so I was too busy to figure out what new parts were going to leak in addition to keep an eye on the parts she already sabotaged because I know what to look for. She also turned off LN2 when I was doing the calibration of mass spec, intentionally cut me through all trainings and cut all conversations regarding the Thermo mass spec which I was the sole instrument owner to create illusion to other people that she was "coaching" me by "go through her" and impeded my work due to deliberate left me out through conversations so I cannot do my work. The titles do not define them. Sue, associate director; and Liub Chii, senior scientist of mass spec, don't know how to set up CAD (charge aerosol detector) and nitrogen generator for the new building in 480 Forbes Blvd, SSF. I, as an SRA, took the major part to help them set up after they called on me for help. These were the only times that I got updates of the mass spec lab, but I always provided unconditional support.

11. The more I supported the mass spec lab, the more Liub Chii viewed me as a threat and her sabotage never stopped. On 11/13/2023 at 2:00 pm, I went to the lab MS Sup232 to prepare two mobile phases at pH 2.0. Then I brought the two mobile phases to the mass spec lab G234 and put them on top of the HPLC at 3:00pm sharp and start priming which would take 8 min. I did not want to wait in the lab with nothing else to do during the 8 min priming, so I went back to my office. At 3:17pm, I walked into the mass spec lab, I saw Liub-Chii walked away from my computer connected to HPLC and holding and looking at her phone.

I saw all three modules (pump, autosampler, and detector) on my HPLC have communication error highlighted in red. I tried to reset by physically power cycling each module by pressing the on/off button on the HPLC instrument and reset the console in Empower 3 software several times. Nothing worked. Since I already primed the instrument for 8 min with 0.1% difluoroacetic acid at pH 2.0, the instrument was already soaked in acid and will cause corrosion of the expensive instruments. However I cannot wash the instrument with water to remove the acid or run the assay since the communication between the computer and HPLC was lost due to Liub Chii's sabotage. The damage was of course under my name and my credential so I can be fired which was Liub Chii's intention. I did not want other employees mistaken that I was the one intentionally sabotaged my own instrument which were actually deliberately yet secretly caused by Liub Chii. So for the first time I reported to my manager's manager Josh Zibit and HR Director Vicky Wallace on 11/17/2023 via emails for all the issues happened in mass spec lab for the whole past year. In addition, I report the same set of issues to Astellas ethics & compliance with Report key: 683791647001 via their website on 11/29/2023. I singled out the communication error issue and reported to IT department with ticket # INC0736011 on 11/21/2023 since I need their technical support to prevent intentional sabotage from Liub Chii everytime I was out of the lab. Thermo Fisher Scientific and Waters' recommendation is always leave the screen on and never logging the instrument off while the instrument is running even if I am gone from the lab. Then what am I supposed to do that somebody intentionally sabotage my instruments while I am gone? Reporting to IT department is really my last resort to seek their technical help. The IT department didn't act until on 04/17/2024 right before the submission of 5-year CIA to OIG to pretend that IT investigated the issue I reported.

12. Sue Duan and Liub Chii Yang were conspiring to falsify mass spec data for at least two studies (AT132 and KT430, both are adeno associated viruses, AAVs) and presented the

falsified data in two different meetings. The first one is Intact AT132 studies via Waters LCQTOF-method development updates, presented by Liub Chii Yang on 12/13/2023 in Analytical Development Crosstalk meeting. The second one is intact KT430 studies via Waters LCQTOF-method development updates, presented by Liub Chii Yang on 01/31/2024 in KT430 Bi-weekly meeting. Liub Chii did not know anything about mass spec, her entire slides do not have any mass spectrum data, only liquid chromatography data (without mass spec) and tables with data being made up to pretend they are mass spec data. There were no raw data of mass spectrum of mass-to-charge (m/z) ratio and deconvoluted mass (Daltons) which are required for mass spec work, only hand written numbers (molecular weight) grabbed from the air based on calculated primary sequence of AAV molecules. Liub Chii falsified scientific data so she can keep her job as senior scientist that she does not qualify. Sue Duan falsified with Liub Chii because Sue wanted to pretend that the mass spec assays are undergoing in her department so she can take credit. The reality is as of 11/15/2024 when is my last day, there are no mass spec assays going under Sue Duan in Analytical Development Department in Astellas. All the mass spec assays are run by contract research organizations (CRO) like Charles River Labs, PPD, and others being evaluated as CRO. Liub Chii somewhat know the mass spec results like PTM (post translational modifications, e.g. phosphorylation and acetylation) since CRO used to do mass spec for us. She blindly copied results from CRO which does not apply to the samples that she was supposed to analyze. When we bring the mass spec instruments in house in South San Francisco, we can't get the mass spec going but Liub Chii pretended to. She doesn't know how to analyze the new samples or new molecules that were never analyzed by CRO so Liub Chii and Sue don't know the results. Liub Chii doesn't know what PTM is and doesn't know how to look for them.

13. When I reported the aforementioned issues to Sue, HR, and Astellas Ethics and Compliance, their strategy is always delay, deny, defend which means delay investigation for several months by Astellas Ethics and Compliance, deny their wrongdoings by gaslighting me, defend themselves by covering up and falsifying every document including but not limited to investigation report for issues happening in mass spec lab, mass spec data falsification, performance reviews and performance action plan, and final report presented to OIG to wrongfully secure 5-year agreement of CIA. There is nothing that Astellas cannot falsify and at least OIG was easily being fooled by Astellas. I reported Liub Chii's wrongdoings to my manager's manager (Josh Zibit) and HR director (Vicky Wallace) on 11/17/2023 via email. They had follow-up meetings with me without any meaningful progress. That's why I reported the same issues to Astellas Global Ethics and Compliance with report key of 683791647001 on 11/29/2023. The first time the Astellas Global Ethics and Compliance reached out to me was on 04/22/2024 just to have a meeting, after almost 5 months since I submitted my report on 11/29/2023. You might be wondering why on 04/22/2024 which was also my question at the time. Later on I learned that Astellas want to meet the deadline to complete the 5-year Corporate Integrity Agreement (CIA) with the final reporting period ended in late April 2024, and they submitted their final annual report to the Office of the Inspector General (OIG) in late May. Before they submitted their final annual report to OIG, they need to finish the investigation for my case. But they did not truly investigate my case for sure, they pretend to investigate (just to have several meetings that went nowhere) and intentionally lied to OIG that they met 100% integrity. Astellas did not investigate my case regarding integrity in mass spec lab, so the integrity was not met 100% for sure. Astellas blindly falsified the conclusion that none of my

allegations were substantiated which are untrue. Astellas falsified the final report so everything looks beautiful on paper presented to OIG. Astellas never did any investigation for my case, rather they redirected my complains to the same set of people, namely Sue Duan and Vicky Wallace, who tried to cover up these wrongdoings. On 05/02/2024, Vicky Wallace had a meeting with me to provide an update. She mentioned that none of the allegations in the report were substantiated. I especially asked about the investigation of the mass spec data falsification. Vicky said she gave the AT132 presentation slides to a reviewer and the conclusion was there was no evidence that the mass spec data were falsified. I asked Vicky who the reviewer was, Vicky said she cannot tell me. I asked Vicky whether the reviewer was qualified to review mass spec data, Vicky said yes. I suspect the investigator is Monica Zhang, and of course this needs to be confirmed. Monica's hire date is 04/08/2024 replacing Liub Chii whose last day in the company is 05/24/2024. Being Monica or someone else, cover-up of falsified data is not acceptable. On 08/07/2024, Mike Petroutsas (Head, US commercial) and Allyson Behm (Head, E&C Global) sent email to Astellas in the United States that they were pleased to announce that Astellas has successfully completed the 5-year Corporate Integrity Agreement (CIA). To provide more context, Astellas was placed on a 5 year corporate integrity agreement (CIA) by Office of Inspection General (OIG) because Astellas knowingly and intentionally used Mycamine on pediatric patients that mycamine was not approved for in year 2010. The whistleblower at that time was Brian Smith, an Astellas sales person. The information can be found on https://oig.hhs.gov while searching for Astellas. Due to the unethical behavior, Astellas was placed on 5 year CIA by OIG. During 04/24/2024 to 08/06/2024, Astellas was actively seeking closure of the 5 year CIA. Therefore, Sue did not

want to terminate me on 05/24/2024 when Liub Chii was terminated because Sue was afraid that I was going to blow the whistle to OIG for wrongful termination as retaliation for taking FMLA and as whistleblower to risk Astellas not securing the closure of 5 year CIA.

14. Sue was not aware of my reporting to Astellas Global Ethics and Compliance; and Infosec Team until on 04/17/2024 when she was informed by Infosec Team that I reported the communication error issue to them so they need to investigate. Sue was not upset with me by bringing up the issues to herself, her manager, and even HR, but she cannot tolerate that I bring the issues formally to Astellas Global Ethics & Compliance who are mainly based in UK and Northbrook. Therefore the timing for Sue's retaliation of me as whistleblower should start from 04/17/2024 (when Infosec Team started to investigate and informed Sue that I reported), not 11/17/2023 (the date that I reported Liub Chii Yang to my manager's manager and HR director). On 04/26/2024, Sue Duan quickly called out an unexpected meeting for me to discuss my interaction with Monica Zhang. Sue yelled at me that I cannot start any experiment without Monica's consent. She never mentioned previously that I need Monica's consent to do any labwork, this is just retaliation to me as a whistleblower. Sue cannot disclose her intention to retaliate me as whistleblower, she began to pretend that I have performance issues calling collaboration in disguise. I refused coercive consent since Monica had no hands on experience with the mass spec, and questioned Sue why she was only onsite for one workday per week rather than every work day that she herself mandated for the whole Analytical Development Department. Sue was silent when she heard me questioning her attendance. Then Sue voluntarily came onsite two work days per week after 04/26/2024 rather than one work day per week previously. When Sue saw my complaint/lawsuit, she will come every work day from Monday to Friday, pretending that she never had unexcused absence in the past.

15. On 04/30/2024, I informed Sue via email that I need to take FMLA to care for my sick mother. Astellas performance review cycle begins on 04/01 current year through 03/31 the following year, not 01/01 to 12/31 calendar year. The last day for year 2023 performance review (assessment period from 04/01/2023 to 03/31/2024, not 01/01/2023 to 12/31/2023) was 05/24/2024 for all Astellas employees. Sue Duan rated me "partially meet expectations" because I cannot make intact LCMS, peptide map LCMS, and small molecule LCMS to work. The method development of these assays are senior scientist's responsibilities, not my responsibility as senior research associate. Since Liub Chii Yang cannot perform as senior scientist and Sue Duan has zero mass spec background and had no idea what supervising and coaching mean, they just dump all the assays to me as SRA. If I can develop the assays, they will take the credit. If I cannot develop the assays, they will punish me as scapegoat. I have a learning curve to develop these assays, on top of Liub Chii sabotaged my instruments on a regular basis, I wasted lots of time to troubleshoot. And Liub Chii tricked me to this SRA position by lying to me that she was going to show me how to run mass spec during the interview and she of course did not keep her promise when I accepted this position. Sue of course never appreciated me helping her coaching the new hire contractor, setting up CAD detector and nitrogen generator which are her responsibilities. Sue had prolonged unexcused absence which means she doesn't even come to work most of the time, which is in violation of the Analytical Development Department rules that Sue created herself. Sue even lied in my performance review that I get all the help from vendors. The reality is there is no contract that vendor provide free support or even do the work for us. In the same meeting, I was being told that Liub Chii was no longer in the company effective today (05/24/2024) and the reason for her departure cannot be disclosed to me. This was also my last day before FMLA.

16. I take FMLA from 06/03/2024 to 08/25/2024, the week prior to 06/03/2024 and two weeks after 08/25/2024 are my vacation added to FMLA. My total time off is from 05/28/2024 to 09/06/2024 which was pre-approved before I was gone. I returned on 09/09/2024 (Monday) and worked on residual enhancer assay upon Sue's request. Sue did not let me return to the same job. Residual enhancer is an HPLC (high performance liquid chromatography) assay which has nothing to do with mass spec. Before taking FMLA, I worked on liquid chromatography mass spec (LCMS) and I made the assay to work independently with one minor help from Monica who changed one parameter on the mass spec method to "targeted" approach. Other than that, I did all experiments with design, execution, and data analysis with the software that I learned myself from April 1st (the first day of the new performance review cycle begins) till 05/24/2024, just in two months. After I was back first day on 09/09/2024, I was supposed to be back to the same job performing LCMS according to the FMLA labor law, but instead I got downgraded for my work by doing HPLC only. Afraid of retaliation, I did not speak up and accepted this HPLC job responsibility without doing mass spec anymore. To provide more context, Astellas paid Thermo Fisher Scientific/PPD as CRO to develop the residual enhancer method and PPD already finished developing the method and transferred the method to us for testing. Re-development of the residual enhancer method is totally unnecessary. I successfully followed the PPD test procedure and reproduced the results without any issues on 09/19/2024 which is already speed of light performance. Even if I successfully performed the experiment, Sue made a big deal of the pre-peak of the 10 mM enhancer and asked me to get rid of the pre-peak by re-developing the method. Sue hinted me to cover up the pre-peak of the 10mm enhancer by falsifying and fabricating the data. We can ask PPD to cover up the pre-peak, of course, that sort of not legitimate work cannot be asked for any third party to perform including PPD. Therefore, this kind of monkey business was passed on to me by Monica and Sue. I informed her that

the pre-peak is a second component and should not be removed by re-developing the method to cover it up. She said she agreed with my conclusion, yet she still insisted me to re-develop the method to remove the pre-peak. After sensing my reluctance to falsify data, Sue come up with both separation agreement (if I refused to do it) and performance action plan (PAP) to impose me to do it on 10/17/2024. In order to keep my job, I did not choose separation agreement which means voluntary separation; instead, I chose PAP to work on the unnecessary method development of residual enhancer. I understood Sue's true intention to assess me for this pointless method re-development. If I am not capable of developing this method as senior research associate, she can fire me. Upon Sue's request, I successfully developed a different residual enhancer method using a different acid in mobile phase and different gradient with flat baseline. The moment I finished method development and handed it over to Sue, she said I had work passively with her since I was back from FMLA and decided to terminate me earlier than set forth in performance action plan. Therefore, my last day with the company was 11/15/2024. According to Sue, enhancer method development is only one of the four aspects I need to work on. The other three aspects are regarding communication, collaboration, and work as "One Astellas", etc. These four aspects were tailored toward me to make sure that I won't pass at any step. For example, step 1: testing. If I cannot reproduce the testing results from PPD, I will be terminated. Since I successfully reproduced the testing from that of PPD, Sue come up with step 2: re-develop the method. If I cannot successfully re-develop the method, she will fire me. After I successfully re-develop the method, she moved on to step 3: communication assessment. She unilaterally decided that I have communication issues and therefore terminated me. If I successfully finish the previous steps, she will play it by ear and create more and more next steps to make sure that I don't meet the passing criteria with endless next steps based on her sole decision. She randomly grab some important words from the

air like communication, respect, collaboration, etc and invented causes that she made up to terminate me. If you ever worked, you understand what PIP (performance improvement plan) is. Sue coined the word PAP (performance action plan). Sue never had any intention for subordinates to improve if anybody ever get on PAP. Her intention is not for subordinates to improve, but she is going to act, that is why's it is called performance action plan. Her action means termination. Of course she cannot reveal her intention as performance termination plan (PTP), and therefore, calling it PAP. Sue was a serial terminator. In February 2024, Sue terminated a young research associate, accusing him lying about his attendance. In fact, Sue herself had prolonged unexcused absence, yet Sue did not even need to lie about her chronic unexcused absence. Sue created rules for AD department that we all need to be onsite every workday (Monday to Friday). Yet Sue herself was only here onsite one work day per week before 04/26/2024 and two work days per week after 04/26/2024. On 05/24/2024, Sue terminated Liub Chii Yang who should be fired in January 2024 after I reported to Astellas Global Ethics and Compliance. I cannot say that Sue terminated a contractor in June 2024 since he was a contractor. The contractor left after his contract ends. If the contractor was a regular employee, he would be terminated by Sue as well. Bad things were being said about the contractor after he was gone. The most serious one is he was threatening a vice president. Finally Sue terminated me on 11/15/2024 due to PAP. Don't make the mistake thinking I have performance issues. Sue wants to get away with violating the labor law for FMLA by lying that I have performance issues. If Sue get away doing this to me, all employers can do it to employees taking FMLA by lying they have performance issues to coverup employer's violation of FMLA labor law.

17. Sue already planned my replacement while I was still on FMLA, so she planned to get rid of me regardless of my performance which she can falsify to retaliate me for taking FMLA and retaliate me as whistleblower for reporting Liub Chii's wrongdoings to Astellas Global

Ethics and Compliance. On 06/28/2024, Sue said in the Analytical Development (AD) group meeting that she had two Scientist II position openings, one position for Analytical, one position for Bioassay. I realized immediately that the Scientist II Analytical position is not a new headcount, but a replacement for me. She allowed me to return from FMLA to create illusion that she did let me return and there was no retaliation to take FMLA, but rather my departure was due to my performance issue. The scientist II Analytical position was posted ~08/19/2024 when I was still on FMLA. One candidate interview was on 10/07/2024 and another candidate interview was on 10/10/2024 for the Scientist II Analytical position. I saw the job description for this position was already taken down on 10/17/2024. Unfortunately, both candidates turned down the offer the last week of October in 2024. The same scientist II Analytical position was reposted on 11/04/2024. If my position was not needed, it should be lay off (not termination which is associated with fire). If I was terminated for performance issues, then the position is not eliminated, but rather re-hire a qualified person to perform the job, and this position to replace me should be posted after my termination, not before my termination. When I was back on 09/09/2024 from FMLA, my coworker told me that a candidate for scientist II: Bioassay came for the interview for nothing. That candidate spent the time for the whole round and was told by Josh that there was a hiring freeze which means hiring was only for replacement, not for new opening. By the same token, according to Josh, the Scientist II Analytical position was also a replacement, not a new opening. Who are they going to replace? Obviously they were going to replace me. Sue Duan scheduled a meeting on 09/09/2024 from 11:00 to 11:30am. I waited in a conference room by myself since I was very nervous that she will yell at me as she did on 04/26/2024. Sue was late, when she was here at 11:10am, she asked me to go to her office via Teams chat. I told her that I prefer to stay in the conference room. Sue asked me where I was so she can come to the conference room to meet me. I told her

that I would come to her office instead. During the meeting, she did not give me any headache. After I was home, my mother asked me how the first day went and whether there was any retaliation against me taking FMLA. I told my mother that "No, I am safe". I am stupid enough that Sue of course is not going to yell at me the first day when I am back from FML, otherwise all my coworkers will know that she is retaliating me for taking FMLA. Sue was hiding very well on my first day back but she cannot wait until 10/01/2024 during the HPLC group meeting with Sue herself and Monica Zhang via Teams. Sue asked me to explain what is the difference between formic acid and phosphoric acid. I told her that I don't know. Upon hearing that, Sue suddenly yelled at me and accused me not performing at my level. Sue grasped this good opportunity that I did not know the difference between these two acids. I feel so scared, threatened, and helpless. I asked Monica for help explaining what the difference between formic acid and phosphoric acid. Monica just asked me to google it and nothing else. Sue Duan continued to yell at me with her mad at me voice until the meeting end. On 10/04/2024, I reported Sue Duan to Astellas Global Ethics and Compliance for falsifying mass spec data and retaliating me taking FMLA with the report key of 274221121501. On 10/07/2024, David Colen from Astellas Global Ethics and Compliance reached out to me saying that he was going to investigate the mass spec data falsification part only. David added that he is not a scientist. I drafted a three-page explanation explaining to David how to interpret mass spec data. I also added comments in AT132 mass spec presentation pointing out where the data were falsified. I attached the documents for David to review. I am sure that these documents can be reviewed by any non-scientists like David. I mentioned to David that we can have 1:1 meeting if he doesn't understand, but I never heard back from David regarding mass spec data falsification. David was supposed to investigate but instead he covered up data falsification as well, and he re-directed me to Sue and HR to terminate me. I request the mass spec data to be

independently reviewed outside of Astellas (e.g. court). I have written emails showing that these two presentations exist and want to subpoena these two documents in court so I can explain to anybody how the data is being falsified. You don't need to be a scientist to understand and I will walk you through so you will be amazed that the data can be falsified this way. Eventually any qualified and honest mass spectrometrist who have no conflict of interest with Astellas should be able to verify the data integrity if requested to do so by court. This is the second time that I reported mass spec data falsification. Astellas Global Ethics and Compliance did not even investigate it with a different set of investigators. After Astellas closed the CIA on 08/06/2024, Sue had nothing to worry about CIA, and therefore, can terminate me by using performance issues as pre-text after I was back from FMLA. As part of Sue's retaliation, she presented a separation agreement and a PAP to me on 10/17/2024 and let me pick and choose which one do I want. I told her that I don't want separation agreement, so she handed PAP to me.

18. Sue held me as an SRA to a much higher standard than two phD senior scientists Liub Chii Yang and Monica Zhang, and of course she herself as Associate Director. In addition to Liub Chii Yang cannot perform at her level which I already mentioned in significant details, both Sue and Monica Zhang cannot perform at their levels either. Sue's unfit to lead mass spec lab with zero mass spec experience and zero chromatography experience, has prolonged unexcused absence, falsifying mass spec data with Liub Chii, asking me to falsify HPLC data to cover up the pre-peak of the enhancer assay, Sue is also a serial terminator to terminate subordinates she dislike, taking credit of subordinates' work by so called collaboration using meeting minutes and conspiring with two phD senior scientists who pretend to coach, but never actually coach subordinates, harassing me to retaliate me as whistleblower and violating FMLA labor laws by lying about my performance. Sue imposed on subordinates to write weekly updates, but she herself never wrote any post-

meeting notes like other team leaders do write post-meeting notes. Sue only wrote PAP and her every PAP leads to 100% success of wrongful termination of subordinates to follow us to the rest of our career. Sue never provided any training or support to anybody who were terminated including me despite that I helped her a lot which are supposed to be her responsibilities like setting up charge aerosol detector, nitrogen generator, coaching the contractor.

19. Sue accused me of having communication issues in PAP. She was actually stealing subordinates' credit in guise of communication. Sue did not qualify for her job as associate director of Analytical Development. She never had any LC-MS experience. Many people at her position are experts who had extensive experience in the past before moving to management positions and are fully capable of coaching subordinates. In addition to her poor analytical skills such as CE-SDS, icIEF, AUC, her molecular biology and cell based assays skills are very superficial. Her lack of qualifications for her job results in her no understanding of what subordinates independently figured out experiments and results. That's why she demanded subordinates to provide weekly updates in formal powerpoint slides which is totally unnecessary and take so much time to prepare on top of our busy work. These weekly updates are not formal presentations. The only reason Sue demanded these weekly updates is because she does not understand if subordinates only give her verbal updates, so she request us to include all figures, provide rational, draw conclusion, list future plans so she can digest slowly, copy and paste our work and present to upper management lying that these are all performed under her guidance to take subordinates' credit. The reality is she never provide any guidance to me and minimal guidance to other subordinates. Although Bill gave my credit to Liub Chii for the SDS-PAGE minor band identification, Bill did acknowledge that I figured out independently. Although I did not get any promotion, I did get good reputation in the AD department. But Sue is not Bill. She is not going to give

me credit for the work I figured out myself independently. She wanted to pretend that she was supervising me and all good ideas are from her to prepare her for the next undeserved promotion in the future. The weekly updates also serve a means to attack me by lying that I have communication issues which is ground for dismissal based on Sue's unilateral labeling of me without due process. Sue herself does not know how to operate any instruments and any softwares in the lab, and does not understand any theories of LC-MS or other analytical techniques, yet she hold me to a very high standard that I need to know how to do lab work with independent design, operation of multiple hardwares, softwares, and running the assays. While Monica does not have to do any labwork at all which is contradictory to the job description of the senior scientist position that Monica applied and hired. The reality is Monica doesn't know how to do lab work because she has no hands-on experience. Sue covered up for Monica that Monica is a team lead and therefore, only attend meetings, no need to do labwork. In fact, there is only very few meetings (most of them are pointless anyway) that Monica needs to attend, the rest of time Monica was just sitting there at tax payer's expense. In addition to labwork, I need to explain all theories, mechanism of actions, rational for the design of experiments in the meetings, which Monica doesn't need to explain anything. Sue cursed me for not knowing the difference between formic acid and phosphoric acid at the HPLC meeting on 10/01/2024. I called on Monica for help. Monica cannot explain either and just asked me to google it. Sue is of course perfectly fine not able to explain the difference between formic acid and phosphoric acid as associate director. This is perfectly fine for Sue that Monica does not need to do any labwork, does not need to explain anything, but pretend to supervise me to create illusion that Monica was doing the work because supervising me was Monica's work. However, Monica was not supervising me because Monica is not capable of supervising me. Sue held very high standards on my weekly report and verbal update with unreasonable scrutiny, while Monica did not give any

weekly update either verbally and only uploaded her weekly report on 08/12/2024 and nothing else until my last day of 11/15/2024. This is because Monica absolutely did nothing other than showing up to work for attendance only, but nothing was delivered by Monica. Monica does not know how to design, plan, and perform product characterization using mass spec. Monica does not know how to identify, develop, validate and implement novel analytical assays as well as traditional assays, Monica does not know how to maintain the mass spec. For the senior scientist role, the hands on experience utilizing high resolution mass spec is required, strong working knowledge on analytical software including but not limited to BiopharmaFinder, Xcalibur, Empower, Waters connect. Monica is not familiar with any of the software and hardware, yet Monica tried to pretend to "coach" me how to develop small molecule residual LCMS, peptide map LCMS, intact LCMS that she does not know how to do by exploiting me, yet calling "collaboration". I don't want to be exploited, that's when Sue Duan comes into play. Sue imposed coercive "consent" for me which means I cannot do any labwork without Monica's consent. Yet Monica always come up with "forget", delay, and lying strategies to resist collaboration with me, so I was set to failure no matter what. Monica and Sue even intentionally twisted the facts that I was harassing Monica. These are all listed by Sue Duan on my PAP. In 04/22/2024 mass spec group meeting, Sue asked me to collaborate with Monica. So I asked Monica when she can show me how to create a BQT inhibitor method, Monica reluctantly said tomorrow, I ask Monica what time (since I already know Monica always say tomorrow, tomorrow, tomorrow….), Monica said after 10 am. Sue was there listening. The next day after 10 am (as we agreed upon), I bring Taka (collaborator from another department on BQT inhibitor program) to ask Monica to show us how to create a method. Monica told us that she had new hire training at this moment. I am not going to depend on Monica since I know she cannot perform yet I had to obey Sue's order to "collaborate" with Monica who always resist my collaboration

but Monica is very sneaky not to refuse collaboration. So I showed Taka how to run mass spec myself. Sue of course used this so called collaboration to intentionally and maliciously twist the fact by saying on my PAP that I was harassing Monica by insisting Monica to show me how to run mass spec when Monica mentioned she had new hire training. Monica used fraud to acquire and sustain her job using tax payer's money to fund her salary and benefits yet she cannot perform and as a result of that, all mass spec assays are currently being transferred back to CRO since Monica failed to bring these assays in-house. Astellas is not charity. The salary and benefits wrongfully acquired by Monica is all going to add up to inflate drug price once the drug is licensed so patients cannot afford them. This kind of fraud is not considered development. Then how is Monica hired in the first place?

20. On 01/02/2024, I submitted a 40-page report accusing Liub Chii Yang's numerous wrongdoings to Josh Zibit and Vicky Wallace via email and uploaded it as a supplement document to Astellas Ethics and Compliance to the same set of mass spec issues I already reported with report key of 683791647001. When the senior staff realized that Liub Chii cannot perform after reading my 40-page report accusing Liub Chii's entire 2.5 year wrongdoings, the Analytical Development Department started the hiring of a senior scientist for mass spec to replace Liub Chii during the first week of January 2024. After interviewing three candidates for this position, Monica Zhang was hired and her start date was 04/08/2024. Unlike the other candidates who demonstrated that they had extensive hands-on experience for mass spec and showcasing their expertise on numerous hardwares, softwares, applications, cutting edge assays, during their interviews, I was not convinced that Monica had any hands-on experience based on her interview presentation with high level overview of theories only. So I asked Monica whether she worked in the lab in the past. She gave a very unconfident answer of "yes" without any explanations followings the "yes" answer because she knew this was the answer that I wanted to hear and the job

description for the senior scientist role requires working in the lab.. Monica got hired based on her false answer to deceive us that she had hands-on mass spec experience.

21. Since Monica's senior scientist position was wrongfully secured, Monica of course never met any of her deliverables which are assay development for intact LCMS, peptide map LCMS, and small molecule residual LCMS. As a result of that, these aforementioned assays were being transferred back to CRO for development and testing which defeat the very purpose of bringing mass spec assays in-house rather than relying on CRO anymore. Sue Duan is perfectly fine with Liub Chii and Monica failed to bring these assays in-house, yet Sue held very high standards for me as an SRA by rating me "partially meet expectations" that I cannot make these aforementioned assays work on a timely basis intentionally ignoring Liub Chii's sabotage for my instruments. Monica Zhang was here since 04/08/2024 replacing Liub Chii and all the goals on my year 2023 performance review should be transferred to her performance review. As of 11/15/2024, I did not see any mass spec results from Monica Zhang as senior scientist. Based on her senior scientist level and the fact that she does not need to relocate between two different labs across several miles like we did in year 2023 which takes time and reduced our time to develop the mass spec assays, Monica should have already finished these goals of developing intact LCMS, peptide map LCMS, and small molecule LCMS. As of my last date on 11/15/2024 in Astellas, Monica did not come up with any LCMS assay. Monica was originally scheduled to give a mass spec talk on 11/21/2024 but was cancelled for nothing, presumably due to lack of mass spec data or afraid of me reporting mass spec data falsification should the data was being falsified. Both senior scientists Liub Chii Yang and Monica Zhang are not capable to deliver any of these results after their decades of mass spec experience. That's not a problem because Sue will cover up for them. On my first day back from FMLA on 09/09/2024, Sue told me that they made significant progress for mass spec work. Later on I

found out that the significant progress they made is just the purchase of two instruments. I did not see any runs by Monica on Thermo mass spec while I was on FMLA for 15 weeks although I had no idea whether Monica did any work on Waters QTOF mass spec. Nonetheless, I started the residual enhancer work ASAP to make up the time I lost during FMLA. I successfully reproduced the results using method developed by ThermoFisher Scientific. So Sue asked me to re-develop the method which is pointless, and she accused me of not able to develop a good method on the first day I tried. Sue held me to a very high standard that only allowing me one day to develop a method. Monica sat for 15 weeks while I was on FMLA and Sue did not ask Monica to develop this residual enhancer method or any methods at all. On 10/30/2024, an engineer from Waters was here the entire day teaching Monica ABCs regarding Waters QTOF mass spec. I overheard them while I was in the mass spec lab. Monica asked lots of questions to the engineer like where the data is stored. Monica doesn't even know where the data is stored, how is Monica going to show me how to run mass spec, as I need Monica's consent to do any labwork imposed by Sue.

22. Sue doubled down with Monica to falsify my PAP with their very subjective opinions, nothing objective. Here is my belated mid-year performance review due around Thanksgiving 2024 (Nov 28 and 29, 2024) which I never had a chance to write, namely BQT inhibitor LCMS, residual enhancer HPLC assay, and set up nitrogen generator as sustainable goal. I successfully make BQT inhibitor LCMS assay to work from 04/01/2024 (performance review cycle begins) to 05/24/2024 (my last day before FMLA) by independently design and carry out the experiment, and figured out analysis software to analyze the data in a very short period of time. I am a big champion to set up nitrogen generators for the mass spec lab that nobody wanted to volunteer due to lack of experience. I provided technical support for vendor and model selection, overcome all the technical issues including but not limited to the uninterrupted power supply, connection issues, and

overheat issues. Based on my recommendations before I was gone for FMLA, two nitrogen generators were successfully installed in the mass spec lab as well as in Analytical Operations lab by Facilities on 09/10/2024. I saved the company lots of money by eliminating the use of expensive and inefficient LN2 and replaced with nitrogen generators that are green. This meets the company's environmental sustainable goals. After I was back from FMLA on 09/09/2024 till termination on 11/15/2024, I successfully reproduced the results based on residual enhancer method developed by ThermoFisher Scientific. I also independently developed a different residual enhancer method using different acid and different gradient.

23. Plaintiff timely exhausted my administrative remedies by filing a complaint of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and obtained the right to sue. Defendant's actions were undertaken for improper purposes as alleged above and were willful, oppressive and in conscious disregard of plaintiff's rights, and were designed and intended to cause and did, in fact, cause plaintiff and plaintiff's mother to suffer severe emotional distress, pain and suffering, and substantial economic damage and, therefore, justify the awarding of exemplary and punitive damages. The above allegations are incorporated by reference in each and every cause of action stated below.

## II.CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Mass Spec Data falsification of AT132 in Violation of Research Conduct)

24. Start criminal investigation of mass spec data falsification for AT132. Liub Chii does not know how to do mass spec and her entire slides don't have any mass spec raw data of mass-to-charge ratio (m/z) and deconvoluted mass. The AT132 IND (IND #017367) was filed and the samples are used on patients. Liub Chii's reckless data falsification will affect patient safety. I request the court to subpoena the AT132 mass spec data slides and I will explain to you how the data is being falsified. At the end, the integrity of the data can be

verified by mass spectrometrists who have no conflict of interest with Astellas. Due to Liub Chii's unethical, reckless, and illegal mass spec data falsification, the Plaintiff, the scientific community, tax payer, and the patients are harmed.

**SECOND CAUSE OF ACTION**

**(Mass Spec Data falsification of KT430 in Violation of Research Conduct)**

25. By the same token, the KT430 mass spec data was falsified the same way by Liub Chii. Start criminal investigation of mass spec data falsification for KT430. KT430 is either already being used on patients or will be used on patients depending on whether the IND is filed or not. Due to Liub Chii's unethical, reckless, and illegal mass spec data falsification, the Plaintiff, the scientific community, tax payer, and the patients are harmed.

**THIRD CAUSE OF ACTION**

**(Conspiracy of Liub Chii Yang and Sue Duan for mass spec data falsification)**

26. Both Liub Chii and Sue Duan don't know anything about mass spec. Both of them secured their job positions through favorism and fraud. Liub Chii get high pay to falsify mass spec data. I reported mass spec data falsification when I discovered that her entire AT132 presentation slides don't have mass spec raw data (mass to charge ratio) and deconvoluted data (Dalton), just numbers (molecular weight) she made up based on known primary sequence and PTMs discovered by Charles River Laboratories (CRO) who used to do mass spec work for us in the past. Sue wanted to pretend that there were mass spec data coming out of her department to take credit. Since Sue was conspiring with Liub Chii, I cannot stop their mass spec data falsification. Liub Chii was able to falsify her second project KT430 and presented her lies again. Later on, I was never invited to these mass spec meetings so I am not sure whether there are more data that were falsified by Liub Chii and Sue Duan. The

role that Sue plays was to silence me. Sue successfully silenced me. The plaintiff was harmed.

**FOURTH CAUSE OF ACTION**

**Conspiracy of Monica Zhang (suspect only, needs to be confirmed) to Cover Up Mass Spec Data Falsification**

27. I insisted Vicky Wallace to investigate mass spec data falsification. Vicky informed me that she gave the AT132 slides to a mass spectrometrist to review. The conclusion is there is no evidence of mass spec data falsification. I told Vicky that I did not agree and asked Vicky who the reviewer is. Vicky said she cannot tell me. I asked Vicky whether the reviewer is qualified to review the mass spec data. Vicky said yes. The mass spec data falsification is very obvious. I suspect the reviewer is Monica Zhang. She covered up mass spec data falsification upon Sue Duan's request. Since Vicky did not tell me who the reviewer is, so I don't know who the reviewer is. My speculation is Monica who is most likely. But there is a slight chance that the reviewer is not Monica, but someone else. There is another possibility that Vicky never submitted AT132 mass spec slides to anyone for review and just told me that the slides were being reviewed. There is also another possibility that Sue Duan intentionally submitted a legitimate document from Charles River Labs and replacing the authors and company to pretend to be Liub Chii' work. Start criminal investigation of conspiracy of mass spec data falsification cover-up. Due to the lack of integrity scientific data coverup, the plaintiff, the patients, the scientific community, and taxpayers are harmed.

**FIFTH CAUSE OF ACTION**

**(Conspiracy of David Colen and Astellas to Cover Up Mass Spec Data Falsification)**

28. This is the second time that I reported mass spec data falsification along with Sue's retaliation toward me taking FMLA. David Colen contacted me just for the investigation of the mass spec data falsification part and he mentioned that he was not a scientist. Keeping he was not a scientist in mind, I wrote a 3 page summary showing David how to read mass spec data and point out all the places that the mass spec data were falsified in Liub Chii's AT132 mass spec presentation. I had the false hope that this is a different investigator than the first time (investigator is Dawn Owen when I reported Liub Chii's harassment and sabotage). I offered to have a 1:1 meeting with David if he needs explanation. But there was no response from David. He re-directed my complain to HR and Sue Duan who terminated me. It is not that David did not understand the mass spec data falsification, he wants to coverup since he understood how serious the issue is. It doesn't matter whether it is Dawn or David or anybody from Astellas Global Ethics and Compliance. Anyone of them will cover up for mass spec data falsification. Start criminal investigation of conspiracy of David Colen and the entire Astellas to cover up mass spec data falsification. Due to their lack of integrity, the plaintiff, the patients, the scientific community, and taxpayers are harmed.

**SIXTH CAUSE OF ACTION**

**(Falsification of the Government Document of 5-year Corporate Integrity Agreement by Astellas)**

29. Astella wrongfully secured the 5-year CIA because Astellas never truly investigated the integrity issues I reported but pretended to investigate and provided false statement to government that they resolved all integrity issues. Astellas was placed on a 5 year CIA by Office of Inspection General (OIG) because Astellas knowingly and intentionally used Mycamine on pediatric patients that Mycamine was not approved for in year 2010. The

whistleblower at that time was Brian Smith, an Astellas salesperson. Due to the unethical behavior, Astellas was placed on 5 year CIA by OIG. During 04/24/2024 to 08/06/2024, Astellas was actively seeking closure of 5 year CIA. After I reported Liub Chii's disgraceful actions in November 2023, Astellas Global Ethics and Compliance did not start to investigate after 5 months since reporting, and falsified the outcome of all my inquiries by shutting them down without factual determination. So everything look beautiful on paper presented to OIG. Astellas knowingly and intentionally made false statement in government documents. I request the court to work with OIG to revoke the 5 year CIA that Astellas secured through fraud. Astellas will continue with the fraud, just coverup so nobody will know, and to silence Plaintiff as whistleblower. The plaintiff and the government were harmed.

**SEVENTH CAUSE OF ACTION**

**(Sabotage Lab Instruments)**

30. Liub Chii sabotaged my instruments secretly when I was not in the mass spec lab. Liub Chii was the sole instrument owner and user for Waters QTOF mass spec connected to Waters HPLC, whereas I was the sole instrument owner and user for ThermoFisher Scientific mass spec connected to Waters Acquity HPLC. I was never been close to Liub Chii's instruments, let alone touch them. However, Liub Chii always sabotaged my instruments secretly by intentionally disconnecting the tubing from HPLC to mass spec so my samples were sent to HPLC waste rather than mass spec for analysis. Liub Chii loosened numerous parts on my HPLC so they started to leak slowly but detrimentally resulting in profiles looked weird, and finally I caught Liub Chii in the act that Liub Chii was walking away from my computer after deliberately creating "communication error" so my computer lost communication to control HPLC on 11/13/2023. All of them took me forever to

troubleshoot and calling on HPLC and mass spec vendors for help. Liub Chii's reckless sabotage wasted my time and significantly delayed my work on a regular basis. When I reported these issues as they occurred in real time, Sue silenced me and that's why Liub Chii can continue the sabotage without any consequences. Plaintiff was harmed.

**EIGHTH CAUSE OF ACTION**

**(Computer fraud)**

31. The deliberate cause of communication error on the computer connected to my HPLC violate 18 U.S. Code 1030 – Fraud and related activity in connection with computer. On 11/13/2023, Liub Chii intentionally, secretly, maliciously accessed my computer without my consent and without me knowing when I was gone out of the lab. I caught Liub Chii in the act of deliberately creating communication error for my computer connected to HPLC so the computer cannot control HPLC that sitting in the very acidic mobile phases which will corrode the instrument. Liub Chii did that under my credential so the company will mistakenly think I did this so I can be fired. Liub Chii also illegally captured my peptide map method on my computer to plagiarize my work. This communication error was not a single incident for computer fraud. On 06/29/2023 around 11:30am, Liub Chii jumped right behind me to look at my mass spec data on my analysis computer without my consent when I was phoning ThermoFisherScientific for technical support. Liub Chii's act involved both harassment and also computer fraud. Plaintiff was harmed.

**NINTH CAUSE OF ACTION**

**(Conspiracy of Liub Chii Yang and Bill Werner to falsify Liub Chii's Year 2022 Performance Review to Steal My Credit)**

32. I independently figured out the identity of minor bands on SDS-PAGE all by myself from design and execute the experiments, giving a well received presentation in very short notice

without any supervision, and wrote a report with very minor edits from Bill. This is significant contribution since three senior scientists failed to identify these minor bands in the past. In addition, my contributions are broad because this approach I independently developed apply to all Astellas molecules and the identification of minor bands are required by FDA. Both Liub Chii Yang and Bill Werner had nothing to do with this project. Simply due to the reporting structure, Bill falsified Liub Chii's year 2022 performance review to give my credit to Liub Chii who was not capable of identify the minor bands on SDS-PAGE. According to my performance, I should be rated "exceed expectation" and Liub Chii should be rated "partially meet expectation" or "does not meet expectation", yet Bill rated both me and Liub Chii "meet expectation" at my expense. If Bill rated Liub Chii fairly, Liub Chii should be terminated due to performance issues and she won't be in the company to harass me, sabotage my instruments, and falsify mass spec data after 02/14/2023 when was Bill's last day in the company. Plaintiff was harmed.

**TENTH CAUSE OF ACTION**

**(Conspiracy of Liub Chii Yang and Sue Duan to Downgrade Liub Chii's Fire to Just Termination due to Performance Issues)**

33. Even if Liub Chii cannot perform, there is always somebody to lift her up, being Bill Werner or Sue Duan. In addition to her performance issues, Liub Chii also harassed me, sabotaged my instruments on a regular basis, and falsified mass spec data. The company does not want to be liable for her behaviors and Sue Duan wanted to cover up Sue's very own wrongdoings like mass spec data falsification. So Liub Chii only get termination due to performance issues. In reality, Liub Chii should be fired on the spot on 01/02/2024 when I reported Liub Chii' mass spec data falsification. Mass spec is very important to determine critical quality attributes (CQA) that other instruments/assays cannot determine. This will

impact safety and efficacy of the drug being tested and ultimately the safety of patients will be compromised. The molecules that Astellas and Liub Chii were testing using mass spec were used on patients. Liub Chii's entire 2.5 years employment with Astellas is full exploitation to me and endanger patients by using tax payer's money to fund her high salary and other benefits which she did not deserve. If Liub Chii got unemployment benefits, they should be stripped off if she was convicted of mass spec data falsification. The plaintiff was harmed.

**ELEVENTH CAUSE OF ACTION**

**(Race, Gender, Age Discrimination in Violation of FEHA)**

34. Defendant is an employer within the meaning of FEHA.

35. Plaintiff was an employee of Defendant.

36. Defendant terminated and/or failed to promote Plaintiff.

37. Plaintiff's race, gender, age were substantial motivating reasons for the termination and/or failure to promote.

38. Plaintiff was harmed.

39. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

**TWELFTH CAUSE OF ACTION**

**(Retaliation in Violation of FEHA)**

40. Defendant is an employer within the meaning of FEHA.

41. Plaintiff was an employee of Defendant.

42. Plaintiff opposed discriminatory and illegal activity that Plaintiff reasonably believed to be unlawful under FEHA and sought reasonable action to report to Astellas Global Ethics and Compliance twice.

43. Defendant terminated Plaintiff.

44. Plaintiff's opposition to activity I reasonably believed to be discriminatory and illegal is the motivating reason for Defendant's decision to terminate Plaintiff.

45. Plaintiff was harmed.

**THIRTEENTH CAUSE OF ACTION**

**(Violation of Labor Code 1102.5)**

46. Plaintiff was an employee of Defendant.

47. Plaintiff disclosed information that I had reasonable cause to believe disclosed a violation of, or noncompliance with, federal and state, statutes and regulations to a person with authority over me and/or an employee who has the authority to investigate, discover, or correct the violation or noncompliance.

48. Defendant terminated and/or failed to promote Plaintiff.

49. Plaintiff disclosure of information that I had reasonable cause to believe disclosed a violation of, or noncompliance with, federal and state, statutes and regulations to a person with authority over me and/or an employee who has the authority to investigate, discover, or correct the violation or noncompliance was a motivating reason for the termination and/or other adverse actions.

50. Plaintiff was harmed.

51. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

**FOURTEENTH CAUSE OF ACTION**

**(Retaliation in Violation of CFRA and FMLA by Hiring Plaintiff's Replacement while Plaintiff was still on CFRA and FMLA)**

52. Defendant is an employer covered by both CFRA and FMLA.

53. Plaintiff was eligible for medical leave under CFRA and FMLA.

54. Plaintiff requested and took a medical leave.

55. While the Plaintiff was still on CFRA and FMLA, the Defendant was already hiring a Scientist II to replace Plaintiff. This Scientist II position is a replacement, not an additional position.

56. The Defendant's action is against CFRA and FMLA which are job protected leave. The Defendant already thought of gut Plaintiff's job while the Plaintiff was still on CFRA and FMLA.

57. Defendant discriminated against and terminated Plaintiff.

58. Plaintiff's request to take a medical leave and my taking of the medical leave motivated Defendant's decision to hire a Scientist II to terminate, replace, and/or discriminate against Plaintiff.

59. Plaintiff was harmed.

**FIFTEENTH CAUSE OF ACTION**

**(Retaliation of Job Reassignment After Return from CFRA and FMLA in violation of both CFRA and FMLA)**

60. Defendant is an employer covered by both CFRA and FMLA.

61. Plaintiff was eligible for medical leave under CFRA and FMLA.

62. Plaintiff requested and took a medical leave.

63. When the Plaintiff was back from CFRA and FMLA, the Defendant placed the Plaintiff to run HPLC, not mass spec anymore.

64. The Defendant's action is against CFRA and FMLA which set forth that the Plaintiff should be returned to the same job after being back. The reassignment to a lower job/position is retaliation.

65. Defendant discriminated against, terminated, and retaliated Plaintiff.

66. Plaintiff's request to take a medical leave and my taking of the medical leave motivated Defendant's decision to reassignment to a lower job/position for Plaintiff.

67. Plaintiff was harmed.

## SIXTEENTH CAUSE OF ACTION

**(Coercively Demanding Plaintiff to Cover-up a pre-peak for the Enhancer HPLC Assay in Violation of CFRA, FMLA, and Public Policy)**

68. Defendant is an employer covered by both CFRA and FMLA.

69. Plaintiff was eligible for medical leave under CFRA and FMLA.

70. Plaintiff requested and took a medical leave.

71. When the Plaintiff was back from CFRA and FMLA, the Defendant asked Plaintiff to do a pointless job, namely re-develop the already existing residual enhancer assay, and mandating the Plaintiff to cover-up the pre-peak by HPLC data falsification. The Plaintiff informed the Defendant that the pre-peak was a second component and should not be removed for nothing.. But the Plaintiff's effort was in vain. The Defendant handed over PAP to impose Plaintiff to cover-up the pre-peak for the enhancer assay.

72. The Defendant's action is against public policy, and retaliation against Plaintiff taking CFRA and FMLA.

73. Defendant discriminated against and terminated Plaintiff.

74. Plaintiff's request to take a medical leave and my taking of the medical leave motivated Defendant's decision to coercively mandate Plaintiff to engage in cover-up of the pre-peak for the enhancer assay.

75. Plaintiff was harmed.

## SEVENTEENTH CAUSE OF ACTION

**(Unpaid Wages in Violations of CFRA and FMLA)**

76. Defendant is an employer covered by both CFRA and FMLA.

77. Plaintiff was eligible for medical leave under CFRA and FMLA.

78. Plaintiff's paid time off (PTO) was already capped at 26.25 days before taking CFRA and FMLA. According to the labor law in year 2024 which set forth that employees are required to use their accrued paid time off (PTO) during CFRA and FMLA. To comply with the labor law, all of these PTO (26.25 days) should be applied during my CFRA and FMLA. However, the Defendant did not apply my PTO toward my CFRA and FMLA. When I was back from CFRA and FMLA, the PTO stopped accruing since the PTO already capped. This results in Plaintiff stopped accruing PTO, and the lost pay associated with it.

79. When the Plaintiff noticed the mistake and informed Defendant to correct it and pay back the PTO that were owned to the Plaintiff. However, the Defendant acknowledged the mistake but intentionally arguing that the mistake did not result in unpaid wages. This statement is not true. As a result of that, the Plaintiff did not get unpaid wages as of today.

80. The Defendant's action is against CFRA and FMLA which set forth that employee are required to use their accrued paid time off (PTO) during CFRA and FMLA for year 2024.

81. Defendant discriminated against and refused to correct the mistake which is deliberate wage theft.

82. Plaintiff was harmed.

**<u>EIGHTEENTH CAUSE OF ACTION</u>**

**(Not Comply with Safety Lab Practices in Violation of OSHA Regulations)**

83. Defendant is an employer within regulations enforced by the Division of Occupational Safety and Health (Cal/OSHA).

84. Plaintiff was an employee of Defendant.

85. Plaintiff opposed to work under unsafe conditions and timely reported to Defendant that aisles are not maintained at least 36" apart and Liub Chii was stalking me when I was holding very acidic mobile phases on the stool to change mobile phases on HPLC. Defendant knew about it and rather ask Plaintiff to tolerate it. Defendant denied my allegations since there were no camera in the mass spec lab.

86. Defendant terminated Plaintiff.

87. Plaintiff's report of unsafe activity and non-compliance were believed to be the motivating reasons for Defendant's decision to terminate Plaintiff.

88. Plaintiff was harmed.

## **NINETEENTH CAUSE OF ACTION**

**(Never Ending Hostile Work Environment)**

89. The work environment for the mass spec lab is very hostile. No assays and no results are coming out of the mass spec lab since three years ago with the intention to bring the mass spec assays in-house. What really happened to me in the mass spec lab was harassment and sabotage upfront by Liub Chii Yang, then retaliation to me as a whistleblower and took FMLA by Sue Duan, and backstabbing by Monica Zhang who pretended to coach me and another contractor. Sue sometimes teamed up with Liub Chii and sometimes doubled down with Monica Zhang to bully me out of the company. These self-declared mass spectrometrists falsified mass spec data and cover-up when I reported the data falsification.

## **TWENTIETH CAUSE OF ACTION**

**(Defamation)**

90. Defendant told its employees that Plaintiff had performance issues. The people to whom this statement was made reasonably understood that this statement was about plaintiff. Further, the future hiring employers reasonably understand the statement to mean plaintiff cannot perform at her level. The intention is to blacklist Plaintiff in the job market. Defendant made this statement maliciously, out of hatred or ill will toward Plaintiff; alternatively, Defendant failed to use reasonable care to determine the truth or falsity of the statement. This statement was a substantial factor in causing harm to Plaintiff's trade, profession, occupation, and/or reputation.

## III. PRAYER FOR RELIEF

Wherefore, Plaintiff seeks relief as follows:

(1) Economic damages for lost wages, employment benefits, and other compensation as a result of defendant's wrongful conduct, plus interest;
(2) Noneconomic damages for pain and suffering and emotional distress;
(3) Statutory attorney's fees;
(4) Injunctive relief;
(5) Liquidated damages;
(6) Civil penalties;
(7) Assumed damages;
(8) Exemplary damages;
(9) Costs of suit; and
(10) Such other relief as the court deems just.

DATED: 04/28/2025

YOUR NAME

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ye Shen
112 cityview drive, Daly City, CA 94014

TELEPHONE NO.: 415-867-1126 FAX NO. :
EMAIL ADDRESS: yeshen2000@yahoo.com
ATTORNEY FOR *(Name):*

FOR COURT USE ONLY

FILED
SAN MATEO COUNTY
APR 2 9 2025
Clerk of the Superior Court
By [signature]
DEPUTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California: County of San Mateo

CASE NAME:
Shen vs Astellas

## CIVIL CASE COVER SHEET

- [x] **Unlimited** (Amount demanded exceeds $35,000)
- [ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**

- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 25CIV02939

JUDGE:

DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [x] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [x] Substantial amount of documentary evidence
   - d. [ ] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 1-20
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 04/26/2025
Ye Shen
(TYPE OR PRINT NAME)

▶ Ye Shen
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| | |
|---|---|
| **SUPERIOR COURT OF SAN MATEO COUNTY**<br>Civil Division<br>400 County Center, 1st Floor, Room A Redwood City, CA 94063<br>(650) 261-5100<br>www.sanmateo.courts.ca.gov | FOR COURT USE ONLY<br>**FILED**<br>SAN MATEO COUNTY<br>4/29/2025<br>**Clerk of the Superior Court**<br>/s/ Kimberly Claussen<br>DEPUTY CLERK |
| PETITIONER/PLAINTIFF: **YE SHEN** | |
| RESPONDENT/DEFENDANT: **ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE** | |
| **NOTICE OF ASSIGNMENT FOR ALL PURPOSES, DESIGNATION AS COMPLEX CASE, SETTING OF A CASE MANAGEMENT AND TRIAL SETTING CONFERENCE, AND COMPLEX FEES DUE** | CASE NUMBER:<br>**25-CIV-02939** |

This case has been filed by Plaintiff(s) as a provisionally complex case and/or a putative class action and/or a PAGA representative action. Pursuant to Local Rule 3.300(a), this action is automatically deemed a "complex case". This case is assigned for all purposes to the Honorable: **Nancy L. Fineman** in **Department 4,** located at **Hall of Justice, 400 County Center, Redwood City, CA 94063**.

ASSIGNED DEPARTMENT INFORMATION

Contact information for your assigned department is as follows:

| **Judicial Officer** | **Department Phone** | **Department E-mail** |
|---|---|---|
| Nancy L. Fineman | 650-261-5104 | Dept4@sanmateocourt.org |

**A Case Management and Trial Setting Conference is set for** 7/29/2025 **at 9:30 AM** in **Department 4** of this Court. In anticipation of the Case Management and Trial Setting Conference, counsel for the parties should be prepared to discuss at the hearing and file and serve written Case Management and Trial Setting Conference statements (**in prose and details, not using the standardized Judicial Council form**) with a courtesy copy emailed to complexcivil@sanmateocourt.org AND to Dept4@sanmateocourt.org **at least five court days prior to the Conference**, as to the following:

a. Status of Pleadings and Appearance of all Named Parties;
b. Status of Discovery, including status of document production, status of depositions, status of completion of merits discovery, and status of expert discovery;
c. Status of Settlement or Mediation;
d. Listing of All Pending Motions and proposed new hearing date;
e. Any anticipated motions and proposed briefing schedule; and
f. Any other matters for which the parties seek Court ruling or scheduling.

**Pursuant to Government Code Section 70616, the complex case fee and the first appearance fee must be paid at the time of filing of the first paper in this complex case.** Plaintiff(s) pay a single complex case fee of $1,000 on behalf of all plaintiffs, whether filing separately or jointly. Defendant(s) pay a complex case fee of $1,000 each on behalf of each defendant, intervenor, respondent, or adverse party, whether filing separately or jointly, at the time that that party files its first paper in this case, not to exceed $18,000 total.

PLAINTIFF(S) ARE REQUIRED TO SERVE A COPY OF THIS NOTICE ON ALL OTHER PARTIES TO THIS ACTION OR PROCEEDING, and promptly file proof of service.

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this court, or, if a physical mailing address is present below, by placing the document(s) in an envelope for collection and mailing, following the Court's ordinary business practices for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Date: 4/29/2025

Chad L Peace, Court Executive Officer/Clerk

By: /s/ Kimberly Claussen

Kimberly Claussen, Deputy Clerk

**Copies served to:**

YE SHEN
112 CITYVIEW DRIVE
DALY CITY, CA 94014

FILED
SAN MATEO COUNTY
MAY 08 2025
Clerk of the Superior Court
By Edward Isai
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| **YE SHEN**<br>**Plaintiff,**<br>**vs.**<br>**ASTELLAS, INC.** ***et al.***<br>**Defendants.** | Case No. 25Civ02939<br>Assigned for all purposes to the Hon. Nancy L. Fineman<br>**CASE MANAGEMENT ORDER NO. 1**<br>CMC: July 29, 2025<br>Time: 9:30 a.m.<br>Dept.: 4 |

This case has been single assigned to Department 4 of this Court before the Honorable Nancy L. Fineman and she has designated it complex based upon the amendment to the cross-complaint.

IT IS HEREBY ORDERED as follows:

1. PLAINTIFF SHALL SERVE A COPY OF THIS ORDER UPON ALL PARTIES, OR THEIR DESIGNATED COUNSEL, WHO HAVE NOT YET APPEARED IN THIS ACTION, including any and all parties added to this action and/or cross-action(s) after the issuance of this order, and file proof of service.

2. As part of the Court's transition to a direct calendar court for all Civil Matters, Judge Fineman has a web page, which provides information regarding the management of her cases. See https://www.sanmateo.courts.ca.gov/divisions/civil/civil-department-judges/nancy-l-fineman-civil-judge. Except as modified by this Order or future orders, she will follow the procedures set forth on the webpage.

3. As of July 1, 2024, Department 4 is located in the Hall of Justice, 400 County Center, Courtroom 4C, Redwood City, CA 94063. All mail or personal delivery, except for proposed orders, shall be sent to her at the Hall of Justice in Redwood City. Documents to be filed are **not** to be submitted to Department 4.

4. Counsel and parties should work cooperatively in the scheduling of court appearances, discovery and reach agreements on non-substantive matters. (See *Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 36 [presumption that attorneys act ethically and honorably].) If the parties believe that this general order should be revised in light of the specific circumstances of their case, they should submit a joint stipulation with an explanation for the requested changes.

5. At this time, all appearances can be by personal appearance or Zoom, unless otherwise ordered by the Court. The Zoom credentials can be found on Judge Fineman's webpage. Please follow the requirements on the website for Zoom appearances.

6. All pleadings, motions, applications, briefs, and any and all other papers in this case, except those exempted by local rule, shall be filed in compliance with San Mateo County Superior Court Local Rules 2.1.7 and 2.1.8. See also Code of Civil Procedure § 1010.6(c); California Rules of Court 2.251(c), 2.253(c). The submission of proposed orders is governed by paragraph 13 of this Order.

7. Except where another method of service is required by statute, all parties and counsel shall serve all documents electronically and all parties and counsel shall accept service of documents electronically from all other parties, in conformity with Code of Civil Procedure § 1010.6 and the Rules of Court. The parties shall also email copies of all pleadings to complexcivil@sanmateocourt.org and include this email address on their proof of service for pleadings. Do not fax copies or correspondence to Department 4, as there is no dedicated fax line.

8. As of October 7, 2024, San Mateo Superior Court started electronically serving documents in civil actions pursuant to the provisions in Code of Civil Procedure section 1010.6. Make sure that your email address is current and that any notices of change of electronic service address are promptly filed and served.

9. All motions and briefs shall conform with the California Rules of Court, especially rule 3.1113, and indicate on the caption page that this matter is "Assigned for All Purposes to Dept. 4." If the

parties believe that additional pages are required, they are to submit a joint request for additional pages. Judge Fineman will grant reasonable requests for a few extra pages.

10. One set of courtesy copies of all pleadings in a binder **for motions** shall be stamped "Judge's Copy" and delivered within two court days of filing or execution **directly** to Department 4. The moving party shall provide a binder with all pleadings filed by all parties. All exhibits must be separated by exhibit tabs. (See, e.g., Cal. Rules of Court, rule 3.1110(f).)

11. Judge Fineman does **not** need copies of Case Management Conference Statements or other pleadings that do not relate to a motion. Courtesy copies of any electronic exhibits shall be submitted on flash drive, CD or DVD in conformity with the requirements of California Rules of Court, rules 2.256(b) and 3.1110(f)(4). The Court cannot receive documents through any type of file sharing. The courtesy copies are a separate requirement from email all pleadings to Department 4 at complexcivil@sanmateocourt.org on the date of filing.

12. As to any and all motions or other matters requiring a hearing, the hearing date shall be obtained **directly** from and approved by Department 4 at Dept4@sanmateocourt.org (and not with the Civil Clerk's Office or the Research Attorney), **prior** to filing the moving papers or other initial filings. Generally, reply briefs must be filed at least two to three weeks before the hearing.

13. Proposed Orders need to be submitted electronically through the Clerk's office with the information required by California Rule of Court Rule 3.1312. You must also email an editable version of the Proposed Order in Word format (not PDF) to complexcivil@sanmateocourt.org and Dept4@sanmateocourt.org so that the judge can modify it prior to signing, if needed.

14. Correspondence to Department 4 may be submitted electronically, rather than paper or telephone call, by e-mail addressed to complexcivil@sanmateocourt.org and Dept4@sanmateocourt.org. All e-mails must be sent in at least 12-point type and copied on all parties or their counsel of record. This email address is to *receive* correspondence, and is not a venue for back-and-forth communications with the judge. Communications to these email addresses are *not* part of the official court files – just like a paper letter, they are not "filed" documents – and will be retained for at least 30 days and then be subject to deletion (destruction) thereafter. Department 4 prefers to have communication by email (copied to all parties) rather than by telephone.

15. All communications to Department 4 shall include in the header "subject line" the Department Number, Case Name, Case Number, and a brief description of the email (e.g., "Dept. 4 - *Smith v. Jones* (CIV654321) - Smith's Request to Set Motion Date").

16. *Ex parte* applications in this action shall be heard by Department 4 only. Check Judge Fineman's webpage for further information.

17. In regard to all discovery disputes, counsel for the parties (and any involved third parties) shall comply with the Local Rules regarding Informal Discovery Conferences. They should contact Department 4 regarding scheduling an Informal Discovery Conference and provide a very brief summary of the dispute (simply enough information for Judge Fineman to schedule the conference).

18. As to any discovery motion, where permission to file the motion has been granted, the parties are relieved of the statutory obligation under California Rules of Court, rule 3.1345, and thus need not file a separate statement – instead the subject discovery requests (or deposition questions) and written responses (or deposition answers or objections) must be attached to the supporting declaration on the discovery motion.

19. Pursuant to California Rules of Court, rule 3.1113(i), Department 4, does not require any appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.

20. **A Case Management Conference has been set for July 29, 2025 at 9:30 a.m. in Department 4.** The parties shall have meaningful meet-and-confer and file a **Joint** Status Conference Statement in prose and details, not using the standardized Judicial Council form providing sufficient information for the Court and the parties to have meaningful Status Conference. The Statement shall be filed at least seven (7) court days before the conference. The Court provides the following guidance, understanding that some issues will not be relevant for every Case Management Conference:

a. Status of Pleadings and Service of Process;

b. Status of Discovery, including the initial production of documents by all parties, and depositions and protective orders;

c. Status of Settlement or Mediation;

d. Conclusions reached after meet and confer on all matters set forth in California Rule of Court Rules 3.750 and Rule 3.724(8).

e. Any anticipated motions and proposed briefing schedules.

f. Setting of next CMC date and;

g. Any other matters for which the parties seek Court ruling or scheduling.

Dated: May 7, 2025

By: ______________________________
NANCY L. FINEMAN
JUDGE OF THE SUPERIOR COURT

**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateo.courts.ca.gov

# AFFIDAVIT OF SERVICE

Date: 5/8/2025

In the Matter of: YE SHEN vs ASTELLAS, INC.
Case No.: 25-CIV-02939

| Document(s): | Filed On: |
|---|---|
| Case Management Order No. 1 | 05/08/2025 |
| Affidavit of Service | 05/08/2025 |

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this court, or, if a physical mailing address is present below, by placing the document(s) in an envelope for collection and mailing, following the Court's ordinary business practices for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Executed on: 5/8/2025

Chad L Peace, Court Executive Officer/Clerk

By: /s/ Edward Tsai
Edward Tsai, Deputy Clerk

**Copies served to:**

YE SHEN
112 CITYVIEW DRIVE
DALY CITY, CA 94014

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| YE SHEN<br>112 CITYVIEW DRIVE<br>DALY CITY, CA 94014<br>TELEPHONE NO.: 415-867-1126 FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: Yeshen2000@vahoo.com<br>ATTORNEY FOR *(Name)*: IN PRO PER | Electronically **FILED** by Superior Court of California, County of San Mateo ON 6/12/2025 By **/s/ Haley Correa** Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>STREET ADDRESS: 400 COUNTY CENTER<br>MAILING ADDRESS: 400 COUNTY CENTER<br>CITY AND ZIP CODE: REDWOOD CITY, CA 94063<br>BRANCH NAME: CIVIL | |
| PLAINTIFF/PETITIONER: YE SHEN<br>DEFENDANT/RESPONDENT: ASTELLAS, INC. | CASE NUMBER:<br>25CIV02939 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>146244 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*: REFER TO ATTACHMENT 1
3. a. Party served *(specify name of party as shown on documents served)*:
   ASTELLAS, INC.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   MADDIE BRIGHT, INTAKE SPECIALIST @ CSC LAWYERS
4. Address where the party was served:
   2710 GATEWAY OAKS DRIVE, STE. 150N, SACRAMENTO, CA 95833
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 06/03/2025 (2) at *(time)*: 1:59 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

POS-010

| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | CASE NUMBER: |
| --- | --- |

5. c. [ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date):* (2) from *(city):*
   (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)
   (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. [ ] **by other means** *(specify means of service and authorizing code section):*

   [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as occupant.
   d. [X] On behalf of *(specify):* ASTELLAS, INC.
   under the following Code of Civil Procedure section:
   - [X] 416.10 (corporation)
   - [ ] 416.20 (defunct corporation)
   - [ ] 416.30 (joint stock company/association)
   - [ ] 416.40 (association or partnership)
   - [ ] 416.50 (public entity)
   - [ ] 415.95 (business organization, form unknown)
   - [ ] 416.60 (minor)
   - [ ] 416.70 (ward or conservatee)
   - [ ] 416.90 (authorized person)
   - [ ] 415.46 (occupant)
   - [ ] other:

7. **Person who served papers**
   a. Name: KRYSTALYN SOUZA
   b. Address: A & A LEGAL SERVICE, INC., 880 MITTEN ROAD, STE. 102, BURLINGAME, CA 94010
   c. Telephone number: 650-697-9431
   d. **The fee** for service was: $
   e. I am:
   (1) [ ] not a registered California process server.
   (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
   (3) [X] a registered California process server:
   (i) [ ] owner [ ] employee [X] independent contractor.
   (ii) Registration No.: PS-047
   (iii) County: YUBA

8. [X] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   **or**
9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 06/04/2025

KRYSTALYN SOUZA
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ [signature]
(SIGNATURE)



**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form | Save this form | Clear this form

| SHORT TITLE: Attachment for POS-010: Shen vs Astellas | CASE NUMBER: 25CIV02939 |
| --- | --- |

ATTACHMENT *(Number)*: 1

*(This Attachment may be used with any Judicial Council form.)*

This is attachment for Proof of Service of Summons (POS-010) which does not provide enough space for item 2.f. other (specify documents):
Case Management Order No. 1
affidavit of service
Notice of assignment for all purposes, designation as comples case, setting of a case management and trial setting conference, and complex fees due.
MC020: Request to Meet-and-Confer for Shen vs Astellas

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*



*(Add pages as required)*

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Ye Shen
112 cityview drive, Daly City, CA 94014

TELEPHONE NO.: 415-867-1126 FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: yeshen2000@yahoo.com
ATTORNEY FOR *(Name)*:

*FOR COURT USE ONLY*

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 6/12/2025
By **/s/ Haley Correa**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California: County of San Mateo

PLAINTIFF/PETITIONER: Ye Shen
DEFENDANT/RESPONDENT: Astellas, Inc.; & DOES 1 THROUGH 20, INCLUSIVE.

CASE NUMBER: 25CIV02939

# PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [x] summons
   b. [x] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [x] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [x] other *(specify documents)*: Case Management Order No.1; Notice of Assignment for all Purposes (Refer to MC025)
3. a. Party served *(specify name of party as shown on documents served)*:
   Astellas, Inc.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   MARTEN SOGAARD, CHEIF EXECUTIVE OFFICER
4. Address where the party was served:
   480 Forbes Blvd, South San Francisco, CA 94080
5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: (2) at *(time)*:
   b. [X] **by substituted service.** On *(date)*: 06/11/2025 at *(time)*: 14:05 I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*: BRYAUNA RAZO, RECEPTIONIST
      (1) [X] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [X] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: 06/11/2025 from *(city)*: BURLINGAME or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

POS-010

| PLAINTIFF/PETITIONER: <br> DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date):* (2) from *(city):*
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):* ASTELLAS, INC.
   under the following Code of Civil Procedure section:
   - ☒ 416.10 (corporation)
   - ☐ 416.20 (defunct corporation)
   - ☐ 416.30 (joint stock company/association)
   - ☐ 416.40 (association or partnership)
   - ☐ 416.50 (public entity)
   - ☐ 415.95 (business organization, form unknown)
   - ☐ 416.60 (minor)
   - ☐ 416.70 (ward or conservatee)
   - ☐ 416.90 (authorized person)
   - ☐ 415.46 (occupant)
   - ☐ other:

7. **Person who served papers**
   a. Name: KATHLEEN KING
   b. Address: 880 MITTEN ROAD, SUITE 102, BURLINGAME, CA 94010
   c. Telephone number: 650-697-9431
   d. **The fee** for service was: $
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☒ employee ☐ independent contractor.
   (ii) Registration No.: 2024-0001355
   (iii) County: SAN FRANCISCO

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   **or**
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 06/12/2025

KATHLEEN KING
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

| SHORT TITLE: Attachment for POS-010: Shen vs Astellas | CASE NUMBER: 25CIV02939 |
|---|---|

ATTACHMENT *(Number)*: 1

*(This Attachment may be used with any Judicial Council form.)*

This is attachment for Proof of Service of Summons (POS-010) which does not provide enough space for item 2.f. other (specify documents):
Case Management Order No. 1
affidavit of service
Notice of assignment for all purposes, designation as comples case, setting of a case management and trial setting conference, and complex fees due.
MC020: Request to Meet-and-Confer for Shen vs Astellas

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

FILED
SAN MATEO COUNTY
JUL 10 2025
Clerk of the Superior Court
By [signature] DEPUTY CLERK

ATTORNEY OR PARTY WITHOUT ATTORNEY:
Ye Shen
112 cityview drive, Daly City, CA 94014
TELEPHONE No.: 415-867-1126
EMAIL ADDRESS: yeshen2000@yahoo.com

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN MATEO**

| | |
|---|---|
| Ye Shen<br>Plaintiff,<br><br>vs.<br><br>Astellas, Inc.; & DOES 1 THROUGH 20, INCLUSIVE,<br>Defendants. | Case Number: 25CIV02939<br><br>**STATUS CONFERENCE STATEMENT FROM PLAINTIFF ONLY, NOT JOINT STATEMENT DUE TO LACK OF RESPONSE FROM DEFENDANT FOR MEET-AND-CONFER**<br><br>A CASE MANAGEMENT CONFERENCE is scheduled as follows:<br>Date: July 29, 2025<br>Time: 9:30 am<br>Dept: 4 |

Due to lack of response from defendant for meet-and-confer, the status conference statement is submitted by the plaintiff alone pursuant to CASE MANAGEMENT ORDER NO.1. The submission of joint statement is not possible due to lack of response from defendants.

1. Status of Pleadings and Service of Process

I had the process server served to the agent with the address of 2710 Gateway Oaks Drive, STE. 150N, Sacramento, CA 95833. On 06/10/2025, I get a "rejection of service of process" letter from CSC in the mail. It lists a broad compressive general non-specific reasons that CSC is not the agent for Astellas. I do not agree with what CSC claimed that they are not the agent for Astellas. I searched for agent with different company names like Astellas Gene Therapies, Astellas Pharma, etc under California Secretary of State during the last 6 months. These searches all yields to the same agent with the same address of 2710 Gateway Oaks Drive, Sacramento, CA. I believe this is just Astellas's strategy to reject papers being served to them. I

worked in 480 Forbes blvd, South San Francisco, CA 94080 before wrongful termination. This is a brand new building with resident occupancy since December 2023 till now for 1.5 years. It takes 1 year construction to build this brand new building from December 2022 to December 2023. Therefore, the Agent listed in California Secretary of State is current after Astellas updated the new address of 480 Forbes Blvd in SSF. Either Astellas intentionally list the fake agent or the agent don't want to do their job by delivering paper to Astellas Gene Therapies. Nonetheless, I contacted the process server again to re-deliver the summons to 480 Forbes blvd, in South San Francisco as substituted service. And they re-delivered the summons on 06/11/2025 to Morten Sogaard in 480 Forbes blvd in South San Francisco. Of the 7 various documents delivered to 480 Forbes blvd, one of them is the one page document titled: MC020: Request to Meet-and-Confer for Shen vs Astellas, which I specifically call out the meet-and-confer requirement. I request Astellas to meet-and-confer no later than 06/27/2025 (deadline, last day) but earlier date for meet-and-confer is preferred, followed by my contact information including email and phone number. I did not hear anything from them when deadline approached. As a reminder for them to meet-and-confer, I emailed Morten (morten.sogaard@astellas.com), myHR (HR for Astellas, myhr@astellas.com), and agt_info@astellas.com on 06/25/2025 at 12:39am. I did not hear anything back at the time of this writing. As a result of that, I have to prepare the CMC statement myself rather than the joint statement required.

Since the defendant did not talk to me, I don't know about their opinions about the pleadings. I myself is not going to amend the pleadings at this moment and I don't believe the pleadings need major amendment, maybe just minor amendment or no amendment at all.

2. Status of Discovery, including the initial production of documents by all parties, and depositions and protective orders

Since the other party never responded to my request to meet-and-confer, the first time when the summons were delivered to them, and the second time that I sent reminder email message

requesting to participate meet-and-confer. Due to their lack of response, I can only give my opinions. I had most of the essential documents like submission reports to Astellas Global Ethics and Compliance, two of my performance reviews, one PAP, and most but not all email correspondence regarding harassment, sabotage, and FMLA, etc. After termination, I turned in my computer to the company and no longer had any access to any documents if I don't have them. Some essential documents I don't have are AT132 mass spec powerpoint slides and KT430 mass spec powerpoints slides from Liub Chii as proof for mass spec data falsification, Astellas investigation report for Liub Chii's wrongdoings and Astellas investigation report to report Sue Duan's retaliation for me taking FMLA, and 5-year corporate integrity agreement (CIA) to Office of Inspection General (OIG), etc. I don't think Astellas will turn in these documents upon request. For example, before my wrongful termination, I requested the investigation report and ask who the reviewer (to review AT132 mass spec data falsification by Liub Chii) is, Vicky Wallace didn't tell me who the reviewer is and she didn't give me the investigation report to me to cover up mass spec data falsification, but Vicky gave the report that I requested to Sue Duan instead to retaliate me on my year 2023 performance review right before my taking FMLA. This is one of the reasons that Astellas did not respond to my request to meet-to-confer because they don't want to turn in the documents. And they will even alter the documents intentionally to cover-up wrongdoings. Please note the time stamp to make sure that the documents are authentic, not the falsified documents.

Some of the depositions I am thinking of are from the people who harmed me like Sue Duan and Monica Zhang regarding their job qualifications at their level and conspiracy to cover up mass spec data falsification, also from the people like Vicky Wallace and David Colen who did the quote and quote investigation. The problem is I don't know who are the real decision makers behind the scene to silence the investigators like Vicky Wallace and David Colen who are being paid by the company and silenced by the company. And I don't know the identity of the people who are supporting Sue Duan so she can secure and sustain her job that she cannot perform, does not need to follow any rules/laws without any consequence, and can terminate people who let her wrongdoings come to light. I don't know these big shots and therefore, not able to depose them,

and Sue is not going to disclose their identities even under oath. In addition, I am very relevant to get depositions from witnesses (who did not participate in harassing me) since they will get retaliated by telling the truth. I don't want them to get into trouble because the company will retaliate them if they tell the truth by lying they have performance issues.

The depositions are only going to be done in the court, not out of court. Sue lied that I was harassing and threatening Monica when I tried my best to follow her order to collaborate with Monica who in turn intentionally twisted the fact that I was harassing/threatening her. I am only one person without lawyers, there are lot of people from Astellas who will lie that I harass/threaten them, especially that I took the case to the court to let their wrongdoings come to light. I cannot meet them in person, I worry about my safety. At this moment, I am not seeking a protective order and I am not going to see them by myself for meet-and-confer or other meetings required by the court. I will only attend video conference or just a phone call. I may seek a protective order depending on how things go.

3. Status of Settlement or Mediation

My current thinking is settlement without more litigation is not possible. The allegations listed in the complaint should never happen in the first place in other biotechnology companies. Astellas is immune and Sue Duan is immune to these serious allegations. How to settle mass spec data falsification and cover up data falsification? Astellas need to know that there is court, judge, and jurors and I hope no employees will go through what I went through. Take whatever time and resources to restore public trust that is already trampled by Astellas to establish precedent so no other biotech companies will follow Astellas. I don't want Mediation because Astellas will lie that I am harassing and threatening them during Mediation. These Mediation, if any, will go nowhere anyway since Astellas is never sincere. If court orders a mandatory in-person Mediation, then it is the court's responsibility to ensure my safety and harassment or wrongful accusation of me harassing/threatening Astellas during Mediation.

4. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (1): whether all parties named in the complaint or cross-complaint have been served, have appeared, or have been dismissed;

The defendant named in the complaint have been served, but defendant did not respond to my meet-and-confer requirement twice. I did not receive any cross-complaint at the time of this writing. The case is not dismissed and I don't want the case to be dismissed at any time.

5. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (2): whether any additional parties may be added or the pleadings may be amended;

There are no additional parties need to be added at this moment. But I am flexible. If something new was found during the discovery phase, additional parties may be added. However this is not likely, these parties are all from Astellas, and I am suing the company, not each individual who has nothing to do with Astellas.

I am not going to amend the pleadings at this moment. I wrote the pleadings myself. Although the facts stated in the pleadings are true, but I don't have a lawyer and I don't have knowledge of the law, so the language, the laws, and the interpretation of the laws may need to be amended in the future if necessary upon request.

6. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (3): the deadline for the filing of any remaining pleadings and service of any additional parties;

There are no remaining pleadings need to be filed and no additional parties need to be serviced. I will keep track of all future upcoming pleadings including but not limited to discovery and motions to be filed on time and served on time. The issue is the defendant did not respond to my meet-and-confer request before the deadline at the time of this writing. So the joint status conference statement cannot be prepared, filed, and served.

7. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (4): whether severance, consolidation, or coordination with other actions is desirable.

This case is complicated and can be divided into three categories to be clearer and manageable: mass spec data falsification, harassment and sabotage by Liub Chii Yang before my taking FMLA (nothing to do with FMLA), and retaliation for taking FMLA by Sue Duan. First and foremost, mass spec data falsification and cover-up. This can be treated as an independent or standalone issue. Although the data falsification is very obvious and I can explain to any non-scientists, but I will meet strong resistance from the defendant to deny just for the sake of denying, refusing or destroying evidence, etc. Anything dealing with mass spec data falsification can be reviewed first by the court. The second issue is ongoing harassment and sabotage by Liub Chii occurred before FMLA and I filed the first complaint to Astellas Global Ethics and Compliance. I wrote a 40 page summary as well as separate reports as evidence. Depending on how much the court want to dig into it, it might take long and some of them involve chemistry although I am confident that I can explain to non-scientists. And the third issue is retaliation by Sue Duan as whistleblower and taking FMLA, she gut my protected job using performance as pre-text after I filed the second complaint to Astellas Global Ethics and Compliance. The second issue is preferred to be taken care of before the third issue due to the chronological order and to establish it as the rational for retaliation.

8. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (5): The schedule for discovery proceedings to avoid duplication and whether discovery should be stayed until all parties have been brough into the case;

The schedule for discovery proceedings to avoid duplication is irrelevant for this case. There is no duplication effort because there is no effort from the defendant side throughout the last 2.5 years and lack of response for my request to meet-and-confer. As of whether discovery should be stayed until all parties have been brought into the case, the defendant will try not to bring themselves into the case (for example, use all excuses that the entities are wrong or trick me to

write wrong entities so they can get away with the lawsuit). The defendant already stayed all discovery.

9. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (6): the schedule for settlement conferences or alternative dispute resolution;

I am not sure whether there is any value for settlement conferences or alternative dispute resolution for this case. It will give them the opportunities to lie that I harass or threaten them by simply obeying the court order to settlement or alternative dispute resolution. I am only one person and cannot defend myself. So please don't put me into this situation in the first place. And I am afraid of my personal safety. I am not sure how the mass spec data falsification and cover-up can be settled or resolved through alternative dispute resolution. If the court want to schedule for settlement conferences or alternative dispute resolution, I am going to let the court decide the date.

10. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (7): whether to appoint liaison or lead counsel;

I don't have any opinion. One thing for sure is I am not going to pay for the liaison or lead counsel. If I don't have to pay, then it is up to the court.

11. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (8): the date for the filing of any dispositive motions.

I have no idea whether I will file a dispositive motion. If I know later on that I will file a dispositive motion, I will do that within time limit, but with no specific date in mind at this moment. Since I don't want my case to be dismissed, I won't file a motion to dismiss for sure because I don't want Astellas to continue to get away with mass spec data falsification, coverup, retaliation, and sabotage in workplace.

12. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (9): the creation of preliminary and updated lists of the persons to be deposed and the subjects to be addressed in each deposition;

I already created a preliminary lists of the persons to be deposed and the subjects to be addressed in each deposition.

13. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (10): the exchange of documents and whether to establish an electronic document depository;

The defendant is not going to exchange documents with me. In the past before wrongful termination, I asked them to give me a final report for the investigation or even a written recap (not just a verbal update from Vicky), they don't give anything to me, but gave the final report to Sue Duan instead. They don't respond to my request for meet-and-confer. I think we must establish an electronic document depository. I have many documents on my end. I have figures in these documents that I need to explain which you will find every hard just to read it yourself. For the documents that I don't have like AT132 mass spec slides falsified by Liub Chii, I need to point out the figures and explain to you where the data were falsified. Please find somebody to establish an electronic document depository since I don't know how to establish myself and I don't have anybody to help me. Once you have the electronic document depository established, I will start uploading all my documents and you can have an early read. All the upcoming future documents can be deposited in the electronic depository. Consider saving trees before printing.

14. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (11): whether a special master should be appointed and the purposes for such appointment;

I don't know what is special master and the purposes for such appointment. I am not going to pay for them. But I will take other people's advice if special master is really needed for this case and won't deny them simply because of the cost.

15. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (12): whether to establish a case-based web site and other means to provide a current master list of addresses and telephone numbers of counsel;

I think it is a good idea to establish a case-based website or other means to provide a current master list of address and telephone numbers of counsel. At least I will know who to contact based on the list and get an answer rather than lack of response for my request to meet-and-confer after the summons were delivered to 480 Forbes blvd, South San Francisco.

16. My opinion on all matters set forth in California Rule of Court Rule 3.750 b (13): the schedule for further conferences.

Further conferences will be scheduled by the judge. I will attend.

17. My opinion on all matters set forth in California Rule of Court Rule 3.724 (1): Resolving any discovery disputes and setting a discovery schedule;

None of the discovery disputes are resolved. When I was still in the company, I try to resolve the issues by telling my manager's manager, HR director, and finally Astellas Global Ethics and Compliance. None of them resolved any of the issues listed in the compliant. When I requested meet-and-confer, Astellas did not respond. What I am going to do is to start the discovery process after the CMC conference set on 07/29/2025. The discovery schedule should be completed 3 months after 07/29/2025, namely 10/29/2025 with the defendant's cooperation.

18. My opinion on all matters set forth in California Rule of Court Rule 3.724 (2): Identifying and, if possible, informally resolving any anticipated motions;

The upcoming anticipated motions are discovery motions. Based on past experience with defendant, the defendant is not likely to cooperate. If the defendant does not respond to discovery motions, I am going to file motion to compel. I am not likely to resolve the anticipated discovery motions, instead, defendant will lie that I harass or threaten them like Sue Duan did to

me in the past. Therefore, I am relying on the court's expertise to help resolving any anticipated motions.

19. My opinion on all matters set forth in California Rule of Court Rule 3.724 (3): Identifying the facts and issues in the case that are uncontested and may be the subject of stipulation.

A partial list of facts including but not limited to mass spec data falsification and coverup, harassment and sabotage by Liub Chii, retaliation toward me taking FMLA leave, Sue is not qualified for her job, yet the defendant are not going to stipulate even if they are facts because they don't want to be liable.

20. My opinion on all matters set forth in California Rule of Court Rule 3.724 (4): Identifying the facts and issues in the case that are in dispute;

The aforementioned facts including but not limited to mass spec data falsification and coverup, harassment and sabotage by Liub Chii, retaliation toward me taking FMLA leave, Sue is not qualified for her job, etc. are all facts, yet the defendant denied all the facts including black and white scientific data. Therefore, all the facts are in dispute. What I want to dispute is performance action plan (PAP) falsified by Sue Duan, who is not qualified for her job to lead LCMS lab based on her zero mass spec (MS) and zero liquid chromatography (LC) experience, and chronic unexcused abuse and lack of integrity for falsifying mass spec data with Liub Chii and coverup with Monica. The PAP Sue falsified used as basis to terminate me is in dispute and should be disqualified in the first place after I establish the retaliation for taking FMLA and as whistleblower. It is a crime to falsify documents.

21. My opinion on all matters set forth in California Rule of Court Rule 3.724 (5): Determining whether the issues in the case can be narrowed by eliminating any claims or defenses by means of a motion or otherwise;

The issues in the case cannot be narrowed by eliminating any claims, maybe one or two out to the 20 claims listed at most. They are already consolidated in the first place because I don't have enough time to keep writing before the deadline. Although I have no intention to keep expanding the list by revising the complaint, I am not going to narrow the claims already listed. The defendant is not likely to respond to discovery motions so the claims and defenses are not likely to be narrowed or eliminated by means of a motion or otherwise. But I am going to take the court's advice if any of these is possible.

22. My opinion on all matters set forth in California Rule of Court Rule 3.724 (6): Determining whether settlement is possible;

The settlement without further litigation is not possible. I demand jury trial.

23. My opinion on all matters set forth in California Rule of Court Rule 3.724 (7): Identifying the dates on which all parties and their attorneys are available or not available for trial, including the reasons for unavailability;

I am available all the time for trial. Due to lack of response for the other party, I don't know their availability.

24. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (A): Issues relating to the preservation of discoverable electronically stored information;

I preserved most if not all discoverable electronically stored information. I suspect the defendant is not going to preserve the discoverable electronically stored information. These information may already being intentionally destroyed in guise of email retention deletion or other tactics, or

new documents may be falsified in response to this lawsuit. Please pay particular attention to the time stamps of these documents creation to make sure that they are authentic documents.

25. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (B): The forms or forms in which information will be produced;

The forms or forms in which information already produced are going to be the original document form submitted/presented. For example, AT132 mass spec data and KT430 mass spec data were in powerpoint slides presented by Liub Chii while she was in the company, and therefore, the original powerpoint slides should be presented to the court. My report submitted to Astellas Global Ethics and Compliance in January 2024 was a word/PDF document and therefore, the original word/PDF format should be presented in its original form to the court in order to preserve the time stamp that can be traced back. Namely, the documents already created in the past while in the company should be presented in its original forms. There may be additional documents generated for the court in response to this case is up to the person creating it.

26. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (C): the time within which the information will be produced;

All the documents were already produced by both parties which are me and Astellas. However, Astellas is not likely to turn in these documents upon discovery motion. I might need to file motion to compel to ask them to respond to discovery motion. If Astellas cooperate, the time it takes should not be more than three months from CMC date 07/29/2025, namely 10/29/2025.

27. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (D): The scope of discovery of the information;

I don't see any issues regarding the scope of discovery of the information. The type of information for discovery will all be relevant. For this case, all the relevant information are overwhelming to handle; as a result of that, this case is designated as complex.

28. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (E): The method for asserting or preserving claims of privilege or attorney work product, including whether such claims may be asserted after production;

I don't have an attorney at the time of this writing. I will follow the law not to bother the attorney for Astellas; and the attorney for Astellas can assert or preserve claims of privilege or attorney work product. I don't see any issues regarding this.

29. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (F): The method for asserting or preserving the confidentiality, privacy, trade secrets or proprietary status of information relating to a party or person not a party to the civil proceedings:

The party or person related to the civil proceedings will be contacted first. If they tell the truth, the party or person not related to the civil proceedings is not needed at all. Since I rarely have faith in the party or person related to this civil proceedings, the third party not related to the case may be subpoenaed. I will keep the third party to be subpoenaed to a bare minimum to save their effort as well as protect their privacy and prevent them from being retaliated. Their confidentiality and privacy is my top priority. The third party is not going to disclose trade secrets or proprietary status by themselves. I myself have no interest and against law to take other people's trade secrets or proprietary information. The necessary and sensitive information may be redacted or by other means to ensure confidentiality, privacy, trade secrets or proprietary

status of information. But the confidentiality, privacy, trade secrets or proprietary status of information must be genuine, not being used as tactics by the defendant as means to refuse to turn in documents such as AT132 mass spec data falsification which does not contain any trade secrets but bunch of data made-up. The defendant can email these documents directly to the court or other means so only court can access it. Then I can explain it in the courtroom when the court project these slides. Finally the court can decide what to do with these documents to ensure confidential, private, trade secrets of these falsified documents which can be claimed as quote and quote trade secrets.

30. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (G): How the cost of production of electronically stored information is to be allocated among the parties;

The cost should be covered 100% by the defendant. They did the mass spec data falsification and Astellas Global Ethics and Compliance did not investigate. So I should not bear the cost of production of electronically stored information. The defendant had lots of money to pay well for non-performers like Sue, Liub Chii, and Monica for data falsification, and watchdogs from Astellas Global Ethics and Compliance who never did their jobs. I don't have any reasons to pay.

31. My opinion on all matters set forth in California Rule of Court Rule 3.724 (8): Any issues relating to the discovery of electronically stored information, including (H): Any other issues relating to the discovery of electronically stored information, including developing a proposed plan relating to the discovery of the information;

One issue is for the electronically stored information related to science. Although mass spec data falsification is a big issue but the explanation is actually easier. The problems are other issues related to instrument sabotage and project Sue imposed on me to falsify data on my performance action plan, I will explain to non-scientist but the defendant can always deny all of the allegations. I am not sure whether it is worth to subpoena these third party people to explain their project or instrument. And these third party may not want to be subpoenaed due to interrupt

of their normal activities and conflict of interest with Astellas since Astellas purchase their instruments, consumables, and service plans. Other than that, I have a proposed plan relating to the discovery of the information but the other party is not likely to cooperate. The scientific interpretation of reports and presentations can take time.

32. Any anticipated motions and proposed briefing schedules

The anticipated motions are discovery motions. I am flexible regarding the proposed briefing schedules. For the proposed briefing schedule, my recommendation is to start with the mass spec data falsification and coverup. This is obvious and I don't need to prepare as much as the other issues like instrument sabotage, harassment, FMLA retaliation which can be tackled later on to prepare for more complicated and time consuming briefings.

33. Setting of next CMC date

The setting of next CMC date is up to the Court. I will attend. I don't have a specific date in mind. If anything urgent coming up, I will request a date for another CMC. Otherwise I will just attend the default second CMC if there is one.

34. Any other matters for which the parties seek Court ruling or scheduling.

I wish the court to start to rule and schedule for the matter of the mass spec data falsification. Once convicted, I hope the judge to order to pay my attorney fees upfront for fee-for-service rather than me to look for a lawyer on a contingency basis. If they are convicted for mass spec data falsification and coverup, I don't know why I have to ruin my financial to hire a lawyer for their wrongdoings.

Dated: 07/10/2025

Ye Shen

Plaintiff Ye Shen

# View Document - 25-CIV-02939 - Proof of Service by MAIL of STATUS CONFERENCE STATEMENT FROM PLAINTIFF ONLY NOT JOINT STATEMENT DUE

Pages: 2

POS-030

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ye Shen
112 Cityview Drive
Daly City, CA 94014

TELEPHONE NO.: 415-867-1126 FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* yeshen2000@yahoo.com
ATTORNEY FOR *(Name):* IN PRO PER

FOR COURT USE ONLY

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 7/17/2025
By /s/ Haley Correa
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California: County of San Mateo

PETITIONER/PLAINTIFF: Ye Shen
RESPONDENT/DEFENDANT: ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**

CASE NUMBER: 25CIV02939

***(Do not use this Proof of Service to show service of a Summons and Complaint.)***

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.
2. My residence or business address is:
   880 MITTEN ROAD, STE. 102
   BURLINGAME, CA 94010
3. On *(date):* 07/17/2025 I mailed from *(city and state):* BURLINGAME, CA
   the following **documents** *(specify):*
   Status Conference Statement from Plaintiff only, not Joint Statement due to Lack of Response from Defendant for Meet-and-Confer

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).
4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☐ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☒ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.
5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: Astellas, Inc.; Attn: Morten Sogaard
   b. **Address** of person served:
   480 Forbes Blvd.
   South San Francisco, CA 94080

   ☒ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 07/17/25

LIANA SOLOMON
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

(SIGNATURE OF PERSON COMPLETING THIS FORM)

POS-030(P)

| SHORT TITLE: Status Conference Statement from Plaintiff only, not Joint Statement due to Lack of Response from Defendant for Meet-and-Confer | CASE NUMBER: 25CIV02939 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address (number, street, city, and zip code) |
|---|---|
| Thomas M. McInerney | One Embarcadero Center, Suite 900, San Francisco, CA 94111 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |



privacy, please press the Clear This Form button after y

Print this form Save this form Clear this form

Pages: 2

Download Document

**SUPERIOR COURT OF SAN MATEO COUNTY**

400 County Center
Redwood City, CA 94063

1050 Mission Road
South San Francisco, CA 94080

800 North Humboldt Street
San Mateo, CA 94401

www.sanmateo.courts.ca.gov

# Minute Order

| | |
|---|---|
| **YE SHEN vs ASTELLAS, INC.** | 25-CIV-02939<br>07/29/2025 9:30 AM<br>Case Management and Trial Setting Conference<br>**Hearing Result**: Held |

**Judicial Officer:** Fineman, Nancy L.
**Location**: Courtroom 4C
**Courtroom Clerk**: Edward Tsai
**Courtroom Reporter:**

**Parties Present**

SHEN, YE Plaintiff

**Exhibits**

**Minutes**

*Journals*

- At 10:49 AM - Matter is called.

Plaintiff Ye Shen present in-person in Pro Se.

No appearance by or for Defendant ASTELLAS, INC.

Attorney Thomas McInerney present via Zoom specially appearing on behalf of ASTELLAS GENE THERAPIES, INC.

Attorney McInerney informs the Court that he represents ASTELLAS GENE THERAPIES, INC who was the employer of Plaintiff.

Attorney McInernery informs the Court that he is willing to accept service on behalf of ASTELLAS GENE THERAPIES, INC. if Plaintiff is willing to correct the Defendant.

Court and parties discuss complex civil designation. The Court informs Plaintiff that there are special criteria for complex designation and that the Court reviewed the filings in the case and did not find the case meets the criteria. Plaintiff gives her reasons why she believes the case is Complex. Attorney McInerney informs the Court that he believes it is not a complex civil case and that it is a wage and hour case. The Court finds that the case does not meet the complex designation requirement and will issue an Order de-designating the case complex.

The Court asks if Plaintiff has paid the complex fee. Plaintiff informs the Court that she did. The Court will put in the Order that the $1,000.00 complex fee is to be refunded to the Plaintiff.

Court and parties discuss the Proofs of Service filed on 6/12/2025 to Defendant ASTELLAS, INC. The Court notes that the Proof of Substituted Service lists a MARTEN SOGAARD, CHIEF EXECUTIVE OFFICER

who is not listed as a Defendant. Plaintiff informs the Court she went to the California Secretary of State Service of Process webpage to find the agent for service. Attorney McInerney informs the Court that there is no entity named ASTELLAS, INC. and that Plaintiff's employer was ASTELLAS GENE THERAPIES, INC. Attorney McInerney confirms that he is willing to accept service on behalf of ASTELLAS GENE THERAPIES, INC. if Plaintiff is willing correct the Defendant to her actual employer but that Plaintiff has indicated she is unwilling to do so. Argument presented by parties. The Court cannot give legal advice.

The Court goes over the regular civil case process and that a Case Management Conference will be set with the Civil Commissioner but that Motion hearings are before this court.

The Court notes that ASTELLAS GENE THERAPIES, INC. has not appeared yet so no there would be no service to specially appearing counsel. Parties can check the San Mateo County Superior Court's Public Odyssey portal for filings and hearings.

The court finds/orders:

Case does not meet the complex designation requirement and the Court will issue an Order de-designating the case complex.

*Case Events*

- Party appeared by audio and/or video; Attorney Tom McInerney.

---

**Others**

*Comments:*

---

**Future Hearings and Vacated Hearings**

December 10, 2025 9:00 AM Case Management Conference
Elliott, Timothy E.
Courtroom H
Coronel, Maria

**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Division
400 County Center, 1st Floor, Room A Redwood City, CA 94063
(650) 261-5100
www.sanmateo.courts.ca.gov

FOR COURT USE ONLY

**FILED**
SAN MATEO COUNTY
7/29/2025
**Clerk of the Superior Court**
/s/ Edward Tsai
DEPUTY CLERK

PLAINTIFF: **YE SHEN**

DEFENDANT: **ASTELLAS, INC.**

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER: **25-CIV-02939**

A Case Management Conference is set before the Case Management Judicial Officer, as follows:

DATE: **12/10/2025**

TIME: **9:00 AM**

**IN THE DEPARTMENT OF THE CASE MANAGEMENT JUDICIAL OFFICER**
**ALL PERSONS MAY APPEAR REMOTELY USING ZOOM**

ZOOM HEARING CREDENTIALS – CASE MANAGEMENT JUDICIAL OFFICER

Direct Zoom Link to Courtroom H can be found on the Case Management Judicial Officer's Webpage below.

**Dial in:**
Phone Number: +1 (669) 254-5252
Meeting ID: 161 510 6013
Password: 987732

Please visit the Case Management Judicial Officer's Webpage at
https://www.sanmateo.courts.ca.gov/civilcommissioner
for hearing details and reporting instructions.

CASE MANAGEMENT CONFERENCE INFORMATION

You are hereby given notice of your Case Management Conference. The date, time and department are noted above.

1. In accordance with applicable California Rules of the Court and Local Rules, you are hereby ordered as follows:
   a) Plaintiff shall serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 3.110(b); Local Rule 3.804).
   b) Plaintiff shall serve upon all parties who have not yet filed an appearance, a copy of this Notice, blank form of the Case Management Statement and ADR Information Package (Local Rule 3.804(a)). Documents are available online under the CIVIL CMC Packet section at: www.sanmateo.courts.ca.gov/civil
   c) File and serve a completed Case Management Statement at least 15 days before the Case Management Conference (CRC 3.725; Local Rule 3.805(c)). Failure to do so may result in monetary sanctions or the continuance of the CMC.
   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 days before the date set for the Case Management Conference (Local Rule 3.805(b)).

2. Parties may proceed to an Appropriate Dispute Resolution process ("ADR") by filing a Stipulation and Order to ADR (Local Form ADR-CV-1). File and serve the completed Stipulation and Order to ADR form at least 12 days prior to the Case Management Conference (Local Rule 3.805(f)). You may find this form and information regarding the Civil ADR Program online at www.sanmateo.courts.ca.gov/adr/civil/

ASSIGNED DEPARTMENT INFORMATION

To schedule a Law and Motion Hearing, please see Local Rule 3.402, or visit the assigned Judicial Officer's webpage at: www.sanmateo.courts.ca.gov/civiljudges.

Contact information for your assigned department is as follows:

| Judicial Officer | Department Phone | Department E-mail |
|---|---|---|
| Nancy L. Fineman | 650-261-5104 | Dept4@sanmateocourt.org |

For additional information, you may visit the Judicial officer's webpage at: www.sanmateo.courts.ca.gov/civiljudges

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this court, or, if a physical mailing address is present below, by placing the document(s) in an envelope for collection and mailing, following the Court's ordinary business practices for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Date: 7/29/2025

Chad L Peace, Court Executive Officer/Clerk

By: /s/ Edward Tsai

Edward Tsai, Deputy Clerk

Notice being served on:

YE SHEN
112 CITYVIEW DRIVE
DALY CITY, CA 94014

FILED
SAN MATEO COUNTY
JUL 30 2025

Clerk of the Superior Court
By [signature] DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| **YE SHEN,**<br>**Plaintiff,**<br>**vs.**<br>**ASTELLAS, INC., *et al.*,**<br>**Defendants,** | Case No. 25CIV002939<br><br>**ORDER DE-DESIGNATING COMPLEX CASE (CRC Rule 3.403) AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>**CMC Date: December 10, 2025**<br>**Time: 9:00 a.m.**<br>**Dept. 30, Central Branch** |

This court has revisited, on its own motion, as to whether this matter is suitable to be designated as a complex case. Pursuant to California Rules of Court, rule 3.403(b), the court has the power to decide, on its own motion, whether an action previously designated as a complex case should appropriately be so designated:

> (b) Court's continuing power
>
> With or without a hearing, the court may decide on its own motion, or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

(Cal. Rules of Court, rule 3.403(b).) Having reviewed the complaint in this case and the claims contained therein and having discussed this issue at the case management conference on July 29, 2025, this court has determined, on its own motion, that this matter is not a complex case.

Accordingly, pursuant to the provisions of California Rules of Court, rule 3.403(b), and based upon the inherent powers of this Court, and GOOD CAUSE APPEARING, IT IS HEREBY ORDERED that this case shall be and is de-designated as a Complex case, and shall henceforth be considered a general civil litigation case, unlimited jurisdiction.

Since the court is de-designating the case, the court ORDERS the court to refund to plaintiff the complex fee.

The court sets a case management conference before the Civil Law Commissioner for December 10, 2025 at 9:00 a.m. in Department 30 of the San Mateo Superior Court located at 800 North Humboldt St., San Mateo, CA 94401, Courtroom H. The clerk is ORDERED to provide notice.

**IT IS SO ORDERED.**

Dated: July 29, 2025

HON. NANCY L. FINEMAN
JUDGE OF THE SUPERIOR COURT

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER:
NAME: Ye Shen
FIRM NAME:
STREET ADDRESS: 112 cityview drive
CITY: Daly City STATE: CA ZIP CODE: 94014
TELEPHONE NO.: 415-867-1126 FAX NO.:
EMAIL ADDRESS: yeshen2000@yahoo.com
ATTORNEY FOR *(name)*:

FOR COURT USE ONLY

FILED
SAN MATEO COUNTY
NOV 13 2025
Clerk of the Superior Court
By [signature]
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California: County of San Mateo

PLAINTIFF/PETITIONER: Ye Shen
DEFENDANT/RESPONDENT: ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE

## CASE MANAGEMENT STATEMENT

CASE NUMBER: 25CIV02939

***(Check one):*** [x] **UNLIMITED CASE** (Amount demanded exceeds $35,000) [ ] **LIMITED CASE** (Amount demanded is $35,000 or less)

**A CASE MANAGEMENT CONFERENCE** is scheduled as follows:
Date: December 10,2025 Time: 9:00 am Dept.: 30 Div.: Room: H
Address of court *(if different from the address above)*:
800 North Humboldt St., San Mateo, CA 94401

[x] **Notice of Intent to Appear by Telephone, by *(name)*:** Ye Shen

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. [x] This statement is submitted by party *(name)*: Ye Shen, plaintiff
   b. [ ] This statement is submitted **jointly** by parties *(names)*:
2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*: 04/29/2025
   b. [ ] The cross-complaint, if any, was filed on *(date)*:
3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [x] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not)*:
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) [ ] have had a default entered against them *(specify names)*:
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:
4. **Description of case**
   a. Type of case in [x] complaint [ ] cross-complaint *(Describe, including causes of action)*:
   I was being wrongfully terminated, retaliated for taking FMLA to care for a sick family member, and retaliated as whistleblower to report the company's wrongdoing for falsifying scientific data and cover up the scientific data falsification.

CM-110

| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

4. b. Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

I was wrongfully being terminated by the defendant as retaliation for taking FMLA and as whistleblower to report their wrongdoings for falsifying scientific data and cover up of the data falsification. This case should be straighforward but the opposing counsel Mr Mcinerney is tricking me to make mistakes so he can illegally dismiss my case if I fall into his tricks.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☒ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

Ye Shen as plaintiff pro per request a jury trial

6. **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☒ days *(specify number):* 15 days

b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:

e. Email address:

f. Fax number:

g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☒ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: <br> DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

10. c. In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date):* <br> ☐ Agreed to complete mediation by *(date):* <br> ☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date):* <br> ☐ Agreed to complete settlement conference by *(date):* <br> ☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date):* <br> ☐ Agreed to complete neutral evaluation by *(date):* <br> ☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date):* <br> ☐ Agreed to complete judicial arbitration by *(date):* <br> ☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date):* <br> ☐ Agreed to complete private arbitration by *(date):* <br> ☐ Private arbitration completed on *(date):* |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date):* <br> ☐ Agreed to complete ADR session by *(date):* <br> ☐ ADR completed on *(date):* |

CM-110

| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☒ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

Plaintiff pro per is going to file Motion to Compel Discovery Responses (see number 16b and 16c for issues). Plaintiff pro per is also going to file Motion for Default Judgment (definitely) and maybe Motion for Summary Judgement (not decided yet).

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| Ye Shen, Plaintiff Pro Per | Motion to Compel Discovery Response (Interrogatories) | Never |
| Ye Shen, Plaintiff Pro Per | Motion to Compel Discovery (Request for Production) | Never |
| Ye Shen, Plaintiff Pro Per | Motion to Deem Facts Admitted | At the hearing TBD |

c. ☒ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

I sent discovery requests including interrogatories, request for production, and request for admission on 09/10/2025 to the opposing cousel. Mr Mcinerney does not consent to my request for meet-and-confer and does not consent for informal discovery conference. Therefore, I will never get discovery responses for interrogatories and production. I hope to file a motion without meet-and-confer (I will attemp but won't be successful) to deem facts admitted at the motion hearing.

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

☒ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

I as plaintiff pro per, request the court to terminate Mr Mcinerney right at the CMC meeting on 12/10/2025 due to his misconduct. The evidence for his misconduct is attached. He forced me to change the entity name against my will. He has many tactics including but not limited to trick and treat, intentionally made false statements, squeeze in and squeeze out of my lawsuit just for sabotage including but not limited to the meet-and-confer, and he abused all legal process along the way.

19. **Meet and confer**

a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

The party did not meet and confer. On 10/21/2025, I asked the opposing counsel Mr Mcinerney to meet-and-confer for the upcoming CMC. He refused to meet and confer over the phone. On 10/22/2025, he sent a follow-up email summarizing the previous call, he intentionally made false statement that he did not deny my request for meet-and-confer. He illegally squeezed into my lawsuit just to sabotage so my lawsuit goes nonwhere.

b. ☒ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

The opposing counsel Mr Mcinerney does not agree to provide answers and documents for my discovery requests. He does not agree to meet-and-confer for me to file motion to compel. He does not agree to informal discovery conference for me to file motion to compel. He does not agree to meet-and-confer for the upcoming CMC scheduled on 12/10/2025. He is tricking me, but he doesn't agree that he is tricking me. He said he represents AGT which was not being sued, I disagree with that. I request him to leave my lawsuit due to his sabotage, but he does not agree with that.

20. Total number of pages attached *(if any)*: 40

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: 11/13/2025

Ye Shen
(TYPE OR PRINT NAME)

▶ Ye Shen
(SIGNATURE OF PARTY OR ATTORNEY)

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



privacy, please press the Clear This Form button after y | Print this form | Save this form | Clear this form

Ye Shen
112 Cityview Drive
Daly City, CA 94014
415-867-1126
yeshen2000@yahoo.com
Plaintiff: Ye Shen

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO**

| | |
|---|---|
| Ye Shen<br>Plaintiff,<br><br>vs.<br><br>Astellas, Inc.; & DOES 1 THROUGH 20, INCLUSIVE,<br>Defendants. | Case Number: 25CIV02939<br><br>ATTACHMENT to CASE MANAGEMENT STATEMENT CM-110<br>18. Other Issues |

I. ALLEGATIONS

I want to complain about misconduct of the opposing counsel Mr Thomas (Tom) Mcinerney. He intentionally mislead or trick me who has no knowledge of the law, intentionally spread misinformation/disinformation, intentionally distorted or lied what I said, and he tried to manipulate me many times. His purpose is to trick me to make mistakes so my lawsuits can be dismissed, intentionally delay my lawsuit by not consenting to "meet-and-confer" over the phone yet he lied that he consent to "meet-and-confer" to shift blames to me. A list of interactions (Table 1) and list of communications (Table 2) with Mr Mcinerney were summarized. A string

of emails exchanged between me and Mr Mcinerney were attached twice, one set was original emails not interrupted by my comments (Exhibit C). Another set of the same email string has my comments next to Mr Mcinerney's sentence where I disagree with (Exhibit B). If the email with my comments are too hard to read, you can always go back to read the original email without my comments as interruptions.

As you can see from the string of emails and phone calls in the last four months (Table 1 and Table 2), Mr Mcinerney has only one topic, namely, to mislead me to change entity name from Astellas, Inc to Astellas Gene Therapies (AGT), Inc. Mr Mcinerney always mentioned that he represents AGT, Inc, not Astellas, Inc. He always tricked me that AGT, Inc was not being sued. The defendant in my lawsuit is always Astellas Inc from the date of filing on 04/29/2025 and throughout the entire time. Mr Mcinerney intentionally squeezed into my lawsuit just to sabotage my lawsuit, and his sabotage and lying had disaster outcome for me. He misled me to believe that he is the opposing counsel. When I had discovery documents served to him, he said my discovery request do not constitute as service. If I believe his lies and do not service the discovery request or other upcoming legal documents to him, he will attack me on violations on procedural grounds that he misled me. His tricks will always work for him one way or another, but his tricks will never work for me no matter what I do.

On 10/20/2025 and 10/21/2025, I contacted Mr Mcinerney to schedule meet-and-confer for me to file motion-to-compel for discovery requests. Mr Mcinerney called back but not for meet-and-confer or scheduling a meet-and-confer, rather he turned the call meant to be meet-and-confer to be trick-and-treat. In his follow-up summary email he sent next day, he intentionally made false statement that he did not refuse to meet-and-confer. As a result of that, the meet-and-confer are not scheduled for either compelling discovery and the upcoming CMC meeting. And literally nothing was achieved due to his sabotage and his shift blames to me. I request the court to terminate Mr Mcinerney from my lawsuit, effective immediately.

I had the summons, complaint, and other documents delivered to the defendant's agent, Maddie Bright, intake specialist @CSC lawyers located in 2710 Gateway Oaks Drive, ste. 150N, Sacramento, CA 95833 on 06/03/2025. On 06/10/2025, I received the rejection of service of process through first class mail from CSC, who is the agent of Astellas, Inc. Upon receiving the rejection of service from Astellas Inc, I contacted the process server to serve to the company I previously worked for located in 480 Forbes blvd, South San Francisco, CA 94080. The process server then re-delivered the same set of documents containing summons and complaint using substituted service to Morten Sogaard, CEO of Astellas, Inc, in 480 Forbes blvd, South San Francisco. These are the only two proof-of-service made for summons and complaint.

On 06/25/2025 at 12:30am, I sent an email to morten.sogaard@astellas.com and HR department to inquire who I should contact to schedule a meet-and-confer which is required as set forth in case management order #1. I understand that I was not going to meet-and-confer with the CEO Morten Sogaard for the upcoming Case Management Conference. I never heard from Morten Sogaard. On 07/07/2025 at 2:11pm, Mr Thomas (Tom) Mcinerney left me a message on my phone introducing himself as the attorney for Astellas and want to discuss this case. I phoned back Mr Mcinerney at 2:57 pm and we discussed the case for 17 minutes. He asked me to change the entity name from Astellas, Inc to Astellas Gene Therapeutics (AGT), Inc. I refused to do that. I asked him to meet-and-confer for the upcoming CMC scheduled on 07/29/2025, he refused to meet-and-confer. He summarized his notes for our conversation and emailed it to me on 07/07/2025 at 4:09pm. I read his summary and they are correct for the most part except one small misunderstanding which I don't even bother to correct that. He seems to understand what I am talking about. One thing I want to emphasize is I don't know who Mr Mclnerney is until he called me. He squeezed in my lawsuit knowing that the defendant is Astellas, Inc. which is listed throughout all the documents I filed in the court so far. I had the summons and complaints served to the Astellas agent in Sacramento and the substituted service to Astellas CEO, I never served the summons and complaints to Mr Mcinerney.

Since Mr Mcinerney refused to meet-and-confer for the 07/29/2025 CMC, I drafted status conference statement from my end only, not joint statement from both plaintiff and defendant as required by the court. I filed it on 07/10/2025 and had it served to both CEO Morten Sogaard from Astellas Inc, located in South San Francisco and Mr Tom Mcinerney whose law firm is located in San Francisco. Serving both CEO of defendant and Mr Mcinerney because I want to acknowledge Mr Mcinerney as the opposing counsel after he phoned me on 07/07/2025, but I still served the CMC statement to the CEO Morten Sogaard just in case Mr Mcinerney is not their counsel for whatever reasons. None of the CEO Morten Sogaard and their counsel Mr Mcinerney mentioned anything regarding the service of the CMC statement prepared for 07/29/2025 CMC.

On 07/29/2025 CMC meeting when my matter was called, Mr Mcinerney showed up remotely and the defendant Astellas, Inc was no show. I appeared in person as plaintiff pro per at court. Mr Mcinerney told the court that he represents Astellas Gene Therapies (AGT) Inc, and he mentioned I wrote down a non-existing company which is Astellas, Inc. He asked me to change the entity name from Astellas, Inc to Astellas Gene Therapies (AGT), Inc. I refused to do that right at the court. The judge said she did not know which is the correct entity name and cannot give advice. After I went home, I saw Mr Mcinerney's email to urge me to change the entity name from Astellas Inc, to Astellas Gene Therapies (AGT). I saw his email but I did not reply him right away since I don't know the answers and was searching the answers myself. During the same time, I began to prepare the discovery questions. I was planning to use discovery requests to find the correct entity name in addition to my other interrogatories and documents regarding my wrongful termination. I had the process server mailed the form interrogatories, special interrogatories, request for production, request for admission on 09/10/2025. Mr Mcinerney emailed me confirming that he received the discovery requests through first class mail on 09/15/2025, but he informed me that he was not going to answer these discovery questions because Astellas Gene Therapies (AGT) was not being sued. Mr Mcinerney has various tactics including trick-and-treat, shifting blames, squeezing-in and squeeze-out, to force

me to change entity name against my will. The tactics he used for not answering discovery requests are squeeze-out part of the squeeze-in and squeeze-out from my lawsuit. He understands that not answering discovery questions will be sanctioned by California Civil Procedure and may cause Astellas to lose the case. But don't worry about him being sanctioned and Astellas losing the case because he knows how to shift blames to me. The blame is he doesn't answer discovery questions is all because of me that I don't change the entity name to Astellas Gene Therapies (AGT), Inc which was not being sued. In addition to squeeze-in and squeeze-out tactics, Mr Mcinerney has trick-and-treat tactics. Mr Mcinerney keep tricking me to change the entity name from Astellas, Inc to Astellas Gene Therapies (AGT), Inc from Day 1 on 07/07/2025 when he phoned me to introduce himself as opposing counsel representing the defendant. He always say if I change the entity name from Astellas Inc to Astellas Gene Therapies (AGT), Inc (**trick**), he is going to go over the merits in the complaint (**treat**); if I change the entity name from Astellas, Inc to Astellas Gene Therapies (AGT), Inc (**trick**), he is going to answer discovery questions (**treat**). In addition, he tricked me to re-file the complaint and email him the amended complaint. The truth is if Astellas Inc is the wrong defendant, Mr Mcinerney can file an Answer, then my lawsuit has nothing to do with him and Astellas, Inc anymore. There might be a possibility of misnomer meaning right defendant with the wrong name, the court generally permits amendment and the case can be related back to its original filing date. If I re-file like Mr Mcinerney suggested, the re-filing will get a new later date and I cannot relate back to the original filing date, and therefore I will lose statute of limitations for nothing. It is not I made mistakes to lose time limit, but Mr Mcinerney keep tricking me to lose statute of limitations. He kept tricking me through email which is not written under oath. If I listen to him I will make mistakes and he is not responsible for the mistakes. That's why he never translate the same statements from his email to filing an Answer which is under oath. Astellas, Inc is the right defendant, so they know how to answer discovery questions and provide discovery documents. If they are not the right defendant, they won't even know what I am talking about, let alone having discovery documents and discovery answers. Mr Mcinerney shift blames to me that he doesn't file an answer and doesn't answer discovery questions is all

because of me not changing the entity name. Mr Mcinerney has a pattern: when the court ask him to do something like attending CMC meetings, he never used AGT was not being sued as excuse for no show, he squeezed in because the court can place sanctions on him and he tricked the court that he is taking care of this lawsuit. On the other hand, if I ask him to do something like answering discovery questions and receive process service, he squeezed out using AGT was not being sued as excuse, because I cannot place any sanctions on him and he intentionally try to delay my case by not cooperating with meet-and-confer, as well as make false statements. If he thinks the defendant is the wrong defendant, all he needs to do is file an Answer and doesn't need to go to CMC meeting or answer discovery questions, yet he choose to go to CMC but refuse to answer discovery questions. And he will continue the sabotage for the future upcoming legal process.

On 10/20/2025 at 11:45 am, I emailed Mr Mcinerney reminding him that these discovery questions and discovery documents are due on 10/15/2025 which is back-calculated from the Proof-of-service on 09/10/2025. I informed him that I want to meet-and-confer which is required for me to file "motion-to-compel". The next day on 10/21/2025 at 11:02am (phone voice mail), I left him a voicemail informing him that I want to schedule a meet-and-confer for me to file "motion-to-compel". I had all documents and topics readily available if he call me back and I can go over the topics for meet-and-confer to enable me to file motion-to-compel. Or I was ready to schedule a time that both of us are mutually available later if he was not available to dive directly into meet-and-confer when he called. Mr Mcinerney called me back on 10/21/2025 at 5:19pm, I reminded him that he did not respond to my discovery requests. Mr Mcinerney was tricking me that he was not going to answer these discovery questions because he represents AGT which was not being sued, and urged me to add AGT as new defendant in addition to Astellas, Inc which is already listed as defendant in my complaint. I immediately pointed out that he did not responding to my discovery requests is not due to the potential misnomer. Rather the reason for Astellas not answering my discovery requests is they do have the fifth amendment protection for not answering these discovery request to prevent self-

incrimination for falsifying mass spec data and cover-up the falsification of scientific data which are criminal activities imbedded in this civil lawsuit. Mr Mcinerney was shocked that I know about the fifth amendment and bring it up. He spent 28 minutes out of the entire 29 minutes phone call sabotaged the "meet-and-confer" to "trick-and-treat" with the trick always being changing entity name from Astellas Inc to AGT Inc. I know his tactics and refused to be tricked. I don't have genuine consent to change entity name, but I cannot stop his talking and I barely able to squeeze in to question him which California Code of Civil Procedure mandates that I need to adopt the opposing counsel's advice. Mr Mcinerney replied that there was no such Code, but he would not stop tricking me even after I had the nerve to tell him that he was tricking me. He denied that he was tricking me. Upon hearing that, I asked him why he called me on 07/07/2025 in the first place to squeeze into my lawsuit I filed on 04/29/2025 with the defendant always being Astellas Inc, not AGT Inc he represents. He pretended that he did not understand my question and knowingly and intentionally distorted my question to be why he was returning my call on 10/21/2025. My question is regarding his 07/07/2025 call, not 10/21/2025 call. I corrected him on the spot that I was not talking about the call on 10/21/2025 for meet-and-confer request, I was talking about his call he initiated on 07/07/2025. He confessed that he took all lawsuits has the defendant name containing Astellas. However in his summary email sent to me on 10/22/2025 at 2:46 pm, he was lying that "In our call you asked me a few times why I was talking to you on the phone, and I reminded you that we were talking because you had called me." It is not Mr Mcinerney doesn't understand my question. Mr Mcinerney understand the importance of my question regarding his 07/07/2025 call to squeeze into my lawsuit to trick me to change entity name to AGT. He already answered my question regarding why he called me on 07/07/2025 during our 10/21/2025 phone call. Yet in his follow-up email, he intentionally lied that I was asking about why he called me on 10/21/2025. The question I asked why he called me on 07/07/2025 will make or break his tactics for wrongful squeeze-in my lawsuit just to sabotage my lawsuit. This is one example that Mr Mcinerney will intentionally lie, especially when nobody is watching, e.g. during "meet-and-confer". Tricking me is not Mr Mcinerney's only strategy. If I was being tricked, that's his best plan. I was not being tricked throughout the

entire conversation lasted for 29 minutes. This is not a problem for Mr Mcinerney with decades years of experience, just lie because nobody heard anyway during the 1:1 conversation to take advantage of me without a lawyer but pretend that he is a very nice person to advice me to seek lawyer's advice for the best interest of me. Before he was ready to hang up the call at around 5:47pm, I quickly grabbed the last minute to ask him to schedule a meet-and-confer for me to file motion-to-compel. He refused to meet-and-confer for my discovery requests right on the spot. I asked him to schedule a meet-and-confer for the upcoming CMC meeting scheduled on 12/10/2025. He said he was not going to meet-and-confer for the upcoming CMC. I cannot schedule meet-and-confer because he said no. However, from his follow-up summary email on 10/22/2025 at 2:46 pm, he denied that he refused to meet-and-confer for both discovery requests and the upcoming CMC meeting. From the 29 min sabotage phone call on 10/21/2025, Mr Mcinerney achieved his sabotage and followed up with his sabotage summary email next day. Unfortunately I achieved nothing, no meet-and-confer topics were discussed during the 29 min sabotage phone call, and no future meet-and-confer meeting are scheduled. I wasted lots of time to report his misconduct.

## II.CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Mr Mcinerney sabotaged my complaint and summons to trick me to make mistakes which was done correctly in the first place)**

Mr Mcinerney is repeatedly compelling me to change the entity name from Astellas, Inc to AGT, Inc against my will using trick-and-treat tactics. His trick is intentionally misleading me to amend my complaint and refile my amended complaint, then his treat is he will go over the merits of my complaint. The truth is the amendment of my complaint and re-filing of the amended complaint are totally unnecessary. I will lose statute of limitation by amending and refiling my complaint with a new filing date, so he can dismiss my case due to demurrer. I refused to do that and Mr Mcinerney lied to me that amending and re-filing of my complaint will

not lose statute of limitation during the 10/21/2025 phone call. Moreover, he tricked me to make mistakes for proof-of-service which was done correctly in the first place. Mr Mcinerney requested me to amend my complaint and re-file the amended complaint, then he instructed me to email him the amended and re-filed complaint and summons. His treat is he will then answer my discovery questions. The truth is the amended complaint and summons can only be delivered through personal service, electronic delivery does not apply to complaints and summons. If I did exactly what he told me to do, he will attack my proof-of-service on procedural grounds and dismiss my case, rather than answer my discovery questions.

## SECOND CAUSE OF ACTION

### (Mr Mcinerney sabotaged my lawsuit by squeeze-in and squeeze-out)

On 07/07/2025 Mr Mcinerney phoned me to inform me that he squeezed into my lawsuit although I never served him. He tricked me to believe him that he is the opposing counsel so I began to serve papers to him including but not limited to my discovery requests. I ask him to answer my discovery request, he said he represents Astellas Gene Therapies (AGT), not Astellas, and my proof-of-service to him is not valid. When I informed him that I need to "meet-and-confer" for me to file motion-to-compel, he said he represents AGT, not Astellas, and my proof-of-service to him is not valid. I ask for "meet-and-confer" for the upcoming CMC scheduled on 12/10/2025, he said he represents AGT, not Astellas. When I ask him to do something required by law, he is not doing it using discrepancy of AGT vs Astellas entity name as excuse. If the court ask him to do something, he squeezed in like attending the 07/29/2025 CMC meeting without using discrepancy of AGT vs Astellas entity name as excuse. During the 10/21/2025 phone call, I asked Mr Mcinerney either solely squeeze in my lawsuit or solely squeeze out my lawsuit, not squeeze-in and squeeze out at the same time to sabotage my lawsuit. His squeeze in and squeeze out tactics are used to sabotage my lawsuit. His tricks work both ways for him but neither way work for me. He said he is not going to accept service for my discovery requests

even if my proof-of-service was done correctly. If I don't service him by listening to what he said that he is not going to accept my service anyway, he will attack my violations on procedural grounds based on improper service. Moreover, he always shift blames to me. His explanation for not answer discovery questions is all because of me. The true reason for Mr Mcinerney not answering discovery questions is Astellas Inc have the rights from the fifth amendment to remain silent to prevent themselves from self-incrimination of mass spec scientific data falsification and cover up.

**<u>THIRD CAUSE OF ACTION</u>**

**(Mr Mcinerney turned my request for meet-and-confer to trick-and-treat)**

I emailed Mr Mcinerney and left a voicemail for scheduling meet-and-confer for me to file motion to compel discovery requests. Mr Mcinerney returned my call on 10/21/2025 at 5:19 pm. Mr Mcinerney dictate the call for 28 minutes non-stopping that I was forced to answer his sabotage question always being changing the entity name from Astellas Inc to AGT Inc. I did not have any chance to squeeze in to talk about any topics for meet-and-confer to enable me to file motion-to-compel. Before he was going to end his call, I asked him to schedule meet-and-confer for me to file motion-to-compel, he said he was not going to schedule meet-and-confer. I asked him to schedule meet-and-confer for the upcoming CMC meeting scheduled on 12/10/2025. He said he was not going to meet-and-confer. For the entire 29 min sabotage phone call on 10/21/2025 from 5:19 pm to 5:48pm, he achieved his sabotage while I achieved nothing. No meet-and-confer was scheduled and no meet-and-confer topics were discussed in this sabotage call.

**<u>FOURTH CAUSE OF ACTION</u>**

**(Mr Mcinerney is lying in his summary email sent on 10/22/2025 at 2:46pm)**

After Mr Mcinerney sabotaged the meet-and-confer conversation into trick-and-treat on 10/21/2025, he followed up with an email next day summarizing the conversation with lies.

After I saw his lies on 10/22/2025 at 2:46pm, I suddenly realized that Mr Mcinerney is a scammer. In the past, he was tricking me. When he noticed that his tricks don't work on me and he is losing time when my case progress, he just lied in his summary email. One lie is regarding my question for his incoming 07/07/2025 phone call which he intentionally distorted to be 10/21/2025 phone call to cover-up that he squeezed into my lawsuit just to abuse the legal process. During the same call, I asked him to schedule meet-and-confer for me to file motion for discovery requests, as well as meet-and-confer for the upcoming CMC scheduled on 12/10/2025, he refused both meet-and-confer requests. However, in his follow-up email next day, he denied he refused to meet-and-confer. His follow-up emails full of lies trigger me to report his misconduct for abuse of the legal process.

## III. PRAYER FOR RELIEF

Wherefore, Plaintiff seeks relief as follows:

(1) Mr Mcinerney should be charged with perjury of lying and sentence him for up to 20 years in prison for intentionally made false statement and his other abuse of the legal process.

(2) I will seek disbar of Mr Mcinerney from State Bar of California.

(3) Mr Mcinerney should pay me for punitive damages and other damages or Astellas, Inc can pay me on his behalf.

(4) Mr Mcinerney's misconduct should not delay my lawsuit in any way. His misconduct is his choice, not my choice and I did not do anything wrong.

# EXHIBIT A

Table 1. List of CMC meeting and proof-of-service

| List of proof-of-Service, or meeting | Date of proof-of-service | To whom | Address | Outcome | Squeeze in /squeeze out of my lawsuit |
|---|---|---|---|---|---|
| Serving summons and complaints | 06/03/2025 | Agent for Astellas Inc | Sacramento | They rejected service on 06/04/2025 | |
| | 06/11/2025 | CEO of Astellas Inc | South San Francisco | | |
| | 07/07/2025 phone call | nobody | | Mr Mcinerney phoned me to introduce himself to discuss this case. | I never served Mr Mcinerney. He squeezed in |
| Serving 1st CMC statement | 07/17/2025 | CEO of Astellas Inc | South San Francisco | Never heard anything | |
| | | Mr Mcinerney | San Francisco | Never heard anything | |
| CMC meeting | 07/29/2025 | NA | | Mr Mcinerney attend CMC remotely | Mr Mcinerney squeezed in |
| | | NA | Redwood city | I appeared in person at court | |
| Discovery requests | 09/16/2025 email and all following communications, 10/21/2025 phone call, 10/22/2025 email | Mr Mcinerney | San Francisco | Mr Mcinerney said he was not going to answer discovery requests. | Mr Mcinerney squeezed out |
| CMC meeting | Scheduled on 12/10/2025 | | | At the time of this writing, the date is not 12/10/2025 yet | I predict Mr Mcinerney will squeeze in to appear remotely |

Table 2. List of communications

| Date and type of communication | Purpose |
|---|---|
| 07/07/2025 Phone call | Mr Mcinerney phoned me to introduce himself, and ask me to change entity name from Astellas Inc to Astellas Gene Therapies (AGT), Inc |
| 07/29/2025 | Mr Mcinerney emailed me right after the CMC meeting to ask me to change entity name from Astellas Inc to Astellas Gene Therapies, Inc |
| 09/16/2025 at 11:39am | Mr Mcinerney emailed me confirming that he received the discovery documents from me. He asked me to change entity name from Astellas Inc to Astellas Gene Therapies, Inc. If I don't change that, he was not going to answer discovery questions. |
| 09/16/2025 at 4:13pm | I emailed Mr Mcinerney back to convince him to answer discovery questions without me changing entity name as pre-requisite for him to answer discovery questions. |
| 09/16/2025 at 5:01pm | Mr Mcinerney emailed me back to ask me to change entity name from Astellas Inc to Astellas Gene Therapies, Inc |
| 10/20/2025 at 11:45 am (email); 10/21/2025 at 11:02am (phone voicemail) | I emailed and called (left a voicemail) Mr Mcinerney to schedule meet-and-confer for me to file "motion-to-compel" to answer discovery questions |
| 10/21/2025 at 5:11pm | Mr Mcinerney emailed me demanding me to change entity name from Astellas Inc, to Astellas Gene Therapies, Inc |
| 10/21/2025 at 5:19pm | Mr Mcinerney calling me back not for meet-and-confer or scheduling meet-and-confer as I requested. Rather, he wasted my time to brainwash me to change entity name from Astellas Inc to Astellas Gene Therapies, Inc. I already told him upfront to stop tricking me, yet he continued to trick me and denied that he was tricking me. |
| 10/22/2025 at 2:46pm | Mr Mcinerney sent me an email summarizing the conversation on 10/21/2025. However, Mr Mcinerney intentionally and knowingly falsified what I talked about. What he wrote are lies, pure and simple. His intentional false statement triggers me to file a motion for sanctions for his misconduct. |
| 10/22/2025 at 5:09pm email | I emailed Mr Mcinerney back pointing out where he intentionally and knowingly present false statements that I never said. These are not due to misunderstanding. I don't want to stay silent, I am going to fight back. |

# EXHIBIT B

Re: Ye Shen v. Astellas, Inc.
- From: Ye Shen
To: McInerney,, Cc: Kenyatté, · Wed, Oct 22 at 5:09 PM

Dear Mr McInerney,

I think you are intentionally and knowingly distorting the truth. You have more experience and more articulate than I am, but you should not intentionally distort what I said. See my answers underlined.

Thank you

ye

On Wednesday, October 22, 2025 at 02:46:13 PM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Dear Ms. Shen:

I'm following up our call yesterday, which was precipitated by phone calls you left for me on my mobile phone and emails you sent me. (Ye comments: I phoned you and emailed you to schedule a meet and confer which is a requirement for me to file motion-to-compel for the discovery request. You did return my call and my email, but you drive the call for 29 minutes and none of them is regarding meet and confer, but rather demanding me to change entity name from Astellas, Inc to AGT, Inc which I refused and you tried to convince me for 28 minutes with the last min I request for meet-and-confer for discovery questions, as well as meet-and-confer for the upcoming CMC scheduled on 12/10/2025. You refused to meet-and-confer for both discovery requests and upcoming CMC meeting, yet shifting blames on me for refusing to change entity names which you made as pre-requisite. Yet you intentionally distort what I said, you refused to acknowledge what you told me that you did not want to meet-and-confer (so you can get away with it)). In our call, I encouraged you to retain an attorney to represent you, and suggested that you contact the Legal Aid of San Mateo, Legal Aid of San Francisco, or the state bar, as they have resources available for attorneys. (Ye comments: It is not that I want to be in this situation

as plaintiff pro per without lawyers. Mr Mcinerney doesn't need to make your trick to sound credible by asking me to seek my lawyer's advice to prove that Mr Mcinerney is right. This lawyer referral topic has nothing to do with the meet-and-confer that I requested. Mr Mcinerney actually took full advantage of me as plaintiff pro per to pressure me to change entity name, not responding to discovery requests, and keeping lying in this follow-up summary which Mr Mcinerney is not likely to lie in front of my lawyer if I have one.) We discussed how you could file an amended complaint naming your former employer, Astellas Gene Therapies, Inc. ("AGT"), as a defendant, and if you email me the amended complaint and updated summons for that entity, I have been authorized to accept service on behalf of AGT. As you know, AGT was your employer and the entity identified on your wage statements that you received during your employment. Indeed, you named AGT as your employer in your complaint filed with the Department of Civil Rights. You stated that you would not do that, but I encouraged you to reconsider that approach.

You stated that you thought I was trying to trick you by saying that you should amend your complaint to name your actual employer as the defendant. I assure you I am not trying to trick you (Ye comments: Mr Mcinerney is not just tricking me. When Mr Mcinerney saw his trick doesn't work and he is losing time, he just lied in this email of various things I did not say in the conversation during the previous day), but if you consult with an attorney they should be able to explain this process to you (Ye comments: Mr Mcinerney doesn't need to worry about me. If Mr Mcinereny doesn't like my process, he doesn't need to get involved in the process of my lawsuit). I'm not authorized to accept service on behalf of "Astellas, Inc.," which is a non-existent legal entity, which you seemed to acknowledge in our call. (Ye comments: I did not acknowledge that "Astellas, Inc" is a non-existent legal entity. I did not acknowledge that! Please do not intentionally distort what I said. You always tried to convince me but you failed so far. You should file an Answer under the oath and upload to my case portal so you can convince the judge and the court. When I mentioned to you that this email is not written under

oath, but the filed Answers are, you mentioned that the Answers are not filed under oath. I don't believe the statement you made is true. Obviously you can deny what you said that since that was spoken, not written down, let alone written down under oath.)

In our call you asked if I would meet and confer with you regarding your discovery responses directed to the non-existent entity Astellas, Inc. that you emailed me copies of last month. As you know, when you emailed me those last month, I reminded you that they were directed to a non-existent entity and that my client, AGT, had not been served in this case (Ye comments: they have been served, you refused to accept papers, reject papers, throw away papers to prevent lawsuit from moving forward, courts provide various methods to address refusal ensuring that defendants are notified and case proceed. If I don't serve these documents to you, you will attack on the procedural grounds and argue that these documents are not properly served. I highly recommend you to file an Answer so what you wrote in this email are legally binding. What you wrote in the emails are not legally binding, just heads-up). but that you could remedy situation simply by amending your complaint. I told you in our call, I would be happy to meet and confer with you regarding your discovery once my client, AGT, was sued and served in this case. I encouraged you to be sure to tell the court that I was willing to meet and confer with you once my client was sued and served, not that I was refusing to meet and confer with you (Ye comments: you can tell the court yourself one way or another, I am not your spokeperson. In addition, what i heard from you over the phone is you don't want to meet-and-confer so my case cannot move forward but you denied you refuse to meet-and-confer so you can get away with it. Moreover, you can blame me that you want to meet-and-confer, the meet-and-confer is not happening is all because of me. Now I know you are a very experienced employment lawyer based on your tactics.) You stated that you would not do that but indicated you would be incorrectly telling the court I was refusing to meet and confer with you. (Ye comments: That's why I encourage you to tell the court yourself whether you want to meet-and confer so I don't have any chance to incorrectly tell the court anything. Just answer my question before the court:

Do you want to meet-and-confer for the discovery questions: Yes or No? If your answer is Yes: what time?, No (the end), and remove all the no use stuff as you repeated trying to confuse me over the phone and email.) In our call you asked me a few times why I was talking to you on the phone, and I reminded you that we were talking because you had called me. (Ye comments: You are intentionally trying to distort my question. This is not due to misunderstanding. I filed the lawsuit on 04/09/2025 naming the defendant as Astellas, Inc. throughout. I never know you until 07/07/2025 when you first called me regarding this lawsuit 25CIV02939 introducing yourself being the attorney representing the defendant. Since you keep mentioning the defendant is AGT, not Astellas, Inc over the last 3-4 months, my question to you is if you do not represent Astellas Inc (in other words, you have nothing to do with my lawsuit 25CIV02939), why did you call me on 07/07/2025 to get involved in my lawsuit. I did not ask you about my email on 10/20/2025 and phone call on 10/21/2025 regarding discovery questions. I explained to you clearly and you answered my question clearly based on your clear understanding.)

If I did not accurately summarize our call, please let me know.

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Sent: Tuesday, October 21, 2025 5:11 PM
To: 'Ye Shen' <yeshen2000@yahoo.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: RE: Ye Shen v. Astellas, Inc.

Hi Ye:

You are correct, I did not file an answer on behalf of your former employer Astellas Gene Therapies, Inc. ("AGT") since you still have not sued or served it (Ye comments: You are right. I never sued or served AGT. You squeezed in just to sabotage my lawsuit and sabotage me. You are a scammer). As we have discussed a number of times, both by phone and email, you named Astellas, Inc., which is a nonexistent entity, and it's my understanding, you attempted to serve the agent for service of process for another Astellas-affiliate, but that agent returned the pleadings to you and informed you that you were mistaken in the entity you were attempting to serve. Since I represent your former employer, AGT, I learned of your attempts to sue a non-existent company, and reached out to you and volunteered to accept service on behalf of AGT if you re-filed your complaint against it and send me the amended complaint and summons. For whatever reason, you refuse to do so (Ye comments: You are coercively forcing me to do this against my will. Stop sabotaging me! You are a scammer! Who I sue have nothing to do with you). You also emailed me your earlier discovery, and immediately after I emailed you back with the attached email explaining how AGT has not appeared in this action, nor does emailing this discovery to me constitute service of the discovery on a company that has not been sued in this action. If you would like to discuss this matter further, please call me back at the number below. As I don't represent a party in this action, I can't agree to a discovery conference, and I am again imploring you to please sue your former employer AGT and then send me the amended complaint and summons and I will accept service on its behalf (Ye comments: I am not begging you to accept service. You don't need to answer any discovery questions. You are a scammer. I am going to report you to the court and the State Bar of California to have your lawyer license revoked so you can no longer sabotage me or anyone else.)

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |

Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: Ye Shen <yeshen2000@yahoo.com>
Sent: Monday, October 20, 2025 11:45 AM
To: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: Re: Ye Shen v. Astellas, Inc.

---

Hi Tom,

I don't think what you mentioned in the email has any merits. To date, I did not receive any answers, cross-complaints, or equivalent signed under oath and delivered to me through proof-of-service (POS). If your client is the wrong defendant, you still need to file an answer and stated exactly what you wrote in the following email and POS to me. As I wrote in my lawsuit 25CIV02939 (shen vs Astellas, Inc) i filed on 04/29/2025, I wrote down the defendant as "Astellas, Inc". I am suing Astellas Inc, and you mentioned multiple times that you do not represent Astellas, Inc. If you don't think you represent Astellas, Inc., you don't need to be in my lawsuit 25CIV02939 (shen vs Astellas, Inc). I didn't ask you to be in my case in the first place and i don't know you until you first called me in early July, presumably Astellas, Inc get in touch with you to ask you to represent them. You have the option to leave my case or you have the option to work with me. It is your choice. Whatever your choice is, please state that clearly in writing in this email so everybody is on the same page. If your choice is you don't want to be involved in this case, please reply in this email for the heads-up, followed by filing a formal answer and signed under oath and POS to me. If your choice is you want to be involved in this case, please respond to my discovery questions for the time being. The form interrogatories, special interrogatories, request for production, and request for admission were mailed to you on 09/10/2025 and you have 35 days to respond since the date of mailing. The deadline for you to turn in the answers and documents is 10/15/2025. To date, I did not receive any discovery

responses and documents. Before I file motion to compel to obtain compliance and sanctions as provided by California Code of Civil Procedure 2031.300, I need to meet-and-confer. Please let me know when is a good time for me to schedule meet-and-confer? I might need to schedule informal discovery conference. According to the local rules, i need your written consent to schedule Informal Discovery conference. Please write down in this email whether you consent or not consent for me to schedule informal discovery conference.

Thank you

Ye

On Tuesday, September 16, 2025 at 05:01:35 PM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Ye:

Unfortunately, that is not going to work, and I'm afraid you're over-complicating things for yourself.

The issue is that Astellas Gene Therapies, Inc. (AGT) has not appeared in this action nor has it been served (Ye comments: According to Mr Mcinerney, I am suing Astellas Inc. not AGT, then why does Mr Mcinerney squeeze into my lawsuit? I did not invite him to participate in my lawsuit.) Dropping off a summons and complaint naming "Astellas, Inc." is not service since that company doesn't exist. (Ye comments: I dropped off summons and complaint naming Astellas Inc somewhere, no one else picked it up except Mr Mcinerney picked it up for service to a company doesn't exist. I don't know Mr Mcinerney and didn't give summons and complaint to him. Mr Mcinerney picked up my lawsuit himself for sabotaging purpose only.) You also know that AGT's agent returned the summons and complaint to you because it purported to sue a non-existent entity. (Ye comments: AGT's Agents is playing smart to throw away summons and complaints. There is no need for any lawyers and the court, just need agents to throw away papers. Conspiracy of Astellas: Agent from Astellas throw away papers and attorney for Astellas is also throwing away papers delivered to him. Mr Mcinerney is throwing away

summons and complaint, he is throwing away discovery requests, and he is going to throw away all legal documents I will send him in the future. Yet he refused to leave my lawsuit as I requested on 11/21/2025. He is here as a gatekeeper to throw away papers so my lawsuit goes nowhere.)

When I appeared at the CMC, I said at the conference that I was appearing specially because AGT (your employer) was not sued or served, and I also said to you and the judge that there is no entity called Astellas, Inc. I realize you believe you have served Astellas, Inc., but as I have explained to you and as you can see on the Secretary of State's website, there is no such entity that exists in CA. I will not be responding to your discovery because it was not directed to AGT and AGT has not been sued or served in this action. Also, just emailing me with discovery is not proper, in light of the fact I have not made a formal appearance in this case on behalf of a defendant (Ye comments: You stated that you have not made a formal appearance in this case on behalf of a defendant. You don't need to be in my lawsuit if you don't want to and I am not begging you to participate in my lawsuit. I am requesting you to leave my lawsuit immediately. You don't have to make a formal appearance in my case on behalf of a defendant anymore. Don't squeeze in and squeeze out of my lawsuit to abuse the legal process and sabotage me.)

What I would suggest is that rather than over-complicating things by naming and attempting to serve a non-existent entity (Astellas, Inc.)--which will not result in your case progressing, nor will it result in any Astellas entity responding to your discovery--that you instead amend your complaint and name AGT as the defendant, which is the entity you named as the defendant in your California Civil Rights Department Complaint (attached). I will then accept service of that complaint on behalf of AGT. At that point you could then proceed with discovery to find out whether or not any other actual legal entity had any involvement in your termination. However, if you continue the way you are going by suing and trying to conduct discovery against "Astellas, Inc.," nothing will happen, you will not get any discovery responses, and your lawsuit will be at a standstill, likely to eventually be dismissed by the court due to your failure to

proceed against an existing legal entity (Ye Comments: Is Mr Mcinerney the spokeperson for the court and the jurors, can Mr Mcinerney speak for them? The truth is if I am being tricked by Mr Mcinerney, my case will be dismissed. My case being dismissed or not dismissed by court is none of Mr Mcinerney's business, please do not use pressure or instil fear to force me to do anything against my will. I don't need Mr Mcinerney's unsolicited free legal advice which are very expensive for his other clients. Yet Mr Mcinerney is so nice to me that he wiped off his attorney fees for me at the expense of his own client being Astellas or AGT.)

If you want to discuss, please call.

Thanks.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: Ye Shen <yeshen2000@yahoo.com>
Sent: Tuesday, September 16, 2025 4:13 PM
To: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: Re: Ye Shen v. Astellas, Inc.

Hi Tom,

I saw your email on July 29 after the CMC meeting. As I said in the CMC meeting, I am not going to change the company name as you suggested. This is my current thinking. I don't necessarily agree with you that the company is called Astellas Gene Therapies exclusively. This is one of the names, there are other names, e.g. Astellas Pharma which is the primary entity. I had the discovery forms sent to you on 09/10/2025. On DISC-001, I checked #3.0 general background information_business entity. In addition, for all the discovery forms, being form interrogatories, special interrogatories, request for production, etc, I require the people who

answer these questions to write down their names (for traceability and accountability), company names (e.g. Astellas Pharma, Astellas Gene Therapies), street address (e.g. 480 Forbes blvd, SSF, CA or somewhere in Northbrook, Illinois). These information will help to identify person(s) who answered the questions, and the company they belong to, also jurisdiction over venues, etc. I hope to find answers in these discovery forms. That doesn't mean I agree to transcribe what is being answered in the discovery forms, but this is the first step. If necessary, I can file "amendment to complaint", to correct the company names, not what you suggested of refiling with a different company name and refiling summons. You already accepted the service of the summons and original complaint, and you appeared at the July 29 CMC meeting. I had the same papers served twice, the first time to the agents in Sacramento, and the second time to 480 Forbes Blvd, SSF, CA. Whether the papers were thrown out or rejected, that's still being considered served. You have 35 days to respond since the mailing of these discovery forms which is on 09/10/2025. Your deadline to finish answering all these questions is 10/15/2025 regardless of the correct or uncorrect company names. The company names are not the prerequisite to answering these discovery questions. If you have any questions or need clarification on any of the interrogatories or discovery questions (other than the company names unless you have anything new), please let me know. If I don't hear from you regarding responding to these discovery questions, I am going to schedule meet and confer in October, and file "motion to compel" and schedule "law and motion" and other next steps if necessary.

Thank you

ye

On Tuesday, September 16, 2025 at 11:39:10 AM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Dear Ms. Shen:

We received these discovery documents in the mail yesterday. The last time we communicated on this case was on July 29, when I emailed you following the case management conference that

day. I've reattached that email here. As you know, I represent your former employer, Astellas Gene Therapies, Inc. ("AGT"), which has not been sued or served in your action (Ye comments: Mr Mcinerney is correct that I only served complaint and summons to agent from Astellas and CEO from Astellas. I never served them to Mr Mcinerney. He squeezed into my lawsuit which has nothing to do with him. During the 07/29/2025 CMC meeting for my lawsuit, he also squeezed in remotely to participate in my lawsuit with the defendant Mr Mcinerney knew he does not represent. He tricked me to have all my following documents served to him thinking he is the opposing counsel). As we have discussed a number of times, you have only sued "Astellas, Inc.," which is a non-existent entity. I had previously told you that I would accept service of a summons and complaint on behalf of AGT if you named it is this case and sent me an amended complaint and summons identifying the correct entity (Ye comments: I don't care whether Mr Mcinerney accept the service or not. I did not ask him to accept service in the first place. Mr Mcinerney squeezed in himself without my consent). I am unclear why you have sent me the attached discovery directed to "Astellas, Inc.," in light of the fact it does not exist. We can't respond to discovery on behalf of an entity that does not exist. (Ye comments: Mr Mcinerney is using the tactics of "squeezing out". When I sent him discovery documents, he tried to squeeze out using AGT was not being sued as excuse. When the court ask him to be present at the CMC on 07/29/2025, he showed up not using AGT was not being sued as excuse. Mr Mcinerney reminded me of the two faced God Janus. Mr Mcinerney is two faced attorney. To the court, Mr Mcinerney is obeying the court to show up at the CMC to avoid sanctions. To me, Mr Mcinerney is not obeying the California Civil Code procedure to answer discovery questions, yet shifting blames to me that he is not accepting service and answering discovery requests all because of me). My goal is to move this along so that we can get this matter addressed and resolved on behalf of the actual parties (Ye comments: If Mr Mcinerney is not representing the party I sued, he does not need to be involved in my lawsuit. He is squeezing in and squeeze out, trick-and-treat, abusing the legal process since the court does not know he is

lying and nobody will trust me as a plaintiff pro per who is a prey in front of the predator Mr Mcinerney). I am again reiterating my offer to accept service of the summons and complaint on behalf of AGT once you amend the complaint to name the proper party. Please let me know if you would like to discuss this further.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 | Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

Dear Ms. Shen:

I'm following up the Case Management Conference from today and our prior discussions. As I've indicated, there is no legal entity called Astellas, Inc. Since you've indicated that you've gone onto the CA Secretary of State's Business Search link to find the name of Astellas entities, you would have seen that there is no "Astellas, Inc." doing business in California. There is, however, an Astellas Gene Therapies, Inc. ("AGT"), which is actually the first name that comes up when you search for "Astellas" on that search box. As you know, you worked for AGT. I am reiterating my offer to accept service on behalf of AGT if you simply re-file your complaint naming the correct company name. Even if you were able to have a default entered against the non-existent Astellas, Inc., which I do not believe you can because it doesn't exist, you would not be able to enforce such a judgment for that very reason. I would urge you to just re-file naming the correct entity, then emailing me a copy of the filed papers, and I will then accept service of those papers. That way, we can then just get to the merits of your lawsuit. (Ye comments: re-file will cause me to lose statute of limitation. Mr Mcinerney is tricking me to re-file to lose statute of limitation. His suggestion of emailing him a copy of the filed papers are not proper service. To my understanding, the complaint and summons need to be personally served in person, not email even if the opposing counsel accept electronic service. Mr Mcinerney is

tricking me to make mistakes so he can attack my violation on procedural grounds. His strategy is trick-and-treat. His trick is to ask me to amend and re-file my complaint, his treat is to go over the merits. If I am being tricked, he will not go over the merits; rather, my case will be dismissed based on loss of statue limitations as well as improper proof-of-service.)

Please do not hesitate to contact me if you have any questions.

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

# EXHIBIT C

From: Ye Shen <yeshen2000@yahoo.com>
To: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Sent: Wednesday, October 22, 2025 at 05:09:46 PM PDT
Subject: Re: Ye Shen v. Astellas, Inc.

Dear Mr McInerney,

I think you are intentionally and knowingly distorting the truth. You have more experience and more articulate than I am, but you should not intentionally distort what I said. See my answers underlined.

Thank you

ye

On Wednesday, October 22, 2025 at 02:46:13 PM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Dear Ms. Shen:

I'm following up our call yesterday, which was precipitated by phone calls you left for me on my mobile phone and emails you sent me. (Answer from Ye: I phoned you and emailed you to schedule a meet and confer which is a requirement for me to file motion-to-compel for the discovery request. You did return my call and my email, but you drive the call for 29 minutes and none of them is regarding meet and confer, but rather demanding me to change entity name from Astellas, Inc to AGT, Inc which I refused and you tried to convince me for 28 minutes with the last min I request for meet-and-confer for discovery questions, as well as meet-and-confer for the upcoming CMC scheduled on 12/10/2025. You refused to meet-and-confer for both discovery requests and upcoming CMC meeting, yet shifting blames on me for refusing to change entity names which you made as pre-requisite. Yet you intentionally distort what I said, you refused to acknowledge what you told me that you did not want to meet-and-confer (so you can get away with it)). In our call, I encouraged you to retain an attorney to represent you, and

suggested that you contact the Legal Aid of San Mateo, Legal Aid of San Francisco, or the state bar, as they have resources available for attorneys. we discussed how you could file an amended complaint naming your former employer, Astellas Gene Therapies, Inc. ("AGT"), as a defendant, and if you email me the amended complaint and updated summons for that entity, I have been authorized to accept service on behalf of AGT. As you know, AGT was your employer and the entity identified on your wage statements that you received during your employment. Indeed, you named AGT as your employer in your complaint filed with the Department of Civil Rights. You stated that you would not do that, but I encouraged you to reconsider that approach.

You stated that you thought I was trying to trick you by saying that you should amend your complaint to name your actual employer as the defendant. I assure you I am not trying to trick you, but if you consult with an attorney they should be able to explain this process to you. I'm not authorized to accept service on behalf of "Astellas, Inc.," which is a non-existent legal entity, which you seemed to acknowledge in our call. (Answer from Ye: I did not acknowledge that "Astellas, Inc" is a non-existent legal entity. I did not acknowledge that! Please do not intentionally distort what I said. You always tried to convince me but you failed so far. You should file an Answer under the oath and upload to my case portal so you can convince the judge and the court. When I mentioned to you that this email is not written under oath, but the filed Answers are, you mentioned that the Answers are not filed under oath. I don't believe the statement you made is true. Obviously you can deny what you said that since that was spoken, not written down, let alone written down under oath.)

In our call you asked if I would meet and confer with you regarding your discovery responses directed to the non-existent entity Astellas, Inc. that you emailed me copies of last month. As you know, when you emailed me those last month, I reminded you that they were directed to a non-existent entity and that my client, AGT, had not been served in this case (Answer from Ye:

they have been served, you refused to accept papers, reject papers, throw away papers to prevent lawsuit from moving forward, courts provide various methods to address refusal ensuring that defendants are notified and case proceed. If I don't serve these documents to you, you will attack on the procedural grounds and argue that these documents are not properly served. I highly recommend you to file an Answer so what you wrote in this email are legally binding. What you wrote in the emails are not legally binding, just heads-up). but that you could remedy situation simply by amending your complaint. I told you in our call, I would be happy to meet and confer with you regarding your discovery once my client, AGT, was sued and served in this case. I encouraged you to be sure to tell the court that I was willing to meet and confer with you once my client was sued and served, not that I was refusing to meet and confer with you (Answer from Ye: you can tell the court yourself one way or another, I am not your spokeperson. In addition, what i heard from you over the phone is you don't want to meet-and-confer so my case cannot move forward but you denied you refuse to meet-and-confer so you can get away with it. Moreover, you can blame me that you want to meet-and-confer, the meet-and-confer is not happening is all because of me. Now I know you are a very experienced employment lawyer based on your tactics.) You stated that you would not do that but indicated you would be incorrectly telling the court I was refusing to meet and confer with you. (Answer from Ye: That's why I encourage you to tell the court yourself whether you want to meet-and confer so I don't have any chance to incorrectly tell the court anything. Just answer my question before the court: Do you want to meet-and-confer for the discovery questions: Yes or No? If your answer is Yes: what time?, No (the end), and remove all the no use stuff as you repeated trying to confuse me over the phone and email.) In our call you asked me a few times why I was talking to you on the phone, and I reminded you that we were talking because you had called me. (Answer from Ye: You are intentionally trying to distort my question. This is not due to misunderstanding. I filed the lawsuit on 04/09/2025 naming the defendant as Astellas, Inc throughout. I never know you until 07/07/2025 when you first called me regarding this lawsuit 25CIV02939 introducing

yourself being the attorney representing the defendant. Since you keep mentioning the defendant is AGT, not Astellas, Inc over the last 3-4 months, my question to you is if you do not represent Astellas Inc (in other words, you have nothing to do with my lawsuit 25CIV02939), why did you call me on 07/07/2025 to get involved in my lawsuit. I did not ask you about my email on 10/20/2025 and phone call on 10/21/2025 regarding discovery questions. I explained to you clearly and you answered my question clearly based on your clear understanding.)

If I did not accurately summarize our call, please let me know.

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 | Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Sent: Tuesday, October 21, 2025 5:11 PM
To: 'Ye Shen' <yeshen2000@yahoo.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: RE: Ye Shen v. Astellas, Inc.

Hi Ye:

You are correct, I did not file an answer on behalf of your former employer Astellas Gene Therapies, Inc. ("AGT") since you still have not sued or served it. As we have discussed a number of times, both by phone and email, you named Astellas, Inc., which is a nonexistent entity, and it's my understanding, you attempted to serve the agent for service of process for another Astellas-affiliate, but that agent returned the pleadings to you and informed you that you were mistaken in the entity you were attempting to serve. Since I represent your former

employer, AGT, I learned of your attempts to sue a non-existent company, and reached out to you and volunteered to accept service on behalf of AGT if you re-filed your complaint against it and send me the amended complaint and summons. For whatever reason, you refuse to do so. You also emailed me your earlier discovery, and immediately after I emailed you back with the attached email explaining how AGT has not appeared in this action, nor does emailing this discovery to me constitute service of the discovery on a company that has not been sued in this action. If you would like to discuss this matter further, please call me back at the number below. As I don't represent a party in this action, I can't agree to a discovery conference, and I am again imploring you to please sue your former employer AGT and then send me the amended complaint and summons and I will accept service on its behalf.

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: Ye Shen <yeshen2000@yahoo.com>
Sent: Monday, October 20, 2025 11:45 AM
To: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: Re: Ye Shen v. Astellas, Inc.

Hi Tom,

I don't think what you mentioned in the email has any merits. To date, I did not receive any answers, cross-complaints, or equivalent signed under oath and delivered to me through proof-of-service (POS). If your client is the wrong defendant, you still need to file an answer and stated exactly what you wrote in the following email and POS to me. As I wrote in my lawsuit 25CIV02939 (shen vs Astellas, Inc) i filed on 04/29/2025, I wrote down the defendant as

"Astellas, Inc". I am suing Astellas Inc, and you mentioned multiple times that you do not represent Astellas, Inc. If you don't think you represent Astellas, Inc., you don't need to be in my lawsuit 25CIV02939 (shen vs Astellas, Inc). I didn't ask you to be in my case in the first place and i don't know you until you first called me in early July, presumably Astellas, Inc get in touch with you to ask you to represent them. You have the option to leave my case or you have the option to work with me. It is your choice. Whatever your choice is, please state that clearly in writing in this email so everybody is on the same page. If your choice is you don't want to be involved in this case, please reply in this email for the heads-up, followed by filing a formal answer and signed under oath and POS to me. If your choice is you want to be involved in this case, please respond to my discovery questions for the time being. The form interrogatories, special interrogatories, request for production, and request for admission were mailed to you on 09/10/2025 and you have 35 days to respond since the date of mailing. The deadline for you to turn in the answers and documents is 10/15/2025. To date, I did not receive any discovery responses and documents. Before I file motion to compel to obtain compliance and sanctions as provided by California Code of Civil Procedure 2031.300, I need to meet-and-confer. Please let me know when is a good time for me to schedule meet-and-confer? I might need to schedule informal discovery conference. According to the local rules, i need your written consent to schedule Informal Discovery conference. Please write down in this email whether you consent or not consent for me to schedule informal discovery conference.

Thank you

Ye

On Tuesday, September 16, 2025 at 05:01:35 PM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Ye:

Unfortunately, that is not going to work, and I'm afraid you're over-complicating things for yourself.

The issue is that Astellas Gene Therapies, Inc. (AGT) has not appeared in this action nor has it been served. Dropping off a summons and complaint naming "Astellas, Inc." is not service since that company doesn't exist. You also know that AGT's agent returned the summons and complaint to you because it purported to sue a non-existent entity.

When I appeared at the CMC, I said at the conference that I was appearing specially because AGT (your employer) was not sued or served, and I also said to you and the judge that there is no entity called Astellas, Inc. I realize you believe you have served Astellas, Inc., but as I have explained to you and as you can see on the Secretary of State's website, there is no such entity that exists in CA. I will not be responding to your discovery because it was not directed to AGT and AGT has not been sued or served in this action. Also, just emailing me with discovery is not proper, in light of the fact I have not made a formal appearance in this case on behalf of a defendant.

What I would suggest is that rather than over-complicating things by naming and attempting to serve a non-existent entity (Astellas, Inc.)--which will not result in your case progressing, nor will it result in any Astellas entity responding to your discovery--that you instead amend your complaint and name AGT as the defendant, which is the entity you named as the defendant in your California Civil Rights Department Complaint (attached). I will then accept service of that complaint on behalf of AGT. At that point you could then proceed with discovery to find out whether or not any other actual legal entity had any involvement in your termination. However, if you continue the way you are going by suing and trying to conduct discovery against "Astellas, Inc.," nothing will happen, you will not get any discovery responses, and your lawsuit will be at a standstill, likely to eventually be dismissed by the court due to your failure to proceed against an existing legal entity.

If you want to discuss, please call.

Thanks.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

From: Ye Shen <yeshen2000@yahoo.com>
Sent: Tuesday, September 16, 2025 4:13 PM
To: McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com>
Cc: Kenyatté, Khadijah O. <khadijah.kenyatte@ogletreedeakins.com>
Subject: Re: Ye Shen v. Astellas, Inc.

Hi Tom,

I saw your email on July 29 after the CMC meeting. As I said in the CMC meeting, I am not going to change the company name as you suggested. This is my current thinking. I don't necessarily agree with you that the company is called Astellas Gene Therapies exclusively. This is one of the names, there are other names, e.g. Astellas Pharma which is the primary entity. I had the discovery forms sent to you on 09/10/2025. On DISC-001, I checked #3.0 general background information_business entity. In addition, for all the discovery forms, being form interrogatories, special interrogatories, request for production, etc, I require the people who answere these questions to write down their names (for tracaebility and accountability), company names (e.g. Astellas Pharma, Astellas Gene Therapies), street address (e.g. 480 Forbes blvd, SSF, CA or somewhere in Northbrook, Illinois). These information will help to identify person(s) who answered the questions, and the company they belong to, also jurisdiction over venues, etc. I hope to find answers in these discovery forms. That doesn't mean I agree to transcribe what is being answered in the discovery forms, but this is the first step. If necessary, I can file "amendment to complaint", to correct the company names, not what you suggested of refiling with a different company name and refiling summons. You already accepted the service of the summons and original complaint, and you appeared at the July 29 CMC meeting. I had the same papers served twice, the first time to the agents in Sacramento, and the second time to 480 Forbes Blvd, SSF, CA. Whether the papers were thrown out or rejected, that's still being

considered served. You have 35 days to respond since the mailing of these discovery forms which is on 09/10/2025. Your deadline to finish answering all these questions is 10/15/2025 regardless of the correct or uncorrect company names. The company names are not the prerequisite to answering these discovery questions. If you have any questions or need clarification on any of the interrogatories or discovery questions (other than the company names unless you have anything new), please let me know. If I don't hear from you regarding responding to these discovery questions, I am going to schedule meet and confer in October, and file "motion to compel" and schedule "law and motion" and other next steps if necessary.

Thank you

ye

On Tuesday, September 16, 2025 at 11:39:10 AM PDT, McInerney, Thomas (Tom) M. <tom.mcinerney@ogletree.com> wrote:

Dear Ms. Shen:

We received these discovery documents in the mail yesterday. The last time we communicated on this case was on July 29, when I emailed you following the case management conference that day. I've reattached that email here. As you know, I represent your former employer, Astellas Gene Therapies, Inc. ("AGT"), which has not been sued or served in your action. As we have discussed a number of times, you have only sued "Astellas, Inc.," which is a non-existent entity. I had previously told you that I would accept service of a summons and complaint on behalf of AGT if you named it is this case and sent me an amended complaint and summons identifying the correct entity. I am unclear why you have sent me the attached discovery directed to "Astellas, Inc.," in light of the fact it does not exist. We can't respond to discovery on behalf of an entity that does not exist. My goal is to move this along so that we can get this matter addressed and resolved on behalf of the actual parties. I am again reiterating my offer to

accept service of the summons and complaint on behalf of AGT once you amend the complaint to name the proper party. Please let me know if you would like to discuss this further.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

Dear Ms. Shen:

I'm following up the Case Management Conference from today and our prior discussions. As I've indicated, there is no legal entity called Astellas, Inc. Since you've indicated that you've gone onto the CA Secretary of State's Business Search link to find the name of Astellas entities, you would have seen that there is no "Astellas, Inc." doing business in California. There is, however, an Astellas Gene Therapies, Inc. ("AGT"), which is actually the first name that comes up when you search for "Astellas" on that search box. As you know, you worked for AGT. I am reiterating my offer to accept service on behalf of AGT if you simply re-file your complaint naming the correct company name. Even if you were able to have a default entered against the non-existent Astellas, Inc., which I do not believe you can because it doesn't exist, you would not be able to enforce such a judgment for that very reason. I would urge you to just re-file naming the correct entity, then emailing me a copy of the filed papers, and I will then accept service of those papers. That way, we can then just get to the merits of your lawsuit.

Please do not hesitate to contact me if you have any questions.

Thank you.

Tom

Thomas (Tom) M. McInerney (he/him/his) | Ogletree Deakins
One Embarcadero Center, Suite 900 | San Francisco, CA 94111 | Telephone: 415-442-4871 |
Mobile: 415-350-8312
tom.mcinerney@ogletree.com | www.ogletree.com | Bio

DATED: 11/13/2025

Ye Shen

Plaintiff: Ye Shen

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN MATEO**

400 County Center
Redwood City, CA 94063

800 North Humboldt Street
San Mateo, CA 94401

**ORDER CONTINUING CASE MANAGEMENT CONFERENCE, AS THE ACTION IS NOT YET "AT ISSUE"**

In the Matter of: **YE SHEN vs ASTELLAS, INC.**

Case Number: **25-CIV-02939**

**FILED**
SAN MATEO COUNTY
11/25/2025
**Clerk of the Superior Court**
By /s/ Mayra Saldana
Deputy Clerk

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

THE COURT FINDS as follows:

An initial Case Management Conference was previously ordered and scheduled for 12/10/2025 in this action.

Pursuant to Rule 3.722(d) of the California Rules of Court, based upon the Court's review of the filed Case Management Statement(s) and the docket of this action, the Court determines that appearances at the Conference are not necessary at this time, as this action is not yet "at issue"; and determines that the Case Management Conference should be continued.

Pursuant to CRC Rule 3.110(b), a plaintiff is required to serve the Summons and Complaint upon all named defendants and file proofs of service of process upon all of those defendants within 60 days after the filing of the Complaint.

- Plaintiff has filed proofs of service of the Summons and Complaint upon all Defendants, but not all Defendants have filed an Answer and/or had a Default entered against them.

IT IS HEREBY ORDERED as follows:

1. As this action is not yet "at issue", the initial Case Management Conference is CONTINUED to **5/28/2026 at 9:00 AM** in the Department of the Case Management Judicial Officer, located at Courtroom H, 800 North Humboldt Street, San Mateo, CA 94401.

2. No later than 30 days prior to the date of this initial Case Management Conference, the parties must meet and confer, in person or by telephone, to consider each of the issues identified in CRC Rule 3.721 and Rule 3.727.

3. **Pursuant to CRC Rule 3.725, no later than 15 days prior to the date of this initial Case Management Conference, each party must file and serve a new Case Management Statement, individually or jointly, using the Judicial Council mandatory form CM-110.** However, it would facilitate the issuance of a case management order without an appearance at the Case Management Conference if you would file and serve your Case Management twenty-five (25) days before the Case Management Conference.

4. After all parties have made a formal appearance in this action, the parties may directly proceed to an Appropriate Dispute Resolution ("ADR") process by filing a Stipulation to ADR and Proposed Order (Local Form ADR-CV-1). If all parties file a completed Stipulation to ADR and Proposed Order at least twelve (12) calendar days prior to the date of this initial Case Management Conference, the Case Management Conference will be vacated (i.e., taken off the Court's calendar), and this action will be referred to the ADR Director.

5. Pursuant to Local Rule 3.805(h) and CRC Rule 2.30, the Court is empowered to impose monetary sanctions of a minimum of $150.00 upon any party or their counsel for failure to follow the requirements of this Order, or of the California Rules of Court, or of the Code of Civil Procedure. If you fail to follow the requirements of this Order, you will be subject to an order to show cause as to why monetary sanctions of $150.00, or some other amount, should not be imposed against you.

6. PLAINTIFF(S) must serve this Order on all parties **not** listed on the Court's proof of service within five (5) days of the date of this Order.

DATED: 11/25/2025

Commissioner Timothy E. Elliott
Case Management Judicial Officer

**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateo.courts.ca.gov

# AFFIDAVIT OF SERVICE

Date: 11/25/2025

In the Matter of: **YE SHEN vs ASTELLAS, INC.**
Case Number: **25-CIV-02939**

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this court, or, if a physical mailing address is present below, by placing the document(s) in an envelope for collection and mailing, following the Court's ordinary business practices for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Executed on: 11/25/2025

Chad L Peace, Court Executive Officer/Clerk

By: /s/ Mayra Saldana
Mayra Saldana, Deputy Clerk

**Copies served to:**

YE SHEN
112 CITYVIEW DRIVE
DALY CITY, CA 94014

Ye Shen
112 cityview drive
Daly City, CA 94014
415-867-1126
Plaintiff, In Pro Per

FILED
SAN MATEO COUNTY
MAR 25 2026
Clerk of the Superior Court
By ______ DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN MATEO

| | |
|---|---|
| Ye Shen<br>Plaintiff,<br>vs.<br><br>ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE,<br>Defendants | Case No.: 25CIV02939<br><br>DECLARATION OF YE SHEN IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT PURSUANT TO CCP §585(d) and STATEMENT OF DAMAGES |

I, Ye Shen ("Plaintiff") declare that the following is true and correct, and if called as a witness, I could competently testify to the matters hereinafter set forth which are within my personal knowledge:

DESCRIPTION OF CASE

I was being wrongfully terminated by Astellas on 11/15/2024 after I returned from FMLA to care for my sick mother. The ring leader Sue Duan created a harsh five step performance termination plan custom made for me to make sure that I will not be able to pass so she can lie that she terminated me due to performance issues, not because she was retaliating me for taking FMLA. The performance issues may be too weak as a reason to terminate me, so she also slander and libel that I was threatening my coworker Monica Zhang so my performance termination plan look much stronger. I reported Sue Duan's retaliation to HR and Astellas Global Ethics and Compliance the second time. However, the HR and Astellas Global Ethics

and Compliance only pretended to investigate but rather re-directed me back to Sue Duan who terminated me as expected. The first time I reported to Astellas Global Ethics and Compliance was on 11/17/2023 regarding Liub Chii Yang falsified mass spec scientific data, sabotaged my instruments, harassed me. Astellas Global Ethics and Compliance along with HR did not respond until nearly 5 months later right before they want to wrongfully secure 5-year corporate integrity agreement from Department of Justice. Monica Zhang covered up the mass spec data falsification upon Sue Duan's request so both Liub Chii and Sue Duan get away with serious data falsification without being fired. Liub Chii sabotaged my instruments many times, Sue Duan always lied that Liub Chii did not do this without installing cameras in the lab while a UC Berkeley professor know how to install the camera and caught the student who sabotaged fellow coworker's computer. As a result of that, the student at UC Berkeley was charged with three counts of felony. For the same situation in Astellas, Sue Duan refused to install camera so Liub Chii was never caught in the act of sabotaging my instruments. As a result of that, Liub Chii get away with criminal charges, with the help from Sue Duan and the entire company Astellas. When I sued the disgraceful company to hope to restore the integrity the company always preach, the company hired a lawyer Mr Mcinerney who had decades sabotage experience to sabotage their way out by lying that I did not serve him properly to unethically and illegally dismiss my lawsuit. Mr Mcinerney lied in both verbal conversations and offline emails with me, but refused to file Answer as I suggested many times so he cannot be held accountable for lying under perjury. Due to lack of formal response (excluding offline sabotage) from the Defendant, I request the facts presented in both the complaint and Request for Admission are deemed true.

In order to illegally terminate me, Sue Duan lied that I had performance issues on my performance termination plan. I understand that Sue Duan doesn't like me and would like to remove me. One way for her to remove me is through layoff by lying that my senior research associate position is no longer needed, rather they need to bump up the position to scientist II position that she was hiring to replace me while I was still on FMLA. This kind of layoff as a lie is still illegal but is less detrimental to my reputation so I might be able to find a job. Not

only did Sue Duan want to get rid of me, but slander and libel that I was threatening my coworker and about my performance in my employment records so I won't find any job elsewhere in the future. As exactly Sue wished, I did not find any jobs as of today. Since Sue's wish is to not let me find any jobs in the future, her malicious wishes are being granted and therefore should pay me including but not limited to front pay, back pay, health insurance premiums, medical expenses, as economic damages, as if I was not terminated, non-economic damages for emotional distress/mental suffering, damages for harm due to my professional reputation. I reserve the right to seek punitive damages. Astellas should cover my litigation costs including attorney fees. I don't have an attorney but I am doing attorney's job for myself so the fees supposed to go to my attorney should go to me.

EVIDENCE SUPPORTING JUDGMENT and STATEMENT OF DAMAGES

**ECONOMIC DAMAGES**

I was terminated suddenly, so I was not prepared to get a copy of my total rewards statements. I remember I downloaded my total rewards statements to my work computer, but I did not send these non-confidential documents to my personal computer. I requested these documents from Mr Mcinerney as part of the discovery, but he sabotaged my entire lawsuit and never provide any discovery documents to me including my personal records. I don't have a lawyer to fetch these documents for me. If there is any discrepancy in the numbers I presented, this is not my fault, this is all Mr Mcinerney's fault.

**1. Lost pay:**

I request lost of front pay and back pay. Since Sue Duan intentionally slander and libel to terminate me due to performance issues, my job and my career ended on 11/15/2024. That's why Astellas need to reimburse me for my entire career until retirement which is calculated in Table 1 with adjustment for low pay in Astellas. I was tricked by Liub Chii Yang to accept a lower job with underpay in the first place. Within 6 months since hiring, I identified minor

bands on SDS-PAGE in year 2022 that three senior scientists failed to identify them for many years. In addition, I did not receive any promotion end of year 2022 due to discriminatory reasons and also because Sue Duan took my credit to get her underserved promotion, so Astellas need to pay me at scientist level since my hiring from 03/28/2022. I request the difference to be paid back to me for year 2022, 2023, and 2024 when I was employed. I request all future salary to be paid until my retirement and the adjusted salaries are listed in Table 1 below with the following assumptions and rational.

Assumption #1: I assume inflation to be 3% for all years.

Assumption #2: I assume my bonus is 17% every year.

I happen to have a copy of my offer letter from year 2022 which states that my bonus was 17%. So I am going to use 17% for all years including year 2022, 2023, and 2024 since I don't remember the breakdown of salary and bonus, I only get a lump sum from my social security statement and tax returns. For all future years, I am going to use 17% as estimates for bonus as if I was not wrongfully terminated.

Since my hire in year 2022, I should be paid at scientist level of typically $150,000 annually, not typically $120,000 annually as senior research associate. For year 2022, my hire date is 03/28/2022 and I worked till end of year 2022, I deducted 3 months to account for the first 3 month of the year I did not work, and there is no bonus in year 2022 for me. My salary should be $112,500 (calculated as: $150,000/4*3). I get paid $87261 for year 2022. Astellas owe me the difference of **$25239** for year 2022.

Same as the aforementioned reasons, I calculated my income for year 2023 to be $180,765. I only get $142,723 according to my social security statement. Astellas owe me the **difference of $ 38,042.**

For the year of 2024, I took 12 weeks (3 months) FMLA, so 3 months should be deducted from my total compensation. Astellas should pay me $139,641 (=$186,188/4*3) while Astellas only paid me for $87,261. Astellas owe me the **difference of $52,380.**

From year 2024 to year 2029, I should be paid for a total of **$1,018,152**. From year 2030, I should be promoted to senior scientist. The estimate of base salary for senior scientist is

$170,000 and the estimate for scientist is $150,000. So the total compensation for senior scientist is the compensation of scientist * 1.1333 (=$170,000/$150,000). The total compensation from year 2030 to year 2043 is **$4,292,418.**

The total compensation Astellas owe me is: difference of pay of year 2022, 2023, 2024, and total of year 2025 to 2043 is $25,239 + $38,042 + $52,380 + $1,018,152 + $4,292,418 = $5426231. Astella owe me 10% interest. So the total compensation times interest is **$5,968,854.**

Table 1: Loss of salary through my entire career until retirement

| year | $ Base salary as scientist | $ bonus as scientist | $ Total as scientist | $total as senior scientist | Notes |
|---|---|---|---|---|---|
| 2022 | 150000 | 25500 | 175500 | | 1 |
| 2023 | 154500 | 26265 | 180765 | | |
| 2024 | 159135 | 27053 | 186188 | | 2 |
| 2025 | 163909 | 27865 | 191774 | | |
| 2026 | 168826 | 28700 | 197527 | | |
| 2027 | 173891 | 29561 | 203453 | | |
| 2028 | 179108 | 30448 | 209556 | | |
| 2029 | 184481 | 31362 | 215843 | | |
| 2030 | 190016 | 32303 | 222318 | 251220 | 3 |
| 2031 | 195716 | 33272 | 228988 | 258756 | |
| 2032 | 201587 | 34270 | 235857 | 266519 | |
| 2033 | 207635 | 35298 | 242933 | 274514 | |
| 2034 | 213864 | 36357 | 250221 | 282750 | |
| 2035 | 220280 | 37448 | 257728 | 291232 | |
| 2036 | 226888 | 38571 | 265459 | 299969 | |
| 2037 | 233695 | 39728 | 273423 | 308968 | |
| 2038 | 240706 | 40920 | 281626 | 318237 | |

| | | | | | |
|---|---|---|---|---|---|
| 2039 | 247927 | 42148 | 290075 | 327784 | |
| 2040 | 255365 | 43412 | 298777 | 337618 | |
| 2041 | 263026 | 44714 | 307740 | 347747 | |
| 2042 | 270917 | 46056 | 316973 | 358179 | |
| 2043 | 279044 | 47438 | 326482 | 368924 | |

Note 1: the numbers are for the entire year, since I started on 03/28/2022, I deducted 3 months out of 12 months from my paycheck and I was not eligible for bonus for year 2022.

Note 2: I was on FMLA for 12 weeks, so I deducted 12 weeks (3 months) from my paycheck. I was wrongfully terminated as retaliation for taking FMLA, so my pay should be continued to the end of 2024 as compensation.

Note 3: I should be promoted to senior scientist in year 2030. I heard the base pay for the senior scientist position is $170,000 annually. The base salary for the scientist position is $150,000. So the factor is 1.13333 (=$170,000 / $150,000). To get the compensation of senior scientist, just multiply by the factor of 1.1333 to the total compensation for scientist.

**2. Health insurance premiums**

Astellas need to pay me medical health insurance premiums which is assumed to be $3000 per months for a total of 17 years until I can get Medicare. The $3000 seems to be high for now but I use it flat for 17 years without taking into account of inflation. Astellas owe me $612,000 (= $3000 *12*17). With 10% interest, Astellas owe me **$673,200** for medical health premiums.

**3. Medical Expenses: pending**

Dental and vision monthly premiums are not included in the above calculations. If I incur any vision and dental cost in the future, Astellas need to reimburse these costs.

**4. Loss of LTI: Long term incentive**

I should have long term incentive every year. I don't remember what I received in the past because I don't have the total rewards statement and Mr Mcinerney did not give it to me during discovery phase. I request $30000 per year for 17 years through my retirement. If Mr Mcinerney think this number is outrageous, he can provide the documentation to me, otherwise he will never respond to me if I don't list any numbers. Astellas owe me **$561,000** (=$30000*17 =$510000 plus 10% interest).

**5. Voluntary legal services: pending**

Astellas offers voluntary legal service. I remember the monthly premium is around $20 for this voluntary legal service. They should pay me the money to do living trust every year. If I incur any cost for doing living trust, or other included legal advice, Astellas should pay for it.

**6. Lost life insurance, short-term/long-term disability insurance**

If I need to take time off for my disability from 11/15/2024 to my retirement, Astellas should pay for it as if I was not terminated.

**7. Waiting time penalty for 3 day accrued vacation after returning from FMLA**

Astellas owe me three days vacation pay by willfully stop my vacation accrual after I was back from FMLA. Before I took the family leave on 05/28/2024, my PTO already capped at 26.25 days. Astellas (USLeaves@astellas.com) confirmed with me on 05/24/2024 that they must apply all available paid options to my leave before I go unpaid. However, I noticed that my PTO were not being applied during my last 5-6 weeks of family leave which means I was not paid during my last 5-6 weeks of leave. As a result of that, I have reached the maximum accrual cap for vacation leave after I came back from family leave on 09/09/2024. From 09/09/2024 to 11/15/2024, I did not accrue any more PTO after I was back, PTOs were only deducted from 09/09/2024 to 11/15/2024 if I took PTO. I informed Astellas on 10/25/2024 and asked them to fix this mistake so I can start accruing any additional vacation after I was back from the leave. I request them to pay back the difference to me. They just blindly replied

to me again on 11/21/2024 that they are following up to confirm that after fixing the error, there are no additional vacation or heritage days to be paid in the final payout. This is a lie. They did not deny the mistake but denied their mistake resulting in owing me the vacation, so they don't have to pay me for the additional vacation of 3 days they owe me. Their denial is willful and I can't understand people administering the payroll won't understand.

As of today, I was not being paid for the 3 day vacation accured through 09/09/2024 to 11/15/2024 after I was back from FMLA. Therefore, Astellas owe me the three day vacations plus the waiting time penalty up to 30 days, plus 10% interest with a total of **$17139.4** (see below for calculation)

Table 2. waiting time penalty for 3 day vacation never paid.

| | Amount ($) | calculations |
|---|---|---|
| Three day vacation never paid | $1416.48 | $59.02/hour*8hrs*3 days |
| Waiting time penalty | $14164.8 | $59.02/hour*8 hrs *30 days |
| Total without interest | $15581.28 | |
| 10% interest | $1558.128 | |
| Total owed | **$17139.4** | |

**8. Waiting time penalty for three days delay to receive my final paycheck**

I was terminated on 11/15/2024. I received my final pay on 11/18/2024. I was entitled to receive my final paycheck on 11/15/2024 the same day of my termination. That's a three day delay. Astellas owe me $1416.48 (=$59.02/hour*8hrs*3 day) where $59.02 is my hourly rate and 3 day is waiting time penalty. With 10% interest included, Astellas owed me **$1558.128.**

**9. 401k Loss**

After termination, my 401k is significantly impacted. Sue Duan intentionally terminated me on 11/14/2024 right before holidays and right before the vesting in January 2025. So I request reimbursement of all unvested amount as if I were never terminated for year 2024. During my

career from year 2025 to year 2043 as if I were not terminated, I break up into 4 sections to account for promotion and catch up contribution after age 50, and more catch up contribution after age 60 to calculate 401k loss using AARP calculator (see 4 screenshots below). After age 67, there is no need to use the AARP calculator anymore because the most complicated part of company match is 0 and the AARP calculator only let me live to age 90, it does not allow me to live more than 90 years old. For the calculation purpose only, I am going to live to 100 years old, so I calculated 401k loss using offline Excel (see attached).

The total of 401k owed me is unvested 401k in year 2024 plus 401k from 2025 to 2043 with company match plus 401k increase from age 67 to 100 without company match but with RMD: **$420470374** (=$119640.56-$108574.19+$420459308).

Table 3. Summary of lost 401k throughout my career from year 2025 to 2076.

| year | 2025 to 2026 | 2026 to 2030 | 2030 to 2036 | 2036 to 2043 | 2043 to 2076 |
|---|---|---|---|---|---|
| age | 49 to 50 | 50 to 54 | 54 to 60 | 60 to 67 | 67 to 100 |
| Contribution limits | $23,500 | $24500 | $28500 | $34500 | 0 |
| Catch up contribution | 0 | $8000 | $8000 | $11250 | 0 |
| Total contribution | $23,500 | $32500 | $36500 | $42500 | 0 |
| salary | $191,774 | $197527 | $251220 | $299969 | 0 |
| % contribution | 12.254% | 16.45% | 14.529% | 15.25% | 0 |
| Current 401k balance | $147337.44 | $203,470.89 | $549.836 | $2,213,965.15 | $8445481.58 |
| Total balance | $203,470.89 | $618,756.10 | $2,213,965.15 | $8,445,481.58 | $420459308 |

The breakdown is to capture for changes in catchup contribution, promotion in year 2030.
For future contribution limits, the assumption is $1000 increase every year.
Assumption: The catch up contribution for over 50 years is $8000 for all future years until age 60, the catchup contribution for over age 60 is $11,250 for all future years.

Screenshot 1: Loss of 401K for year 2024 from the unvested amount due to termination

## Statement Details

astellas

Astellas US Retirement and Savings Plan

**Retirement Savings Statement**

YE SHEN
112 CITYVIEW DRIVE
DALY CITY, CA 94014-

Customer Service: (844) 401-5457
Fidelity Brokerage Services LLC
900 Salem Street, Smithfield, RI 02917

**Your Account Summary** Statement Period: 03/28/2022 to 12/31/2024

| | |
|---|---|
| **Beginning Balance** | **$0.00** |
| Employee Contributions | $66,000.00 |
| Employer Contributions | $33,424.92 |
| Fees | -$122.00 |
| Change In Market Value | $20,337.64 |
| **Ending Balance** | **$119,640.56** |

**Additional Information**

| | |
|---|---|
| Vested Balance | $108,574.19 |

**Your Personal Rate of Return**

| | |
|---|---|
| This Period | 20.5% |

Your Personal Rate of Return is calculated with a time-weighted formula, widely used by financial analysts to calculate investment earnings. It reflects the results of your investment selections as well as any activity in the plan account(s) shown. There are other Personal Rate of Return formulas used that may yield different results. Remember that past performance is no guarantee of future results.

**Your Asset Allocation** Statement Period: 03/28/2022 to 12/31/2024

Screenshot 2: Loss of 401k calculated by AARP calculator throughout the end of my career



Table 4: Loss of 401k calculated by Excel after retirement without company match anymore and take into consideration of required minimum distribution since age 73.

| **Age** | **Principle** | **Growth 20%** | **Total with growth** | **Distribution period** | **Total after RMD** |
|---|---|---|---|---|---|
| **67** | 8445482 | 1689096 | 10134578 | | |
| **68** | 10134578 | 2026916 | 12161493 | | |
| **69** | 12161493 | 2432299 | 14593792 | | |
| **70** | 14593792 | 2918758 | 17512551 | | |
| **71** | 17512551 | 3502510 | 21015061 | | |
| **72** | 21015061 | 4203012 | 25218073 | | |
| **73** | 25218073 | 5043615 | 30261687 | 26.5 | 29119737 |
| **74** | 29119737 | 5823947 | 34943684 | 25.5 | 33573344 |
| **75** | 33573344 | 6714669 | 40288013 | 24.6 | 38650288 |
| **76** | 38650288 | 7730058 | 46380346 | 23.7 | 44423370 |
| **77** | 44423370 | 8884674 | 53308043 | 22.9 | 50980181 |
| **78** | 50980181 | 10196036 | 61176218 | 22 | 58395480 |
| **79** | 58395480 | 11679096 | 70074576 | 21.1 | 66753506 |
| **80** | 66753506 | 13350701 | 80104208 | 20.2 | 76138653 |
| **81** | 76138653 | 15227731 | 91366384 | 19.4 | 86656776 |
| **82** | 86656776 | 17331355 | 103988131 | 18.5 | 98367151 |
| **83** | 98367151 | 19673430 | 118040582 | 17.7 | 111371622 |
| **84** | 111371622 | 22274324 | 133645947 | 16.8 | 125690831 |
| **85** | 125690831 | 25138166 | 150828997 | 16.0 | 141402185 |
| **86** | 141402185 | 28280437 | 169682621 | 15.2 | 158519291 |
| **87** | 158519291 | 31703858 | 190223149 | 14.4 | 177013208 |
| **88** | 177013208 | 35402642 | 212415850 | 13.7 | 196911043 |
| **89** | 196911043 | 39382209 | 236293252 | 12.9 | 217975946 |

| | | | | | |
|---|---|---|---|---|---|
| **90** | 217975946 | 43595189 | 261571135 | 12.2 | 240130878 |
| **91** | 240130878 | 48026176 | 288157054 | 11.5 | 263099919 |
| **92** | 263099919 | 52619984 | 315719902 | 10.8 | 286486578 |
| **93** | 286486578 | 57297316 | 343783894 | 10.1 | 309745884 |
| **94** | 309745884 | 61949177 | 371695061 | 9.5 | 332569265 |
| **95** | 332569265 | 66513853 | 399083118 | 8.9 | 354242318 |
| **96** | 354242318 | 70848464 | 425090782 | 8.4 | 374484737 |
| **97** | 374484737 | 74896947 | 449381684 | 7.8 | 391768648 |
| **98** | 391768648 | 78353730 | 470122377 | 7.3 | 405722051 |
| **99** | 405722051 | 81144410 | 486866462 | 6.8 | 415268453 |
| **100** | 415268453 | 83053691 | 498322143 | 6.4 | 420459308 |

**10. Social security loss**

Social security benefits is calculated from the highest 35 years. I have not worked for 35 years yet. My year 2025 earning is 0 so there is no social security payroll contribution. My future years is going to be like this thanks for Sue Duan's libel that I have performance issues and I was threatening Monica Zhang. Sue made these up to see my outcome just like this. I went to the social security website to get an estimate of my future earning of not able to find a comparable job anymore with future zero earning vs my future monthly social security benefits as if I were never terminated using the income I averaged from the numbers in Table 1. The difference is $4089 per months calculated with average future annual salary of $253,513 vs $3222 per month calculated with average future annual salary of 0. The difference is ($4089-$3222)*12months*33years=$343,332 plus 10% interest which totals **$377,665** that Astellas owe me.

Screenshot 3: social security benefits I will receive after age 67 as if I was not terminated (left panel) vs social security I will receive with future salary of $0 (right panel)




**11. Court and filing fees**

Filing Fee

| Date | Price | Documents filed |
|---|---|---|
| 04/29/2025 | $1435 | Complaints, summons |

Note: The court de-designated my complex case to non-complex case and the judge ordered the $1000 complex fee to be refunded back to me. I did not get $1000 back as of today. I appreciate the court to refund the complex part of the fee back to me. It is likely that Astellas need to pay if I win the lawsuit. So Astellas can pay me $1435. If Astellas want to get $1000 back, I don't have any problems with that, and Mr Mcinerney know how to get money back.

Printing fee

| Date | price | Documents printed |
|---|---|---|
| 04/28/2025 | $22 | Complaints, summons, etc |
| 07/10/2025 | $12 | Status conference statement |
| 09/08/2025 | $14 | Discovery requests |

| | | |
|---|---|---|
| 11/13/2025 | $12.75 | CMC statement |
| **Total to date** | $60.75 | |

Parking fee

| date | price | Location | Documents filed |
|---|---|---|---|
| 04/29/2025 | $3.5 | 440 county center, redwood city, CA | To file complaint and summons |
| 07/10/2025 | $1.5 | | To file status conference statement |
| 07/29/2025 | $4 | | To attend CMC |
| 09/08/2025 | $1 | | To file discovery forms although they are not filed eventually |
| 11/13/2025 | $2 | | To file CMC statement |
| **Total to date** | $12 | | |

Process service

| Date | Price | Documents served |
|---|---|---|
| 06/02/2025 | $122.75 | Personal service for complaints to agents in Sacramento |
| 06/11/2025 | $209 | Substitute service to CEO in South San Francisco |
| 07/17/2025 | $200.84 | To the opposing counsel, and to CEO of Astellas |
| 09/08/2025 | $118.25 | Discovery forms to the opposing counsel |
| 11/13/2025 | $145 | CMC statement to the opposing counsel |
| 11/29/2025 | $171.74 | Order continuing CMC, as the action is not yet "at issue" to the opposing counsel |
| Pending | pending | Statement of damages to the opposing counsel |
| pending | pending | CMC statement to the opposing counsel |
| **Total to date** | $967.58 | |

Note 1: all process service include printing which is 25 cents per page, postage (if mailing), and efiling of proof-of-service by process server. Some of the process fee is higher due to rush service to meet the deadline.
Note 2: These are the process service to date, there will be more coming.

**12. Lawyer fee: 1-2 million**

I don't have a lawyer so I did everything myself. I am doing my lawyer's job. Lawyers are paid 1-2 millions. I request 1 million for me doing my lawyer's work without jury trial and $2 million with an upcoming jury trial. At the time of this writing, I don't know whether I will have a jury trial. But I demand a jury trial.

**NON-ECONOMIC DAMAGES AND PUNITIVE DAMAGES**

1. Hiring fraud of Liub Chii.

   Liub Chii was hired in November 2021. She was obviously so worse that she should not pass the hiring interview and therefore should not be hired in the first place. Liub Chii knows herself that she does not qualify for the job but she applied anyway as a scammer to get the salary that she does not deserve. One day she bragged to me that Bill knew she cannot develop mass spec assay but still let her keep her job. Liub Chii always pretend that she is the mass spec expert although she knows nothing about mass spec. Since Liub Chii cannot perform, I as a senior research associate need to step in to do two people's work (both Liub Chii's work and my own work) to result in lots of stress to set up the mass spec lab and develop mass spec assays. Yet Liub Chii always intentionally cut my conversation with people from other departments to make sure that I unnecessarily "go through her" to pretend that she was supervising me. This parasite approach is the norm in mass spec lab. I request **$2 million** US dollars for emotional distress and **$2 million** US dollars for punitive damages.

2. Hiring fraud of Ye Shen.

   It is a joke that Liub Chii is hiring. Liub Chii is a MESS spectrometrist, yet she lied that she is a MASS spectrometrist. She successfully hired me as senior research associate

with background including but not limited to formulation, analytical ultracentrifuge (AUC), liquid chromatography (LC), capillary electrophoresis (CE), imaged capillary isoelectric focusing (icIEF), etc. I did not have any mass spec experience. I thought she was going to show me how to run mass spec, that's why I accepted this position which is low for me with over 20 years experience in biotech. If I know Liub Chii is that worse, I am not going to accept this position. Liub Chii tricked me to this position and that's when my nightmare begins with her stealing my credit, harassing me, sabotaging my instruments, and many other unethical behaviors. A job wrongfully secured through unethical and illegal means is not ok. With Liub Chii being my manager until 02/14/2023 was an insult to me. I request **$2 million** US dollar for emotional distress and **$2 million** US dollar punitive damage.

3. Credit theft Liub Chii Yang.

Shortly after I joined the company, I independently identified minor bands on SDS-PAGE which is a requirement by FDA and other health authorities. Previously two senior scientists failed to identify them. Emdahul Haque tackled this project and handed it over to Sue Duan after his departure, Sue Duan let it sit for many years and handed it over to Liub Chii Yang after Liub Chii joined the company as senior scientist. Liub Chii of course dumped the project entirely to me. Due to my extensive background in formulation and deep understanding of protein degradation pathway, I figured out these minor bands are due to sample preparation artifacts and I lowered denaturation temp as a simple fix. All the design and carry out experiments, my presentation on 09/20/2022, and my report are all independently presented and written by myself without any supervision. On my year 2022 performance review, Liub Chii intentionally lied that Bill supervised me for all the work I did independently. Bill was very happy upon hearing that.

Therefore Bill forged Liub Chii's performance review which should be rated "does not meet expectation" by taking my credit from my performance review which should be rated "exceeds expectation" so both Liub Chii and I get "meet expectations". Since Liub Chii cannot perform, that's why I take the whole project and did two people's work while Liub Chii did not have any other project to work on during the same timeframe. I slept at 2 am for many weeks to make this project work with 6 months since I joined the company while two senior scientists Emdahul and Sue Duan cannot figure out in 6 years. If I cannot perform, I have to leave the company, if I can perform, all my credit is being taken by people who has higher titles pretending they are supervising me with the reality that they have nothing to do with the project. That caused lots of emotional distress to me, so I request **$2 million** emotional distress and **$2 million** punitive damages.

4. First promotion fraud of Sue Duan by taking my credit.

The SDS-PAGE project was supposed to be Sue Duan's responsibility but unfortunately Sue never had any idea what the minor bands are, yet she was promoted from senior manager to senior scientist in December 2022. To the best of my knowledge, Sue does not have merits on other assays as well. Sadly I was passed on the promotion due to my race, gender, and age, in addition to Sue Duan steal my credit because the upper management don't care who do the work. My hard work, her promotion. In December 2022, a young guy with half Japanese and half American background get promoted from research associate 1 to research associated 2, and he was promoted from research associate 2 to senior research associate in December 2023. I don't have any problems with his well deserved promotions. What I have problems is promotion is biased depending on race, gender, and age. The difference between this young guy and me is:

he is a young guy, I am an old woman. He is half Japanese and half American (best race for Astellas: a Japanese company doing business in America, while I am Chinese). Other than discrimination, there is no explanation for me not getting promoted especially taken into consideration that my job title was already very low based on my work experience due to tricks played by Liub Chii during the hiring process. Even after I demonstrated exceptional performance, I was not get promoted no matter what because promotion is not based on merit, but rather based on favorism. This cause emotional distress for me because I understand that I was just cheap labor to support non-performers. I request **$2 million** emotional distress and **$2 million** punitive damages so Astellas won't keep the discriminatory practice over and over again.

5. Second promotion fraud of Sue Duan by replacing her former manager.

On 02/14/2023, Bill was asked to leave, to vacate his position to Sue Duan since his presence is an obstacle for Sue Duan to advance her corporate ladder. After Bill's departure, his position was not replaced by any new hires, but replaced by his past subordinate Sue Duan who has zero mass spec experience, zero chromatography experience, in addition to her zero biophysical characterization experience to lead the mass spec lab ever since 02/14/2023 till now. This position is always for mass spec experts with years experience elsewhere and even experts with years experience may or may not get this position. This is her second promotion from senior scientist to associate director at the expense of Bill Werner. Her first promotion is in December 2022 from senior manager to senior scientist, based on my hard work; yet resulted in her promotion. She does not have other merits, we all know that Amy is the one who take care of the biological assays and train Sue's subordinates. Within 3 months, Sue get promoted twice

for nothing. I was passed for the well deserved promotion because all the limited resources were poured onto her. Her title does not define her. She doesn't understand anything. I have to step in to train her contractor, correct the wrong set up of instruments by Liub Chii and her, write unnecessary detailed weekly report to explain ABC to her. Sue harassed me, surveiled me, falsified mass spec data and cover up with senior scientists, and lying I had performance issues after I was back from FMLA to terminate me without following the labor law. Bill has issues but to the best of my knowledge, Bill did not have any of these aforementioned issues and nobody get terminated after back from FMLA under Bill's leadership. Her promotion has a direct impact on my emotional distress and I request **2 million** for this part and another **2 million** for punitive damage to promote non-performers.

6. Liub Chii harassed me.

Since Liub Chii and I were the only two residents in the mass spec lab located in 270 East Grand Ave and this lab had no camera, Liub Chii harassed me and sabotaged my instruments many times because Liub Chii hated me for not letting her take my credit anymore. On 06/29/2023 at around 11:30am, when I called Thermo Fisher Scientific tech support in front of the analysis computer in the mass spec lab, Liub Chii quickly dashed right behind the chair I sit, staring at my computer. I was scared by her sudden move right behind me and as a result of that, my heart beated very fast. I told Liub Chii to leave several times not to interfere with my call, Liub Chii did not leave and gave me a scary angry hostile took. After several failed attempts to ask her to leave, I told her that I was going to call 911 if she didn't leave. This approach definitely worked, she began to leave but said to me while leaving: You don't share the data, you cannot perform after

working on 4 months for mass spec. I talked back to her: you are not my manager, I cannot perform is none of your business. I reported to Sue immediately. I told what happened to me to my mother. My mother was so scared and got sick ever since then. I request **$2 million** emotional distress for me, an additional **$2 million** emotional distress for my mother; and **$2 million** punitive damages for me and **$2** million punitive damages for my mother.

7. Liub Chii sabotaged my instruments hardware on a regular basis.

Liub Chii sabotaged my instruments many times from secretly disconnecting the tubing between HPLC and mass spec so the analyte went to the HPLC waste instead of mass spec for analysis. She continued to sabotage my instruments by deliberately loosen the parts including but not limited to the primary from quaternary solvent manager, pre-filter, outlet tubing connected to the flow cell to cause small but detrimental leaks. Of course she did it secretly which I figured out in hard ways after contacting Waters tech support after a long time. I found out through weird HPLC and mass spec profiles and through extensive troubleshoot on my own first followed by technical phone calls to either Waters or Thermo Fisher Scientific or both. This caused significant delay of my method development. These occur on a regular basis and each category of sabotage can be repeated many times. Not only I lost opportunity to learn mass spec due to Liub Chii's sabotage, I even lost confidence that whether I know how to run HPLC despite the fact that I had extensive HPLC experience in the past. I worry about deadlines to achieve delivery of projects, yet I had to troubleshoot in the first place which doesn't count as project delivery, that put me under lots of unnecessary stress, and the stress of figuring out how to deal with Liub Chii Yang. And Liub Chii keep doing this because her attitude

is "so what? I just do this to you, what can you do? I did that in the past 3 decades in different companies where I was being employed". I heard my coworkers say that Liub Chii sabotaged instruments in her previous jobs elsewhere. I reported Liub Chii's sabotage to Sue Duan and Sue always say I have no evidence that Liub Chii did this and Sue did not agree to install the camera in the lab. Sue Duan want Liub Chii to get away with the criminal charges. Both Sue Duan and Liub Chii are criminals disguised as professionals so they have to cover up for each other. I request **$2 million** for emotional distress and **$2 million** for punitive damage.

8. Liub Chii's attack is comprehensive: she attacked me, she attacked my instrument hardware, and her attack is not going to be complete if she does not attack the software. Liub Chii deliberately created communication error between my HPLC and the computer operating the HPLC so the computer can no longer control the HPLC several times. As a result of that, the HPLC was sitting in acid to cause corrosion. I need to troubleshoot to get instrument going in a very short period of time to avoid the corrosion and calling Waters technical support during their normal business hours ending at 4 pm PST. And the damage is under my name because I sign in with my credential and have to leave the screen on when the instruments are running according to Waters and Thermo technical advice (Waters and Thermo guidance to leave the computer on during the run is available upon request). If I log off the computer when I leave the lab, the instruments will stop running or act weird during the run. When I left the lab, Liub Chii secretly sabotaged my lab computers and instruments. But I cannot stay in the lab 24 x 7 to monitor them. When I report these problems to Sue, Sue always say there is no evidence that Liub Chii

did this. That's why Liub Chii was sabotaging my instruments on a regular basis. I request **$2 million** for emotional distress **and $2 million** punitive damages.

9. The mass spec lab located in 270 East Grand violated OSHA regulations with aisle not maintained at least 36" apart.

In order to better look over my shoulder of what I was doing in front of the Thermo mass spec, Liub Chii re-arranged her benches to let the width of her benches against the wall in the mass spec lab in 270 East Grand Ave in July 2023. This results in the aisle was not maintained at least 36" apart mandated by OSHA requirement for the lab, which is a safety concern. The purpose for this rearrangement of her bench is to unlawfully surveil me. This unlawful surveillance is in addition to stalking me. So Liub Chii can stalk me when she was walking and when she sit, she can no longer stalk me but she will surveil me whenever she saw me in front of the mass spec to spy what I was doing by pretending that she was looking at another computer connected to the instrument which she doesn't even know how to use. Occasionally she even turned off LN2 when I was in front of the mass spectrometer to disrupt my work. This makes me uneasy and I undergo lots of stress. I reported this violation to Sue and Sue did not care and this configuration remained until December 2023 when we moved to the new building in 480 Forbes blvd in South San Francisco. The safety inspection was never being done in this lab.

I request **$2 million** emotional distress and **$2 million** punitive damage for working in the unsafe lab everyday.

10. When Liub Chii sit, she surveil me. When Liub Chii walk, she stalk me.

The following is just one example that she was stalking me. On 07/25/2023 at 4:07 pm, I walked into the mass spec lab and Liub Chii happened to be in the hallway looking at her

phone. She intentionally followed me into the mass spec lab. While I was standing on top of the stool to change solvents on top of HPLC, she stalked me by squeezing in and squeezing out around nano HPLC (placed right next to my Thermo mass spec) for nothing to pretend that she happened to walk by to take a look at the little green tank behind her Waters QTOF mass spec. The green tank contains high purity nitrogen that will last several months to supply the backend of mass spec. Liub Chii had no need to take a look of the green tank when I stood on top of the stool to run into the risk of knocking me down while I was holding solvents at pH 2 (very acidic) in glass bottles. Although she did not knock me down from the stool to break the glass bottles so the acid can leak onto my skin to cause severe burns, it was a safety concern. I request **$2 million** emotional distress for stalking me, **$2 million** emotional distress for unlawful surveillance, and **$2 million** punitive damage for stalking me, **$2 million** punitive damage for unlawful surveillance.

11. Mass spec data falsification by Liub Chii Yang with absolute support from Sue Duan. Liub Chii Yang falsified mass spec data for at least two studies (AT132 and KT430, both are adeno associated viruses, AAVs) and presented in two different meetings. The first one is Intact AT132 studies via Waters LCQTOF-method development updates, presented by Liub Chii Yang on 12/13/2023 in Analytical Development Crosstalk meeting. The second one is intact KT430 studies via Waters LCQTOF-method development updates, presented by Liub Chii Yang on 01/31/2024 in KT430 Bi-weekly meeting. Liub Chii did not know anything about mass spec, her entire slides do not have any mass spectrum data, only liquid chromatography data (without mass spec) and tables with data being made up to pretend they are mass spec data. Liub Chii falsified scientific

data so she can keep her job as senior scientist that she does not qualify. Sue Duan falsified with Liub Chii because Sue wanted to pretend that the mass spec assays are undergoing in her department so she can take credit. The reality is as of 11/15/2024 when is my last day, there are no mass spec assays going under Sue Duan in Analytical Development Department in Astellas. All the mass spec assays are run by contract research organizations (CRO) like Charles River Labs, PPD, and others being evaluated as CRO. Liub Chii somewhat know the mass spec results like PTM (post translational modifications, e.g. phosphorylation and acetylation) since CRO used to do mass spec for us. When we bring the mass spec instruments in house in South San Francisco, we can't get the mass spec going but Liub Chii pretended to. She doesn't know how to analyze new samples or new molecules which means CRO never analyzed them for us before so Liub Chii and Sue don't know the results. I told my mother that I was going to report them. My mother immediately said that she worried about my safety. Both my mother and I get scared for a long time, but after careful consideration, I still decided to report them although I understand both of them will conspire to retaliate me. I **request $2 million** emotional distress for my mother, **$2 million** emotional distress for me, and **$2 million** punitive damages for me, and **$2 million** punitive damages for my mother.

12. Monica acquired her job as senior scientist by fraud.

Unlike other candidates who show off various software/ hardware they are mastering and assay they developed during their interviews, Monica only gave a high level theory only overview of science that you can find in literature during her interview. I was not convinced that she had any hands on lab experience, so I asked Monica whether she worked in the lab in the past. She gave a very unconfident answer of "yes" without any

explanations followings the "yes" answer because she knew this was the answer that I wanted to hear and the job description for the senior scientist role requires working in the lab. Nothing is following "Yes" answer because there were no details of working in the lab that she can elaborate on. Monica got hired based on her false answer to deceive us that she had hands-on mass spec experience. Sue Duan told me that Monica as expert will show me how to run mass spec although I remain skeptical. When Monica was onboard since 04/08/2024, she covered up mass spec data falsification when she was asked to review Liub Chii's mass spec data, Sue Duan helped Monica to take my credit to pretend to supervise me by imposing mandatory request that I need Monica's consent to do labwork. Monica's hire by fraud had a direct negative impact on me so I request **$2 million** for emotional distress and **$2 million** punitive damage for her hiring fraud.

13. Cover up of mass spec data falsification by Monica Zhang.

For the senior scientist role, the hands on experience utilizing high resolution mass spec is required, strong working knowledge on analytical software including but not limited to BiopharmaFinder, Xcalibur, Empower, Waters connect. When Monica was onboard on 04/08/2024, I noticed that Monica is not familiar with any of the software and hardware, and doesn't know how to develop any of the assays like small molecule residual LCMS, peptide map LCMS, and intact LCMS. Then how is Monica going to sustain her job? Monica was onboarded just in time, Vicky Wallace from HR pretend to investigate mass spec data falsification I reported, and Sue Duan gave Monica a very important task, namely asking Monica to cover up the mass spec data falsification. Monica did exactly what Sue told her to do. When Vicky reported back to me that the mass spec data was not falsified after an expert verified the data, I cannot believe Astellas even lied about black and white scientific data. People typically lie about things that are not black and white or without direct evidence, something like "he say, she say, I say, you say, they say, etc". Lying from HR and three scammers (Liub Chii Yang, Sue Duan, Monica

Zhang) has implications on my mental health including but not limited to erosion of trust, increased stress and anxiety, feeling of isolation, depression. I request **$2 million** emotional distress and **$2 million** punitive damage for lying about black and white scientific data.

14. Coercive consent mandated by Sue Duan to enable Monica to take my credit.

Since Monica's senior scientist position was wrongfully secured, Monica of course never developed intact LCMS, peptide map LCMS, and small molecule residual LCMS. These assays are being transferred to me as a senior research associate with the mandate from Sue Duan that I cannot start any experiments without Monica's consent. Yet Monica always come up with "forget", delay, and lying strategies to resist collaboration with me, so I was set to failure no matter what. By using this approach of coercive consent, if I successfully developed the mass spec assays, the credit and merit go to Monica because Monica pretend to "coach" me how to develop assays. That's Sue Duan's appreciation for Monica to cover up mass spec data falsification and to silence Monica since Monica can benefit from exploiting me, yet calling "collaboration". It takes two to tango. These two scammers tango together to make sure that I cannot do my work no matter what and the coercive consent caused lots of emotional distress to me. Therefore, I request **$2** million emotional distress and **$2 million** punitive damage.

15. Falsification of the Government Document of 5-year Corporate Integrity Agreement by Astellas.

I don't want Liub Chii to get away with mass spec data falsification, instrument sabotage, harassing me, so I reported these issues to Astellas Global Ethics & Compliance with Report key: 683791647001 via their website on 11/29/2023. The first time Astellas Global Ethics and Compliance followed up with me was on 04/22/2024 just to have a meeting, after almost 4 months since I submitted my report on 11/29/2023. Later on I learned that Astellas want to meet the deadline to complete the 5-year Corporate Integrity Agreement (CIA) with the final reporting period ended in late April 2024, and they submitted their final annual report to the Office of the Inspector General (OIG) in late

May. On 08/07/2024, Mike Petroutsas (Head, US commercial) and Allyson Behm (Head, E&C Global) sent email to Astellas in the United States that they are pleased to announce that Astellas has successfully completed the 5-year Corporate Integrity Agreement (CIA). Astellas falsified the final report presented to the CIA so everything looks beautiful on paper presented to the CIA. Astellas never did any investigation for my case, rather they redirected my complains to the same set of people, namely Sue Duan and Vicky Wallace, who tried to cover up mass spec data falsification. All my complains were dismissed as stated in the final report disregarding the facts. The 5-year corporate integrity agreement submitted by Astellas to Office of Inspector General (OIG) was falsified to claim that integrity was met 100%. Dishonesty is not limited to several employees like Liub Chii Yang and Sue Duan, dishonesty is company wide in Astellas. Employees are dishonest, HR is dishonest, Astellas Global Ethics and Compliance is dishonest. Astellas has policies regarding integrity, I remember there is a document regarding integrity that Astellas employees need to follow and I remember I get trained on it. Not only Astellas does not enforce their own policies or practice what they preach, bit even retaliate against those who report abuse. I request **$2 million** emotional distress and **$2 million** punitive damages for lying in government document.

16. Liub Chii always get away with instrument sabotage using her phony charm.

I singled out the communication error issue and reported to IT department with ticket # INC0736011 on 11/21/2023 since I need their technical support to prevent intentional sabotage of my instrument computers from Liub Chii when I was out of the lab. The IT department didn't act until on 04/17/2024 right before the submission of 5-year CIA to OIG to pretend that IT investigated the issue I reported. Liub Chii graduated from UC Berkeley with her Ph.D. I am constantly wondering how did she get her Ph.D. She should not pass in the first place although I don't have any intention to subpoena her advisor who handed over her undeserved Ph.D. to her. When I was thinking of Liub

Chii, I immediately heard the news of UC Berkeley professor installed secret camera, allegedly catching Ph.D. candidate sabotaging fellow student's work (https://www.tomshardware.com/laptops/uc-berkeley-ph-d-candidate-busted-by-hidden-camera-repeatedly-sabotaging-rival-students-computer-arrested-on-three-felony-counts-may-have-caused-usd46-000-in-damage). A UC Berkeley professor smelled a rat, over the years there had been $46,855 in damage from computers that failed, and nearly all of it seemed to affect one particular Ph.D. candidate at the college's Electrical Engineering and Computer Sciences department. The professor wondered if the student's luck was really that bad, or if something else was afoot. (Astellas analogy happened concurrently: I told Sue Duan that there is a rat in Astellas mass spec lab that sabotaged my instruments many times. Sue Duan asked me to shut up and stop the nonsense. It is my problem that I can never make mass spec assays to work, don't shift blame to Liub Chii for my own non-performance.) The professor installed a hidden camera, disguised in a department laptop, and pointed it at the student's computer. According to police, the sly move captured another Ph.D. candidate, 26-year-old Jiarui Zou, damaging his fellow student's computer with some implement that caused sparks to fly out of the laptop. Jiarui was arrested on three felony counts. (At Astellas, Sue Duan does not know how to install camera, and the entire IT department does not know how to install a camera, to intentionally let Liub chii get away with criminal charges.) The difference between Liub Chii and Jiarui is Jiarui is not a charming gentleman, however, Liub Chii is a very charming lady. Nobody can resist her phony charm. That's why Liub Chii can get away with her sabotage to my instruments because Sue Duan and the IT department are her guardian angels. If the criminal exhibit charm, the criminal can get away with it. I

request the court to follow up with Jiarui's case and leverage his conviction to Liub Chii Yang to show that conspiracy to cover up is not a viable approach to get away with criminal charges. I would like to prosecute. I request **$2 million** emotional distress and **$2 million** punitive damage for Liub Chii's sabotage and get away with sabotage.

Table 5: Comparison between two independent sabotages in two different places

| Institution | complainer | Sabotager | Sabotager's Manager | Approach to figure out the sabotage | Outcome |
|---|---|---|---|---|---|
| Astellas | Ye Shen | Liub Chii Yang | Sue Duan (ring leader) | Sue Duan only lie, lie, lie. Astellas IT department did not know how to install camera or has any other viable approach | Liub Chii get away with criminal charges using her phony charm |
| UC Berkeley | One particular Ph.D. candidate | Jiarui Zou | Robert Pilawa (professor) | Professor Pilawa install a camera to catch Jiarui sabotaging fellow students' computer | Jiarui was arrested on three felony counts |

17. Retaliation in violation of CFRA and FMLA by hiring my replacement while I was still on CFRA and FMLA.

I was taking FMLA from 06/03/2024 to 08/25/2024, one week prior to 06/03/2024 and two weeks after 08/25/2024 are my vacation added to FMLA. The total time off from 05/28/2024 to 09/06/2024 was pre-approved before I was gone. Sue Duan and Astellas violated FMLA and CFRA by hiring my replacement (planning to hire: 06/28/2024, actual posting of the job: no later than 08/19/2024) while I was still on CFRA and FMLA (06/03/2024 to 08/25/2024) to prepare to gut my job while ensuring a smooth transition for the new hire. That causes significant emotional distress that my job is not going to

last long. I request **$2 million** emotional distress and **$2 million** punitive damage for sneaky Sue Duan to keep thinking how to gut my job.

18. FMLA harassment by Sue Duan.

On the first day back (09/09/2024) from FMLA, I worried about that she would yell at me as she did in the past, but that did not happen and I naively think that she would not going to retaliate me. Pretty soon I found I was wrong. During weekly meetings among Sue Duan, Monica Zhang, and me on 10/01/2024, she suddenly yelled at me for not being able to explain the difference between phosphoric acid and formic acid, despite the fact that senior scientist Monica and she herself as associate director cannot explain either. She handed separation agreement and performance termination plan (PTP) to me on 10/17/2024 and asked me which one do I want. I told her that I did not want separation agreement, so she handed PTP to me. If I accept the separation agreement, I will be gone on 10/17/2024, just one month after I was back from FMLA. Since I don't want to voluntary quit, Sue Duan needs to go through the trap called PTP to terminate me as she already planned while I was still on FMLA. She has frequent writeups for me during our 1:1 weekly meeting with increased scrutiny, and treat me differently than other people. She said that I violated company policy like "One Astellas" which is above the federal FMLA labor law. She began to discipline me when she thinks it is time but she hide very well to deceive my coworkers that she was not discipline me. I request **$2 million** emotional distress and **$2 million** punitive damage for FMLA harassment and FMLA abuse.

19. Sue Duan established 5-step performance termination plan (PTP) for subordinates who she dislikes:

Step 1: Attendance issue: Yes (termination) or No (go to step 2)

Step 2: can you reproduce assays already developed:

Yes (go to step 3) or No (termination)

Step 3: can you develop assays: Yes (go to step 4) or No (termination)

Step 4: communication issues: Yes (termination) or No (termination, because Sue Duan say so)

Step 5: communication issues alone might be too weak for PTP, Sue will slander and libel that the subordinate threatening coworkers, no respect to Sue Duan, not following "One Astellas" to make the PTP package much stronger.

After I was back from FMLA, I was not greeted with accommodations if I need any. What greeted me is a trap called PTP which was custom made for me as Sue already made her mind to gut my job regardless of my performance. The mid year performance review was right before Thanksgiving around 11/28/2024 for all employees. She did not let me write self assessment of my review because I passed all objectives despite I took FMLA. She only fabricated (without my input) on my PTP she wrote herself and I know that I was not going to pass the PTP. Sue also want to gut my job early enough before the two holidays approaching (2 days Thanksgiving and 1.5 weeks of company year end shutdown from Chrismas to New Year). She also wrote that I was not eligible for bonus on my PTP. Of course I was terminated before the payout of bonus. This caused lots of emotional distress for me during the process. I request **$2 million** emotional distress and **$2 million** punitive damages.

20. Sue Duan constantly surveil me.

Whenever she was onsite, she came to the area where I sit around 4:40 pm to see whether I already left home to catch my attendance issues if any. By the way, Sue Duan's office was on the other side of the hallway, she has no business to walk to my area around 4:40pm. She pretended to talk to the two ladies sit in my area with her real intention is to surveil me. Since I never left early (excluding excused appointments), she never catch any attendance issues like she gut the young guy in February 2024 accusing him lying

about his attendance. That's why that young guy was terminated in step 1 on his PTP, I advanced to step 2 to reproduce the assays already developed by others. On 09/09/2024 from 11:00 to 11:30am, I had a zoom meeting with Sue Duan. She asked me to go to her office. At first I refused because I was so afraid that she would yell at me again as she did on 04/26/2024, Sue then asked me where I was so she can come to see me. I realized that she was taking attendance and I don't want to be like the young guy caught lying on the spot about my attendance, so I physically went to her office although there was no need to physically went there. Another example that Sue Duan was taking attendance is on 09/24/2024, the HPLC group meeting was scheduled from 9:30 to 10:00am. The attendance requirement is 10am – 3pm onsite. I know that Sue Duan will take attendance at 10 am. So I come on site before 9:30am, to have the 9:30 to 10:00 meeting onsite, if I have the meeting at home, I won't be able to arrive onsite at 10:00am. As I expected, immediately after the meeting end at 10:00 am, Sue Duan walked out of her office from one end of the hallway to my end of the hallway pretending to look for the two ladies to chat with them with her real intention is to take my attendance. I was sitting at my desk so I know that she was physically here to surveil me. After many times not able to catch my attendance issues, she let me advance to step 2 in aforementioned PTP plan. Not having attendance issues doesn't mean Sue Duan is going to let me stay in the company, she would play it by ear to invent causes to terminate me no matter what. She never invented any scientific breakthrough, she only invented cause to terminate people. She spent lots of time on office politics. I request **$2 million** emotional distress for her surveillance targeted toward me and **$2 million** punitive damages.

21. Retaliation of Job Reassignment After Return from CFRA and FMLA in violation of both CFRA and FMLA.

After I was back from FMLA, I should be returned to the same job as before taking FMLA. However, Sue Duan violated FMLA by reassigning me to a lower job of running HPLC after I returned from FMLA, not mass spec before I took FMLA. She asked me to run the enhancer HPLC method already developed by contract research organization of

Thermo Fisher Scientific. I quickly reproduced the results in a very short time without any issues. So I moved to step 3 on PTP: develop another enhancer method on my own. I request **$2 million** for my emotional distress and **$2 million** punitive damage for Sue Duan not let me return to the same job before FMLA.

22. I reported retaliation of Sue Duan to Astellas Global Ethics and Compliance.

After I successfully reproduced the HPLC results developed by Thermo Fisher Scientific, Sue cannot gut my job based on step 2, she has to let me advance to step 3, namely develop my own method. I started by changing the acid in mobile phase from phosphoric acid to formic acid. During the HPLC group meeting on 10/01/2024, after I gave my update regarding the progress, Sue asked me what's the difference between phosphoric acid and formic acid. I told her honestly that I don't know. She suddenly yelled at me for not knowing the difference between two acids. I was so scared so I called on Monica to help explaining the difference, Monica just said "google it". I don't want to make any excuse for not knowing the difference between two acids, but Monica as senior scientist doesn't know and asked me to google it, Sue as associate director doesn't know the difference between two acids, Sue doesn't know how to google it? I realize that Sue just played it by ear to retaliate me and her retaliation begins. I don't have any issues if Sue Duan stop yelling and ask me to find out the difference between two acids. She followed up with emails afterwards listing all my sins which serve as means to papering me leading to termination. Realizing that Sue Duan was putting retaliation into action, I immediately reported her retaliation as well as her other crimes like mass spec data falsification to Astellas Global Ethics and Compliance on 10/04/2024. The issues are not I don't know the difference between two acids. Even if I know the difference between two acids, she will keep asking me other questions until I don't know how to answer,

then she will grab any chance to yell at me to start retaliation. I request **$2 million** emotional distress and **$2 million** punitive damages.

23. Coercively demanding me to cover-up a pre-peak for the Enhancer HPLC assay in violation of CFRA, FMLA, and Public Policy.

Sue Duan assigned me to work on this task which does not generate any value since our CRO already developed it and I successfully reproduced it. Work generates no value does not need to be done, especially in pharmaceutical companies that the consumables are so expensive and only generate toxic chemical waste that needs to be appropriately disposed. In addition, I myself don't want to do it since it was not my job before taking FMLA. But Sue thinks gutting my job will generate value for Astellas. And she even implied me to falsify HPLC data by covering up a pre-peak. How come she does not ask CRO to cover up that pre-peak? Astellas pay them to develop assays. She did not write down covering up the pre-peak in my performance termination plan since this can only be done secretly. I refused to do that because I think losing my job is much better than falsifying scientific data. Her asking me to falsify data make me very troubled and the day-to-day activity to develop this no use assay and covering up the pre-peak put lots of stress on me. I request **$2 million** emotional distress and **$2 million** punitive damages so Sue won't ask other people to falsify scientific data.

24. Sue Duan partner with Astellas Global Ethics and Compliance to terminate me.

I successfully developed my own enhancer assay in 4 weeks. The moment I provided the method to her, she said I worked passively with her and she was going to end my employment. I understand that I did not pass step 4 on PTP: communication. She was using communication issue to gut my job regardless whether I have communication issue or not. After I reported her retaliation to Astellas Global Ethics and Compliance, David Colen from Ethics and Compliance reached out to me on 10/09/2024 just for the mass spec data falsification part and mentioned that he was not a scientist. I added all my

comments pointing at the data that are falsified in Liub Chii's AT132 LCMS slides which non-scientist should be able to understand. I offered to have a 1:1 meeting with David if he needs further explanation where I think the data is falsified and ask the reviewer (if David is going to seek another expert's advice rather than David himself as a non-scientist as a reviewer) to answer all my questions I raised pointing at the mass spec data falsification in Liub Chii's AT132 slides. David along with other people who are supposed to do the investigation never replied back to me, but instead redirected the case back to the person who harassed me and falsified data to terminate me on 11/15/2024. I get retaliated by reporting Sue Duan's wrongdoing to Astellas Global Ethics and Compliance on 10/04/2024. Unlike the first complaint that I filed against Liub Chii which takes 5 months for Astellas Global Ethics and Compliance to respond, this time Astellas Global Ethics and Compliance partnered with Sue Duan to put me on PTP on 10/17/2024, and terminated me on 11/15/2024 with operation warp speed, demonstrating "One Astellas". I request **$20 million** emotional distress and **$20 million** punitive damage for wrongful termination.

25. Defamation.

I had communication issues for 2.5 years since my employment at Astellas, how come Sue Duan just noticed that I had communication issues. I was taking care of a family member who was sick, I myself was not sick. I did not have stroke to result in communication issues after I was back from FMLA whereas I know how to talk before taking FMLA. Sue herself knows communication issues alone on my PTP is too weak, so she slander and libel that I was threatening Monica to make the PTP look much stronger for termination. Sue Duan imposed that I need Monica's consent to do labwork. Per Sue's persistent dictatorship, I asked Monica during the mass spec meeting on 04/22/2024 when to show me how to tune the mass spec for the BQT inhibitor method,

Monica told me that she was going to show me tomorrow. I keep asking her: what time? Monica reluctantly told me that after 10am. The date and time were set by Monica, and Sue was in the meeting as well, so Sue was well informed and there was no misunderstanding. When I was looking for Monica with Taka during the time we agreed upon, Monica said she was having a new hire orientation meeting. Sue lied in my PTP that I harassed Monica by demanding Monica to show me how to run LCMS for BQT inhibitor when Monica had new orientation meeting. Firstable, I was doing what Sue told me to do by asking Monica when she can show me and Taka (since Taka requested to be present during training) how to run mass spec to demonstration collaboration. Monica herself intentionally mentioned the date of 04/23/2024 after 10 am when she had new hire orientation (which I did not know) so Monica can get away without showing me and Taka how to run BQT inhibitor LCMS. I used my action to fulfill the request for collaboration with Monica, yet Sue maliciously point a finger at me in PTP that I was harassing Monica. If I don't collaborate with Monica, Sue will point a finger at me using "One Astellas" for not collaborating with coworker. If I collaborate with Monica who secretly resist to collaborate with me, Sue will punish me by lying that I harassed Monica. I did not have any intention to ask Monica anything (let alone harassing her to show me how to run mass spec) because Monica doesn't know how to run mass spec. People in mass spec lab all know that! I request **$2 million** emotional stress and **$2 million** punitive damages for slander and libel.

26. Violation of privacy.

My privacy was constantly violated. Liub Chii asked me my marital status and how many kids do I have during my interview process in December 2021. These are illegal questions. On 06/13/2022, she kept asking me what dermatology conditions I had when she heard that I need to pick up my mediation next day. Liub Chii demanded to see my calendar (she was serious, not joking) and I told her clear and loud: NO! Sue Duan violated my privacy by inviting Monica Zhang to attend my termination meeting on 10/17/2024 from 10:00 am to 10:30am with Melissa Vogel from HR. Since I need to

keep my job, I was forced to trade privacy (never being respected) with security of job in the past. Now I know I was going to lose my job during my termination meeting, there is no need for me to tolerate violation of my privacy. I request **$2 million** emotional stress and **$2 million** punitive damages for violation of my privacy on an ongoing basis.

27. Misconduct of the opposing counsel.

I had the summons and complaints delivered to the agent for Astellas on 06/10/2025. The agent was playing smart not to accept the papers. As a result of that, I had the process server delivered the same set of documents to Morten Sogaard CEO of Astellas in 480 Forbes blvd, South San Francisco, CA as substitute service. On 06/25/2025, I sent an email to the CEO asking him who I should schedule for "meet-and-confer" because I understand that I was not going to meet and confer with the CEO. On 07/07/2025, Mr Mcinerney phoned me introducing himself as the counsel for the defendant and asking me to change the defendant name from Astellas, Inc to Astellas Gene Therapies (AGT), Inc. During the 07/29/2025 CMC meeting, he told the court that Astellas Inc does not exist and asked me to change the entity name to AGT, Inc. He followed up with his email to ask me to change the entity name after the CMC meeting. I was not going to blindly trust him and follow exactly what he told me to do. Later on I wasted so much time searching for the definitions of the entity names and the correct entity names for Astellas. Eventually I prepared discovery questions including form interrogatories of employment law, special interrogatories, request for production, request for admission to ask Mr Mcinerney to provide answers regarding the correct entity names in response to his continuous request for me to change the entity name. I wasted so much time to prepare other discovery questions relating all other aspects of the employment regarding my termination so all discovery questions are complete and served to Mr Mcinerney all at once for him to answer the correct entity names under oath. I never received his answers so I phoned him and emailed him for meet-and-confer for me to file motion-to-compel. He did phone me back but he turned the meet-and-confer to trick-and-treat. He sabotaged my call for 28 min out of the 29 min phone call. Like in all his past emails and

phone calls, he has only one topic which is demanding me to change the entity name from Astellas Inc to AGT on the complaint and email him the amended complaint and summons. I as plaintiff pro per without any knowledge of the law understands that the complaint must be served in person, not through emails which does not constitute proper process service. If I did exactly what he told me to do by re-filing the complaint and emailing the refiled amended complaint to him, he will file a motion to dismiss my case due to improper service through emails and later on file a "motion to vacate judgment" due to improper service by emailing him, and I will likely lose the case and lose statute of limitations. It is not that I made mistakes in process service in the first place, but he coercively trick me to make mistakes for the process service. Unlike filing Answer which is under oath, I cannot hold him accountable because he tricked me through offline emails and phone calls which are not under oath. His trick and lying in these offline emails should be held the same standard as lying under oath, otherwise all other lawyers can start to lie offline but won't otherwise lie in formal filing under oath. His trick is to ensure that the valid process service already made to Astellas Inc does not count, rather to trick me to unnecessarily amend the complaint, re-file to get a new filing date to lose statute of limit, and email him the amended complaint to make the improper process service to AGT Inc, so he can dismiss my case and vacate the judgment on the grounds of improper process service to him. Even if the entity name is a misnomer, all I need to do is to file CV-1: amendment to complaint, not refiling the same complaint that Mr Mcinerney already had it because he himself picked it up from the CEO. I did not serve him the complaint and summons in the first place. The defendant is the right defendant. They are not the wrong defendant that the complaint needs to be amended, refiled and properly served again. Mr Mcinerney should know the answer and provide answers and documents requested in discovery phase. Yet Mr Mcinerney lied that these do not constitute as proper service. As long as he lies, the proper service becomes improper service so he can illegally dismiss my case, not answering discovery questions without being sanctioned, or do other damages. After he failed to trick me after repeated

attempts, he just lied in the 10/21/2025 phone call to make sure that I fall into his tricks followed by his sabotage email sent on 10/22/2025 summarizing his lies. And he sabotaged other legal process along the way such as not consenting to meet and confer for both the motion to compel and meet-and-confer for the upcoming CMC scheduled on 12/10/2025, but he denied that he refused to consent to meet-and-confer. Proper service and the entire legal process is to ensure fairness and due process, Mr Mcinerney take it to the next level by sabotaging them along the way. And I wasted lots of time documenting his sabotage attached to the CM110 I filed on 11/13/2025. At the time of this writing, Astellas never filed any Answer or other correspondence. They are likely going to lose by default if I don't make any mistakes in the future. The only way Mr Mcinerney can think of overturning my case is through my mistake on procedure grounds such as improper process service. But unfortunately for him and fortunately for me, I did not make any procedural mistakes so far, so he tricked me to change entity name and email the same complaint back to him to invalidate my original valid process service. Mr Mcinerney is about to retire based on his age. If I can successfully disbar him from the American Bar Association for his unethical conduct, Mr Mcinerney doesn't seem to care since he will retire anyway. Obviously Mr Mcinerney is not willing to sacrifice his reputation to get disbarred for nothing. Astellas will compensate him with millions of dollars (separate from his regular attorney fee) for his sacrifice to avoid the negative consequence for Astellas from my lawsuit. For Astellas, paying Mr Mcinerney to sabotage me is much better than paying me judgement. If I cannot successfully disbar him, Mr Mcinerney especially has nothing to worry about. So Mr Mcinerney is going to give a shot to lie to me to make mistakes on the procedural grounds taking advantage of me without a lawyer although he always pretend to act at my best interest. I request **$2 million** emotional damage and **$2 million** punitive damages. Please note that these damages are for Mr Mcinerney's sabotage up to this date. If I cannot successfully disbar him, he will continue to sabotage in the court and I won't be able to figure out his sabotage on the fly. It takes me 4 months to figure out he was sabotaging the process

service and the potential misnomer. But these are not the only two topics he will sabotage. He will continue his unethical and illegal sabotage on comprehensive topics arising in the court and in the jury trial, and therefore the emotional distress and punitive damages are going to increase in the future.

28. False and deceptive marketing by the company.

For those who don't have integrity, integrity does not worth anything. Astellas keeps preach they have integrity, because they know that their stakeholders, FDA, and patients and doctors like to hear and believe Astellas are honest. Unfortunately Astellas do not act like that. They preach integrity to trick patients to rip them off. Below screen shot preach "Astellas Way: take responsibility, act ethically, lead by example, speak up, training, policies and procedures." These are lies. Change "Astellas way" to "Astellas Lies". "Take responsibility" is only for people at the bottom, people at the top like Sue Duan has no responsibility and subordinate under her need to share her responsibility but let her take the credit. "Act ethically" is only on paper and even lying is acceptable on documents presented to the government like corporate integrity agreement. "Lead by example" is nonsense. Sue Duan lead by example for her chronic absence, but please don't follow her. She has big shots to back her up. "Speak up" is incomplete, the complete is "speak up and get retaliated, but the company does not acknowledge retaliation, rather point a finger at the person who speak up has performance issues". "policies and procedures" should be changed to "lies". "Training" do exist, but the training is only prepared to show the agency for inspection purpose only. Please do not follow the training to report anything to Astellas Global Ethics and Compliance, otherwise you will be like me, end up with wrongful termination for cause to end your job as well as your entire career. I request **$2 million** for emotional distress and **$2 million** for punitive damages for false and deceptive Astellas logo.

Screenshot 4: Astellas Way is all lies




- There are 6 CIA- required training assignments in LMS
- Plus, role specific assignments for functions directly impacted by CIA
- CIA calendar is available on the E&C InSite page
- List of all CIA-related policies and procedures in Policies and Procedures Center
- CIA Operations page on E&C InSite

astellas

29. False and deceptive marketing of Ethics and Compliance and Patients.

Astellas keep preaching "This journey is about fostering a culture where integrity and innovation thrive, guided by urgency for patients. This lady is passionate about building empowered teams to drive our mission forward and create Value for patients." Not all patients are created equal. Only those patients who are rich and gullible to trust Astellas' drugs can save their lives but will be ripped off instead are the ones Astellas was talking about. My mother is a patient who I need to care for her for taking FMLA, but Astellas never value my mother as a patient. Of course my mother is not Astellas' patient who can be ripped off by Astellas. Astellas not only gut my job but also lie in my employment records that I have performance issues and I was threatening Monica to make sure that I won't be able to find a job elsewhere in the future. Astellas is driving my mother to an early grave. I request **$2 million** emotional damages and **$2 million** punitive damages.

Screenshot 5: Keep preaching, keep lying without consequences



Astellas Pharma
570,133 followers
6d
+ Follow

We are excited to announce the establishment of the General Counsel and Chief Ethics & Compliance Officer (GC & CECO) position, effective April 1, 2025.

Tatjana Dragovic, who has been with Astellas since 2007, will step into this pivotal role, consolidating our legal, intellectual property, quality assurance, and ethics & compliance functions.

Tatjana's extensive experience in leadership roles within our organization, including her previous position as Head of Ethics & Compliance, positions her perfectly to drive our commitment to integrity and empowerment.

We look forward to Tatjana's leadership in supporting our Corporate Strategic Plan 2021 goals.

#leadership #integrity #empowerment

"This journey is about fostering a culture where integrity and innovation thrive, guided by urgency for patients. I'm passionate about building empowered teams to drive our mission forward and create VALUE for patients."

Tatjana Dragovic
General Counsel and
Chief Ethics & Compliance Officer
(GC & CECO)

astellas

Wherefore I am respectfully requesting that the court to award me $593,072,266 to $594,072,266 for economic damages, non-economic damages, and punitive damages with the summary of breakdown in below tables.

| **Economic Damages** | **Amount** |
|---|---|
| Lost pay | $5,968,854 |
| Health insurance premiums | $673,200 |
| Medical expenses | pending |
| Long term incentive | $561,000 |
| Voluntary legal services | pending |
| Life insurance, short term ,long term disability insurance | pending |
| Waiting time penalty for 3 day accrued vacation after return from FMLA | $17,139.4 |

| | |
|---|---|
| Waiting time penalty for three days delay to receive my final paycheck | $1558.128. |
| 401k loss | $420470374 |
| Social security loss | $377,665 |
| Court and filing fees | $2475.33 plus more pending |
| Lawyer fee | $1-2 million |
| **Totals** | **$429,072,266 to $430,072,266 Plus more pending** |

Noneconomic damages and punitive damages

| Fraud by categories | Emotional distress | Punitive damages |
|---|---|---|
| 1. Hiring fraud of Liub Chii. | $ 2 million | $ 2 million |
| 2. Hiring fraud of Ye Shen | $2 million | $2 million |
| 3. Credit theft Liub Chii Yang | $2 million | $2 million |
| 4. First promotion fraud of Sue Duan by taking my credit. | $2 million | $2 million |
| 5. Second promotion fraud of Sue Duan by replacing her former manager. | $2 million | $2 million |
| 6. Liub Chii harassed me | $4 million | $4 million |
| 7. Liub Chii sabotaged my instruments hardware on a regular basis | $2 million | $2 million |
| 8. Liub chii attacked the software controlling my instrument | $2 million | $2 million |
| 9. The mass spec lab located in 270 East Grand violated OSHA regulations with aisle not maintained at least 36" apart. | $2 million | $2 million |
| 10. When Liub Chii sit, she surveil me. When Liub Chii walk, she stalk me. | $4 million | $4 million |
| 11. Mass spec data falsification by Liub Chii Yang with absolute support from Sue Duan. | $4 million | $4 million |
| 12. Monica acquired her job as senior scientist by fraud. | $2 million | $2 million |
| 13. Cover up of mass spec data falsification by Monica Zhang. | $2 million | $ 2 million |
| 14. Coercive consent mandated by Sue Duan to enable Monica to take my credit. | $2 million | $2 million |

| | | |
|---|---|---|
| 15. Falsification of the Government Document of 5-year Corporate Integrity Agreement by Astellas. | $2 million | $2 million |
| 16. Liub Chii always get away with instrument sabotage using her phony charm. | $2 million | $2 million |
| 17. Retaliation in violation of CFRA and FMLA by hiring my replacement while I was still on CFRA and FMLA | $2 million | $2 million |
| 18. FMLA harassment by Sue Duan | $2 million | $2 million |
| 19. Sue Duan established 5 step PTP for me | $2 million | $2 million |
| 20. Sue Duan constantly surveil me | $2 million | $2 million |
| 21. Retaliation of Job Reassignment After Return from CFRA and FMLA in violation of both CFRA and FMLA | $2 million | $2 million |
| 22. I reported retaliation of Sue Duan to Astellas Global Ethics and Compliance | $2 million | $2 million |
| 23. Coercively demanding me to cover-up a pre-peak for the Enhancer HPLC assay in violation of CFRA, FMLA, and Public Policy | $ 2 million | $2 million |
| 24. Sue Duan partner with Astellas Global Ethics and Compliance to terminate me. | $20 million | $20 million |
| 25. Defamation | $2 million | $2 million |
| 26. Violation of privacy | $2 million | $2 million |
| 27. Misconduct of the opposing counsel | $2 million | $2 million |
| 28. False and deceptive marketing by the company. | $2 million | $2 million |
| 29. False and deceptive marketing of Ethics and Compliance and Patients. | $2 million | $2 million |
| **Total:** | **$82 million** | **$82 million** |

In addition, I am respectfully to request the court

1. To shut down Astellas Gene Therapies located in 480 Forbes Blvd, South San Francisco, CA 94080 for violation of human rights, mass spec scientific data falsification, cover up by HR and Astellas Global Ethics and Compliance, terminate whistleblower.

2. To shut down the mass spec lab in 480 Forbes Blvd, South San Francisco, CA 94080, if the court cannot shut down the whole company.
3. Disband Astellas Global Ethics and Compliance Department.
4. a. Sue Duan should be fired immediately (not layoff, not termination due to performance issues). In addition, she should pay restitution (clawback) of all her salary, bonus, retirement benefits and other benefits starting from 02/24/2023 after replacing Bill Werner to end of her employment. She scammed the position of Associate Director that she does not qualify for unjust enrichment and she kept violating human rights.

   b. Sue Duan should be sentenced to 20 years in prison for falsifying mass spec scientific data along with Liub Chii, 20 years in prison for conspiracy with Monica Zhang and Astellas Global Ethics and Compliance to cover up mass spec data falsification, for a total of 40 years in prison.
5. a. Monica Zhang should be fired immediately (not layoff, not termination due to performance issues). In addition, she should pay restitution (clawback) of all her salary, bonus, retirement benefits and other benefits starting from 04/08/2024 (her hire date) to end of her employment. She scammed this senior scientist position for unjust enrichment but never made any assays to work and pretend to coach subordinates.

   b. Monica should be sentenced to 20 years in prison to cover up mass spec data falsification upon Sue Duan's request.
6. a. Liub Chii Yang should pay restitution (clawback) of all her salary, bonus, retirement benefits, separation agreement benefit, and other benefits during her entire presence around 2.5 years in Astellas.

   b. I request the court to follow up with EDD to see whether Liub Chii get unemployment benefits. The unemployment benefits, if she get any, should be stripped off because these are unjust enrichment if she get any.

   c. Liub Chii should be sentenced to 20 years in prison for falsifying mass spec scientific data.

d. Liub Chii should be sentenced to another 20 years for sabotaging my instruments or the court can leverage Jiarui Zou for his 3 felony counts and apply the same to Liub Chii.

7. a. David Colen must be fired, not laid off or termination due to performance issues.
   b. David Colen should be sentenced to 20 years in prison for covering up mass spec data falsification. Since David Colen is based in Illinois, this court may not have venue and jurisdiction over David. I list him here anyway to be complete.
8. I request this court to send formal correspondence to Department of Justice to revoke 5 year Corporate Integrity Agreement wrongfully secured by Astellas.
9. I request this court to disbar Mr Mcinerney and sentence him to 20 years in prison.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 03/25/2026

Ye Shen
Ye Shen
Plaintiff, In Pro Per

Ye Shen
112 cityview drive, Daly City, CA 94014
Email address: yeshen2000@yahoo.com
Telephone No.: 415-867-1126

Plaintiff, In Pro Per

FILED
SAN MATEO COUNTY
MAR 25 2026
Clerk of the Superior Court
By ________ DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN MATEO

| | |
|---|---|
| Ye Shen<br>Plaintiff,<br><br>vs.<br><br>ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE<br>Defendant | Case No.: 25CIV02939<br><br>DECLARATION re: VENUE<br>[Civil Code § 2984.4]<br><br>☐ Limited Civil Matter: Amount Demanded Less than $35,000<br>☒ Unlimited Civil Matter: Amount Demanded More than $35,000 |

I, Ye Shen, hereby declare that:

1. The contract herein sued upon is hereinafter called and referred to as "the contract."
2. This action is filed in the judicial district in which:
   - ☐ The contract was in fact signed.
   - ☒ One of defendant(s) currently reside(s) and/or conducts business in this County.
3. The address that qualifies this case for the above-referenced jurisdiction is:

480 Forbes Blvd, South San Francisco, CA 94080

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 03/25/2026

Ye Shen
(Signature)
Ye Shen
Plaintiff Pro Per

FILED
SAN MATEO COUNTY
MAR 25 2026
Clerk of the Superior Court
By [signature] DEPUTY CLERK

Ye Shen
112 cityview drive
Daly City, CA 94014
Telephone No.: 415-867-1126

Ye Shen, IN PRO PER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Ye Shen,<br><br>Plaintiff,<br><br>vs.<br><br>ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE<br>Defendant | Case No.: 25CIV02939<br><br>PLAINTIFF'S NOTICE OF PRESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES |

NOTICE TO: DEFENANTS Astellas, Inc. and to their attorney of record:

Plaintiff Ye Shen reserves the right to seek $ 82 million in punitive damages against defendants, jointly and severally, when she seeks a judgment in the within-entitled action.

Dated: 03/25/2026

[signature]
Ye Shen
Plaintiff, in Pro Per

**- DO NOT FILE WITH THE COURT -**

**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

**CIV-050**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* TELEPHONE NO.: 415-867-1126
Ye Shen
112 cityview drive, Daly City, CA 94014

Email address: yeshen2000@yahoo.com

ATTORNEY FOR *(name):*

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California: County of San Mateo

PLAINTIFF: Ye Shen
DEFENDANT: ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

CASE NUMBER: 25CIV02939

To *(name of one defendant only):* ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE
Plaintiff *(name of one plaintiff only):* Ye Shen
seeks damages in the above-entitled action, as follows:

| | AMOUNT |
|---|---|
| 1. **General damages** | |
| a. ☐ Pain, suffering, and inconvenience | $ |
| b. ☒ Emotional distress. | $ 82,000,000 |
| c. ☐ Loss of consortium | $ |
| d. ☐ Loss of society and companionship *(wrongful death actions only)* | $ |
| e. ☐ Other *(specify)* | $ |
| f. ☐ Other *(specify)* | $ |
| g. ☐ Continued on Attachment 1.g. | |
| 2. **Special damages** | |
| a. ☐ Medical expenses *(to date)* | $ |
| b. ☐ Future medical expenses *(present value)* | $ |
| c. ☒ Loss of earnings *(to date)* | $ 446818.35 |
| d. ☒ Loss of future earning capacity *(present value)* | $ 5522035.65 |
| e. ☐ Property damage | $ |
| f. ☐ Funeral expenses *(wrongful death actions only)* | $ |
| g. ☐ Future contributions *(present value) (wrongful death actions only)* | $ |
| h. ☐ Value of personal service, advice, or training *(wrongful death actions only)* | $ |
| i. ☐ Other *(specify)* | $ |
| j. ☐ Other *(specify)* | $ |
| k. ☒ Continued on Attachment 2.k. | |

3. ☒ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ 82,000,000 when pursuing a judgment in the suit filed against you.

Date: 03/25/2026

Ye Shen
(TYPE OR PRINT NAME)

▶ ______________________
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

**CIV-050**

| PLAINTIFF:<br>DEFENDANT: | CASE NUMBER: |
|---|---|

## PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. [x] Statement of Damages [ ] Other *(specify):*
   b. on *(name):* Mr Thomas Mcinerney
   c. by serving [x] defendant [ ] other *(name and title or relationship to person served):*
   d. [x] by delivery [ ] at home [x] at business
      (1) date:
      (2) time:
      (3) address: One Embarcadero Center, Suite 900, San Francisco, CA 94111
   e. [ ] by mailing
      (1) date:
      (2) place:
2. Manner of service *(check proper box):*
   a. [x] **Personal service.** By personally delivering copies. (Code Civ. Proc., § 415.10.)
   b. [ ] **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (Code Civ. Proc., § 415.20(a).)
   c. [ ] **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (Code Civ. Proc., § 415.20(b).) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. [ ] **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (Code Civ. Proc., § 415.30.) **(Attach completed acknowledgment of receipt.)**
   e. [ ] **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (Code Civ. Proc., § 415.40.) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. [ ] Other *(specify code section):*
      [ ] additional page is attached.
3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $
5. Person serving:
   a. [ ] California sheriff, marshal, or constable
   b. [ ] Registered California process server
   c. [ ] Employee or independent contractor of a registered California process server
   d. [ ] Not a registered California process server
   e. [ ] Exempt from registration under Business and Professions Code section 22350(b)
   f. Name, address, and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ ______________________________
(SIGNATURE)

***(For California sheriff, marshal, or constable use only)***
I certify that the foregoing is true and correct.

Date:

▶ ______________________________
(SIGNATURE)



**For your protection and privacy, please press the Clear button after you have printed the form.**

Print Save Clear

| SHORT TITLE: Attachment for CIV-050: Statement of Damages: Shen vs Astellas | CASE NUMBER: 25CIV02939 |
|---|---|

**ATTACHMENT** *(Number)*: 1

*(This Attachment may be used with any Judicial Council form.)*

This is attachment 2.k. for CIV-050: Statement of Damages:

2.k. Special Damages: Amount

Health insurance premiums: $673,200
Medical expenses: pending
Long term incentive: $561,000
Voluntary legal services: pending
Life insurance, short term, long term disability insurance: pending
Waiting time penalty for 3 day accrued vacation after return from FMLA: $17,139.4
Waiting time penalty for three days delay to receive my final paycheck: $1558.128.
401k loss: $420,470,374
Social security loss: $377,665
Court and filing fees: $2475.33 plus more pending
Lawyer fee: $1-2 million
Totals: $429,072,266 to $430,072,266 plus more pending

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

CM-110

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER
NAME: Ye Shen
FIRM NAME:
STREET ADDRESS: 112 cityview drive
CITY: Daly City STATE: CA ZIP CODE: 94014
TELEPHONE NO.: 415-867-1126 FAX NO.:
EMAIL ADDRESS: yeshen2000@yahoo.com
ATTORNEY FOR (name):

FOR COURT USE ONLY

RECEIVED
APR 27 2026
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: The Superior Court of California, County of San Mateo

PLAINTIFF/PETITIONER: Ye Shen
DEFENDANT/RESPONDENT: ASTELLAS, INC.; DOES 1 THROUGH 20, INCLUSIVE

# CASE MANAGEMENT STATEMENT

CASE NUMBER: 25CIV02939

*(Check one):* [x] UNLIMITED CASE (Amount demanded exceeds $35,000) [ ] LIMITED CASE (Amount demanded is $35,000 or less)

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:
Date: 05/28/2026 Time: 9:00 am Dept.: 30 Div.: Room: H
Address of court *(if different from the address above)*:
800 North Humboldt St., San Mateo, CA 94401

[x] **Notice of Intent to Appear by Telephone, by** *(name)*: Ye Shen

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. [x] This statement is submitted by party *(name)*: Ye Shen, plaintiff
   b. [ ] This statement is submitted **jointly** by parties *(names)*:
2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*: 04/29/2025
   b. [ ] The cross-complaint, if any, was filed on *(date)*:
3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [x] All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not)*:
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) [ ] have had a default entered against them *(specify names)*:
      I will enter a default against them on or after 05/05/2026.
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:
4. **Description of case**
   a. Type of case in [x] complaint [ ] cross-complaint *(Describe, including causes of action)*:
   I was being wrongfully terminated, retaliated for taking FMLA to care for a sick family member, and retaliated as whistleblower to report the company's wrongdoing for falsifying scientific data and cover up the scientific data falsification.

CM-110

| PLAINTIFF/PETITIONER | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT | |

4 b Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief)*

Shortly after I was back from FMLA, the ring leader in Astellas lied that I had performance issues and lied that I was threatening my coworker to illegally terminate me for cause and to make sure that I won't be able to find jobs in the future due to her lies in my employment records I grant her malicious wishes and seek the damages and equitable relief attached

[x] *(If more space is needed, check this box and attach a page designated as Attachment 4b )*

5 **Jury or nonjury trial**

The party or parties request [x] a jury trial [ ] a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial)*:

Ye Shen as plaintiff pro per request a jury trial

6 **Trial date**

a. [ ] The trial has been set for *(date)*:

b [x] No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain)*:

c Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability)*:

7 **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. [x] days *(specify number)*: 15 days

b [ ] hours (short causes) *(specify)*:

8 **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial [ ] by the attorney or party listed in the caption [ ] by the following:

a Attorney:

b. Firm:

c. Address:

d. Telephone number:

e. Email address:

f. Fax number:

g. Party represented:

[ ] Additional representation is described in Attachment 8.

9. **Preference**

[ ] This case is entitled to preference *(specify code section)*:

10. **Alternative dispute resolution (ADR)**

a **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case

(1) For parties represented by counsel: Counsel [ ] has [ ] has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party [ ] has [x] has not reviewed the ADR information package identified in rule 3.221.

b **Referral to judicial arbitration or civil action mediation** (if available).

(1) [ ] This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) [ ] Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) [ ] This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption)*:

CM-110

| PLAINTIFF/PETITIONER<br>DEFENDANT/RESPONDENT | CASE NUMBER |
|---|---|

10 c. In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (*date*):<br>☐ Agreed to complete mediation by (*date*):<br>☐ Mediation completed on (*date*): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (*date*):<br>☐ Agreed to complete settlement conference by (*date*):<br>☐ Settlement conference completed on (*date*): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (*date*):<br>☐ Agreed to complete neutral evaluation by (*date*):<br>☐ Neutral evaluation completed on (*date*): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (*date*):<br>☐ Agreed to complete judicial arbitration by (*date*):<br>☐ Judicial arbitration completed on (*date*): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (*date*):<br>☐ Agreed to complete private arbitration by (*date*):<br>☐ Private arbitration completed on (*date*): |
| (6) Other (*specify*): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (*date*):<br>☐ Agreed to complete ADR session by (*date*):<br>☐ ADR completed on (*date*): |

CM-110

| PLAINTIFF/PETITIONER<br>DEFENDANT/RESPONDENT | CASE NUMBER |
|---|---|

11 **Insurance**

a [ ] Insurance carrier, if any, for party filing this statement *(name)*:

b Reservation of rights: [ ] Yes [ ] No

c [ ] Coverage issues will significantly affect resolution of this case *(explain)*:

12 **Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

[ ] Bankruptcy [ ] Other *(specify)*:

Status:

13 **Related cases, consolidation, and coordination**

a. [ ] There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

[ ] Additional cases are described in Attachment 13a.

b. [ ] A motion to [ ] consolidate [ ] coordinate will be filed by *(name party)*:

14 **Bifurcation**

[ ] The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

15 **Other motions**

[X] The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

Plaintiff pro per is going to file Motion to Compel Discovery Responses (see number 16b and 16c for issues). Plaintiff pro per is also going to file Motion for Default Judgment on or after 05/05/2026.

16 **Discovery**

a. [ ] The party or parties have completed all discovery.

b. [X] The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Ye Shen, Plaintiff Pro Per | Motion to Compel Discovery Response (Interrogatories) | Never |
| Ye Shen, Plaintiff Pro Per | Motion to Compel Discovery (Request for Production) | Never |
| Ye Shen, Plaintiff Pro Per | Motion to Deem Facts Admitted | At the hearing TBD |

c [X] The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

I sent discovery requests including interrogatories, request for production, and request for admission on 09/10/2025 to the opposing cousel. Mr Mcinerney does not consent to my request for meet-and-confer and does not consent for informal discovery conference. Therefore, I will never get discovery responses for interrogatories and production. I hope to file a motion without meet-and-confer (I will attemp but won't be successful) to deem facts admitted at the motion hearing.

CM-110

| PLAINTIFF/PETITIONER | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT | |

17 Economic litigation

a [ ] This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b [ ] This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

18 Other issues

[x] The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

The issue is Mr Mcinerney. He lied to the judge in 07/29/2025 CMC meeting and always lied to me that I had the wrong entity name. The issue is not the entity name. His intention is to reject my valid process service by lying that my process service which are not valid because I had the wrong or non-existent entity name to shift blames to me and illegally impact the outcome of my case. Yet he did not file an Answer to state his lies so he can get away with lying under perjury.

19 Meet and confer

a [x] The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

The party did not meet and confer. Mr Mcinerney had no response for my meet-and-confer request. This is understandable because Astellas cannot open a can of worms for my requests including but not limited to scientific data that were falsified, investigations reports that either don't exist or being fabricated, employment records that will expose discrimination, etc.

b. [x] After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

The opposing counsel Mr Mcinerney has no response after I sent him the request for meet-and-confer. In my mind, whether he participates in meet-and-confer is not important anymore. In addition, he sabotaged all aspects of this lawsuit by ulterior purpose. I am going to file entry of default and default judgment on or after 05/05/2026. I had CIV050 statement of damages personally served to him on 04/03/2026. I have to wait 30 days to file entry of default and default judgment no earlier than 05/05/2026.

20 Total number of pages attached *(if any)*: 1

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: 04/27/2026

Ye Shen
(TYPE OR PRINT NAME)

▶ Ye Shen
(SIGNATURE OF PARTY OR ATTORNEY)

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF PARTY OR ATTORNEY)

[ ] Additional signatures are attached



privacy, please press the Clear This Form button after y Print this form Save this form Clear this form

| SHORT TITLE: Ye Shen vs Astellas, Inc | CASE NUMBER: 25CIV02939 |
|---|---|

**ATTACHMENT** *(Number):* 4b

*(This Attachment may be used with any Judicial Council form.)*

This attachment is 4b on CM110.

Damages
1. Loss of pay: $5,426,231
2. Loss of health insurance premiums: $673,200
3. vision and dental expenses: pending
4. Loss of long term incentive: $510,000
5. voluntary legal service: pending
6. lost life insurance, short term, long term disability insurance: pending
7. waiting time penalty for 3 day vacation never paid: $15,581.28
8. waiting time penalty for final day paycheck late for 3 days: $1,416.48
9. 401k loss: $420,470,374
10. SSI loss: $ 343,332
11. lawyer fee: 1 million
12. emotional distress and punitive damages: $164 million
13. prejudgment interest: $84,381
14. court fees: $2,692.58 to date, more cost pending

Equitable Relief sought
1. To shut down Astellas located in 480 Forbes blvd in South San Francisco
2. To shut down mass spec lab in Astellas located in 480 Forbes blvd
3. Disband Astellas Global Ethics and Compliance Department in Astellas
4. Sue Duan should be fired immediately. In addition, she should pay restituion (clawback) all her salary, bonus, retirement benefits starting from 02/14/2023 to her termination. Sue Duan should be sentenced to 40 years in prision for falsifying mass pec scientific data (20 years) and cover up mass spec data falsification (20 years).
5. Monica Zhang should be fired immediately. In addition, she should pay restitution (clawback) all her salary, bonus, retirement benefits starting from 04/08/2024 to her termination. Monica should be sentenced to 40 years in prison: 20 years for secure her job by fraud and 20 years to cover up mass spec data falsification.
6. Liub Chii Yang should pay restitution (clawback) of all her salary, bonus, retirement benefits, separation agreement benefit, and EDD unemployment insurance (if applicable). Liub Chii should be sentenced to 40 years in prison: 20 years for falsifying mass spec scientific data, 20 years for ongoing sabotaging my instruments.
7. David Colen must be fired. David is based in Illinois, this court may not have venue and jurisdiction over David.
8. I request this court to send formal coorespondance to Department of Justice to revoke 5 year corporate integrity agreement wrongfully secured by Astellas.
9. To disbar Mr Mcinerney and sentence him 20 years in prison for his misconduct of lying to the judge on 07/29/2025 CMC meeting and lying to me all the time.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*



Form Approved for Optional Use

**ATTACHMENT**

www.courtinfo.ca.gov

# EXHIBIT B

THOMAS M. MCINERNEY, CA Bar No. 162055
thomas.mcinerney@ogletree.com
KHADIJAH O. KENYATTE, CA Bar No. 337236
khadijah.kenyatte@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

Attorneys for Defendant
ASTELLAS GENE THERAPIES, INC.
(erroneously sued herein as ASTELLAS, INC.)

Electronically
FILED
by Superior Court of California, County of San Mateo
ON 5/4/2026
By /s/ Kimberly Claussen
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN MATEO**

| | |
|---|---|
| YE SHEN,<br><br>Plaintiff,<br><br>vs.<br><br>ASTELLAS, INC., and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 25CIV02939<br><br>**DEFENDANT ASTELLAS GENE THERAPIES, INC.'S ANSWER TO UNVERIFIED COMPLAINT**<br><br>Action Filed: April 29, 2025<br>Trial Date: None Set |

Defendant ASTELLAS GENE THERAPIES, INC. ("AGT") (erroneously sued herein as Astellas, Inc., a non-existent legal entity) hereby answers the Complaint filed by plaintiff YE SHEN:

## GENERAL DENIAL

Pursuant to section 431.30(d) of the California Code of Civil Procedure, AGT denies, generally and specifically, each and every allegation contained in the Complaint.

## AFFIRMATIVE DEFENSES

As a separate and affirmative defense to the Complaint and each cause of action, claim and allegation contained therein, Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
(Failure to Mitigate Damages)

1. Plaintiff failed to take reasonable steps to reduce Plaintiff's claims, damages, losses, if any, and that said failure to mitigate Plaintiff's damages bars or reduces any claims, losses, or damages.

### SECOND AFFIRMATIVE DEFENSE
(Avoidable Consequences)

2. The Complaint, and each and every cause of action alleged, is barred by the avoidable consequences doctrine.

### THIRD AFFIRMATIVE DEFENSE
(Same Decision Limits Remedies)

3. The Complaint, and each and every cause of action alleged, is limited and barred because if Plaintiff is able to establish that retaliation was a contributing factor in any adverse employment action, such action would have been made for legitimate, independent reasons even if Plaintiff had not been a member of a protected class or engaged in protected activity.

### FOURTH AFFIRMATIVE DEFENSE
(After-Acquired Evidence)

4. The Complaint, and each and every cause of action alleged, is barred, or any damages reduced, by after-acquired evidence.

**FIFTH AFFIRMATIVE DEFENSE**
(Failure to State a Claim)

5. Plaintiff fails to state a claim upon which relief can be granted.

**SIXTH AFFIRMATIVE DEFENSE**
(Truth)

6. To the extent Plaintiff has alleged a claim for defamation, Defendant asserts the truth as to the allegedly defamatory statements.

**SEVENTH AFFIRMATIVE DEFENSE**
(Interested Persons Privilege)

7. To the extent Plaintiff has alleged a claim for defamation, Defendant asserts that such statements are privileged pursuant to the interested persons privilege set forth in section 47(c) of the California Civil Code.

**EIGHTH AFFIRMATIVE DEFENSE**
(Statute of Limitations)

8. The Complaint, and each and every cause of action alleged therein, is barred by the applicable statute of limitations, including, but not limited to, sections 12960 and 12965 of the Government Code, sections 335.1, 337, 338, 339, 340, and 343 of the Code of Civil Procedure, 18 U.S.C. § 1030(g), and pursuant to 29 U.S.C. § 2617.

**NINTH AFFIRMATIVE DEFENSE**
(Failure to Exhaust Administrative Remedies)

9. The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced by Plaintiff's failure to exhaust administrative remedies.

**TENTH AFFIRMATIVE DEFENSE**
(Bona Fide Occupational Qualification)

10. Any alterations or modifications to Plaintiff's job duties were justified, not based on discriminatory reasons, and were justified based upon a bona fide business necessity and based upon bona fide occupational qualifications.

**ELEVENTH AFFIRMATIVE DEFENSE**
(Undue Hardship)

11. The Complaint, and each and every cause of action alleged therein, is barred as

Defendant was excused from providing a reasonable accommodation as the reasonable accommodation required would create an undue hardship for Defendant.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Worker's Compensation Preemption)**

12. The Complaint, and each and every cause of action alleged therein, is barred because Cruz's exclusive remedy for any alleged personal injury damages is governed by the California Workers' Compensation Act. Cal. Lab. Code §§ 3200 et seq.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Consent)**

13. Plaintiff's claims, and each of them, are barred based on the doctrine of consent.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff takes nothing by way of her Complaint;

2. That judgment be entered against Plaintiff and in favor of Defendant on all causes of action;

3. That Defendant be awarded attorneys' fees and costs of suit incurred herein; and

4. That Defendant be awarded such other and further relief as the Court may deem just and proper.

DATED: May 4, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: ____________________
THOMAS M. MCINERNEY
KHADIJAH O. KENYATTE

Attorneys for Defendant
ASTELLAS GENE THERAPIES, INC.

**PROOF OF SERVICE**
*Ye Shen v. Astellas, Inc.*
California Superior Court, County of San Mateo
Case No. 25CIV02939

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of San Francisco in the office of a member of the bar of this court at whose direction the service was made. My business address is One Embarcadero Center, Suite 900, San Francisco, CA 94111.

On May 4, 2026, I served the following document(s):

**DEFENDANT ASTELLAS GENE THERAPIES, INC.'S ANSWER TO UNVERIFIED COMPLAINT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

Ye Shen — Plaintiff Pro Se
112 Cityview Drive
Daly City, CA 94014
Tel: 415-867-1126
Email: yeshen2000@yahoo.com

☒ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., San Francisco, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☒ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 4, 2026 at San Francisco, CA.

Pamela A. Leonard